Antonio Valla, Esq. (SBN 136256)
Stefano Abbasciano, Esq. (SBN 277680)
Lisa Parrish, Esq. (SBN 300499)
Valla & Associates, Inc., P.C.
333 Bush Street, Suite 2020
San Francisco, CA 94104
Telephone: 415.856.9001
Fax: 415.856.9002

Attorneys for
Castel S.A. a Luxembourg joint stock company *(societe anonyme)*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CASTEL S.A., a Luxembourg joint stock company *(societe anonyme)*<br><br>Plaintiff,<br><br>vs.<br><br>CHRISTOPHER A. WILSON, an individual; PHAROS CAPITAL PARTNERS II, LP, a Delaware limited partnership; PHAROS CAPITAL PARTNERS II-A, LP, a Delaware limited partnership; OLIVIA HO CHENG, an individual; ARF PARTNERS, LLC, a Massachusetts limited liability company; AURORA HEALTHCARE US CORP, a Massachusetts corporation; STEVEN J. JAMES, an individual.<br><br>Defendants. | Case No.:<br><br>**COMPLAINT FOR:**<br><br>1. **Fraudulent Deceit and Concealment as to all Defendants**<br>2. **Breach of Fiduciary Duties as to Wilson**<br>3. **Breach of Fiduciary Duty as to Majority Stockholders and Cheng**<br>4. **Civil Conspiracy as to all Defendants**<br>5. **Breach of Contract as to Majority Stockholders**<br>6. **Unjust Enrichment as to all Defendants** |

Plaintiff CASTEL S.A., a Luxembourg joint stock company *(societe anonyme)* ("PLAINTIFF"), complains of Defendants CHRISTOPHER A. WILSON, an individual ("WILSON"); PHAROS CAPITAL PARTNERS II, LP, a Delaware limited partnership ("PHAROS"); PHAROS CAPITAL PARTNERS II-A, LP, a Delaware limited partnership ("PHAROS II-A"); OLIVIA HO CHENG, an individual ("CHENG"); ARF PARTNERS, LLC, a Massachusetts limited liability company ("ARF PARTNERS"); AURORA HEALTHCARE US

-1-

COMPLAINT

1  CORP, a Massachusetts corporation ("AURORA HEALTHCARE"); STEVEN J. JAMES, an
2  individual ("JAMES"), as follows:

**PARTIES**

1. PLAINTIFF, a joint stock company *(societe anonyme)*, is organized under the laws of the Grand Duchy of Luxembourg.

2. Defendant WILSON is an individual who is a resident of Laguna Beach, California, and is the Chief Executive Officer ("CEO") of Aurora Imaging Technology, Inc. ("AIT"), beginning in 2015 until present.

3. Defendant PHAROS is a limited partnership formed under the laws of Delaware and has its principal business office at 8 Cadillac Drive, Suite 180, Brentwood, Tennessee 37027. PHAROS is in the business of providing private equity to growing healthcare companies.

4. Defendant PHAROS II-A is a limited partnership formed under the laws of Delaware and has its principal business office at 8 Cadillac Drive, Suite 180, Brentwood, Tennessee 37027. PHAROS II-A is in the business of providing private equity to growing healthcare companies.

5. CHENG is an individual who is a resident of North Andover, Massachusetts, and the President and Chief Executive Officer ("CEO") of ARF PARTNERS and AURORA HEALTHCARE since their formation in 2015 and 2016, respectively.

6. ARF PARTNERS is a limited liability company formed under the laws of Massachusetts and has its principal place of business at 41 Skyview Terrace, North Andover, MA 01845. ARF PARTNERS is in the business of investment.

7. AURORA HEALTHCARE is a corporation formed under the laws of Massachusetts and has its principal place of business at 8 Electronics Avenue, Danvers, MA 01923. AURORA HEALTHCARE is in the business of manufacturing breast MRI machines.

8. JAMES is an individual who resides in the state of New Hampshire, the Chief Financial Officer ("CFO") of AURORA HEALTHCARE, and a signatory for ARF PARTNERS along with CHENG.

9. The Defendants referenced to in paragraphs 3 and 4 in the complaint may hereinafter be referred to, collectively, as PHAROS.

10. The Defendants referenced to in paragraphs 2, 3, 4, 5, 6, 7 and 8 in the complaint may hereinafter be referred to, collectively, as DEFENDANTS.

## JURISDICTION AND VENUE

11. The District Court has jurisdiction over this civil action pursuant to 28 USC § 1332(a) based on the amount in controversy and diversity of citizenship. The amount of the lawsuit exceeds $75,000. The citizenship of the Plaintiff is Luxembourg and the citizenships of the Defendants are in California, Tennessee, and Massachusetts.

12. The venue in this District is based on 28 USC § 1391(c) and 28 USC § 1391(d) because AIT, the subject of this lawsuit, is a corporation with its principal business office in California at 818 West Seventh Street, Los Angeles, California 90017. Additionally, upon information and belief, Defendant WILSON, current Chief Executive Officer of AIT, resides at 87 South La Senda Drive, Laguna Beach, California 92651, and currently works as a lawyer at Wilson, Bradshaw & Cao, LLP, a law firm whose current address is 9110 Irvine Center Drive, Irvine, California 92618.

13. In addition, venue is proper in this judicial district under 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to the claims asserted herein occurred in this District.

14. This action arises under Delaware substantive law for discrete causes of action related to the AIT Stockholders Agreement, dated June 2006, which expressly states that the Agreement shall be governed under the laws of the State of Delaware as applied to contracts.

15. Further, this action also arises under California substantive law for causes of actions related to WILSON's governance and actions taken by him as CEO of AIT, from the State of California.

## FACTUAL ALLEGATIONS SPECIFIC TO ALL DEFENDANTS

16. AIT is a Delaware corporation that specializes in advanced breast imaging relating to the prevention, diagnosis and treatment of breast cancer, and has the authority to

1  issue 50,000,000 shares of common stock and 35,000,000 shares of preferred stock, in several
2  series.

3  17.   Aurora Breast MRI of Central Massachusetts, LLC, ("CENTRAL MASS") is a
4  Massachusetts limited liability company with an address at 16A Electronics Ave., Danvers
5  Massachusetts and is a subsidiary that is owned entirely by AIT. It is currently managed solely
6  by AIT, with WILSON acting as the sole signatory.

7  18.   On or about June 19, 2006, PLAINTIFF invested in Aurora and purchased
8  1,010,101 shares of AIT's Series C preferred stock in accordance with the Series C Preferred
9  Stock Purchase Agreement between PLAINTIFF and AIT. A true and correct copy of the Series
10 C Preferred Stock Purchase Agreement is attached hereto as **Exhibit A**.

11 19.   On or about July 15, 2008, PLAINTIFF again invested in AIT and purchased
12 512,821 shares of AIT's Series D preferred stock in accordance with the Series D Financing
13 Stockholder Consent.

14 20.   PLAINTIFF owned approximately 16.7% of series C and 16.7% of series D
15 stock, or almost 4% overall of AIT, which afforded PLAINTIFF the right to participate in the
16 management and profits of AIT as a minority stockholder.

17 21.   On or about March 14, 2011, AIT signed a Secured Promissory Note with terms
18 and conditions that were agreed to by both PLAINTIFF and AIT, whereby PLAINTIFF lent
19 AIT $250,000.

20 22.   On or about November 25, 2015 PHAROS entered into a Stock and Note
21 Purchase Agreement and Assignment of Amended and Restated Note Purchase, Guaranty and
22 Security Agreement ("Stock and Note Purchase Agreement") with ARF PARTNERS c/o BE
23 Pacific Capital Partners, 12F-1208, International Trade Building, No. 333 Section 1, Keelung
24 Road., Xinyi District, Taipei City, Taiwan. The Stock and Note Purchase Agreement was
25 executed by D. Robert Crants, III, Vice President of Pharos, on behalf of PHAROS, and by
26 CHENG, on behalf of ARF PARTNERS. Through the Stock and Note Purchase Agreement,
27 ARF PARTNERS purchased AIT's Notes in the principal amount of $3,300,000 and
28

AURORA's stock, in an amount that was to be later determined, for a heavily discounted price of $450,000.

23. On or about November 25, 2015, PHAROS, AIT and CENTRAL MASS entered into a settlement agreement, whereby AIT acknowledged that ARF PARTNERS entered into the Stock and Note Purchase Agreement with PHAROS. By and through the settlement agreement, AIT consented to the sale of PHAROS' Notes, instruments and other assets pursuant to the Stock and Note Purchase Agreement and released PHAROS of all claims.

24. On or about November 25, 2015, PHAROS, AIT, and ARF PARTNERS entered into a Novation Agreement, to novate the Stock and Purchase Agreement, thereby assigning PHAROS' rights and obligations and liabilities and effectively legally binding ARF PARTNERS to each and every agreement PHAROS, as majority stockholder in AIT, entered into with PLAINTIFF.

25. AIT, through WILSON as its acting CEO, began engaging in discussions with Aurora Healthcare SPC, a Cayman Islands special purposes company ("the Cayman Islands company"), for the sale of AIT to the Cayman Islands company, which was to act as a holding company.

26. CHENG, who, through ARF PARTNERS had become majority shareholder of AIT, was also the manager and CEO of the Cayman Islands company.

27. On October 20, 2016, only 11 days before the sale of AIT to the Cayman Islands company, WILSON sent correspondence to PLAINTIFF notifying it of WILSON'S intention to sell substantially all of the assets of AIT ("proposed transaction") and informing PLAINTIFF that PLAINTIFF will only receive an insignificant monetary settlement in place of PLAINTIFF's investment and loan in AIT. PLAINTIFF responded on October 26, 2016, stating that it did not have material information reasonably necessary for it to make an informed decision regarding the proposed transaction. PLAINTIFF further noted that the information WILSON provided on October 20, 2016 was inaccurate or misleading, as it did not match data previously provided to PLAINTIFF by WILSON.

28. WILSON failed to provide to PLAINTIFF with the required and necessary information for PLAINTIFF to make an informed decision regarding the proposed transaction, despite PLAINTIFF's request as a stockholder, sent on October 26, 2016.

29. As a result of not having adequate notice or material information, PLAINTIFF refused to consent to the sale of AIT's assets to the Cayman Islands company by informing WILSON of its intent not to do so and refusing to sign the Action by Written Consent in lieu of a Special Meeting of Stockholders of AIT, which had been presented to PLAINTIFF.

30. On or about October 31, 2016, despite PLAINTIFF's affirmative written non-consent, AIT through WILSON, executed an Asset Purchase Agreement with the Cayman Islands company for the sale and transfer of assets and assumption of liabilities of AIT to the Cayman Islands company for $8,500,000. A true and correct copy of the Asset Purchase Agreement is attached hereto as **Exhibit B**.

31. PLAINTIFF is unaware at this time as to whether or not other stockholders of AIT either consented or did not consent to the sale of AIT to the Cayman Islands company.

32. Further, upon information and belief, the sale of AIT to the Cayman Islands company was orchestrated by ARF PARTNERS and CHENG, who, through the use of ARF PARTNERS purchase of PHAROS Notes and investments for only $450,000, structured a deal by which the Cayman Islands company would have to pay less than half of the purchase price of AIT, thus saving the Cayman Islands company $4,300,000, in exchange for a waiver of ARF PARTNER's return on its Notes and investments from AIT. This effectively created a transaction in which CHENG purchased PHAROS Notes and Investments for pennies on the dollar, and then received a $4,300,000 kickback for CHENG's other company, the Cayman Islands company.

33. This kickback was memorialized on November 15, 2016, when AIT, the Cayman Islands company, ARF PARTNERS and BE Pacific Management Consulting Co., LTC., a Taiwanese company, entered into a Waiver, Acknowledgement and Agreement – Buyer Equity Conversion ("Waiver"). The Waiver provided that AIT was a debtor of PHAROS under various loan agreements and promissory notes ("the PHAROS instruments") but that ARF PARTNERS

purchased and acquired all right, title and interest in, to and under the PHAROS instruments before the sale of AIT to the Cayman Islands company. The Waiver further stated that the purchase price received from AIT in the amount of $4,000,000 was specifically contemplated to be used by AIT to make settlement payments to ARF PARTNERS and BE Pacific. However, in consideration for waiving ARF PARTNERS and BE Pacific's alleged right to the $4,000,000, ARF PARTNERS and BE Pacific received an equity conversion from AIT to the Cayman Islands company, in an amount currently unknown.

34. AIT, WILSON, ARF PARTNERS, and CHENG did not contemplate or offer to PLAINTIFF a repayment of PLAINTIFF's loan and investment in the Asset Purchase agreement, or in any other matter relating to the sale of AIT to the Cayman Islands company as it did for ARF PARTNERS.

35. Further, AIT, WILSON, ARF PARTNERS, and CHENG did not contemplate or offer to PLAINTIFF an equity conversion from AIT to the Cayman Islands company as it did for ARF PARTNERS.

36. Therefore, while PHAROS, CHENG, WILSON, and ARF PARTNERS received a benefit from the transfer of the PHAROS instruments and later the sale of AIT to the Cayman Islands company, PLAINTIFF received nothing.

37. Upon information and belief, the Cayman Islands company transferred some or all of its assets and liabilities into a new company, AURORA HEALTHCARE, for the benefit of DEFENDANTS.

38. At the time of the transfer of the assets from the Cayman Islands company to AURORA HEALTHCARE, CHENG was, and still is, the CEO and JAMES was, and still is, the CFO of AURORA HEALTHCARE.

39. Upon further information and belief, CHENG and JAMES used the Cayman Islands company as a holding company and then transferred some or all of the assets to AURORA HEALTHCARE in an effort to hide assets and avoid certain liabilities, such as AIT's liabilities to PLAINTIFF.

40. As a direct and proximate result of PHAROS, ARF PARTNERS, WILSON, JAMES and CHENG's actions throughout, PLAINTIFF was not repaid for its loan and was left without financial interest in either AIT, the Cayman Islands company, and/or AURORA HEALTHCARE and was left without any other immediate recourse available by law.

41. On June 6, 2017, PLAINTIFF filed a civil action against AIT in this Court for Breach of Contract, Account Stated, Quantum Meruit and Declaratory Relief (case number 2:17-cv-04198-DMG-KS)("*Castel v. Aurora*").

42. PLAINTIFF's contentions in that action were based on a Promissory Note entered into by PLAINTIFF and AIT on or about March 14, 2011 for a loan in the amount of $250,000 that was to be paid back, with interest, following a written demand by PLAINTIFF.

43. Following an order granting PLAINTIFF's Motion for Summary Judgment, this Court entered a Judgment against AIT and in favor of PLAINTIFF on January 18, 2018, in the amount of $338,385.05 along with interest accrued from January 1, 2015, until the date of payment to PLAINTIFF. A true and correct copy of the Judgment is attached hereto as **Exhibit E**.

44. Through the course of post-judgment discovery and a debtor's examination of WILSON, conducted on July 31, 2018 in the *Castel v. Aurora* matter and in an effort to enforce PLAINTIFF's judgment against AIT, facts and documents have first come to light and have been discovered by PLAINTIFF, upon which many of the allegations are made in the instant action.

45. As a result of the above, PLAINTIFF has suffered damages in the amount to be proven at trial.

**FACTUAL ALLEGATIONS SPECIFIC TO CHRISTOPHER WILSON**

46. WILSON has been the acting Chief Executive Officer of AIT since 2015 and, more importantly, at the time of sale of AIT to the Cayman Islands company.

47. WILSON operated AIT, including the majority of transactions, within the State of California at all relevant times.

48. WILSON was the sole officer and director and decision maker of AIT while he was acting CEO of AIT.

49. At all relevant times, WILSON owned 17,811 shares of common stock, 13,122 shares of Series A preferred stock, and 625 shares of Series B preferred stock of AIT.

50. In addition, WILSON's wife, Jennifer Wilson, and her family, the Hanson family, own about 89,050 shares of common stock, about 65,611 shares of Series A preferred stock and roughly 3,125 shares of Series B preferred stock of AIT.

51. WILSON, as an attorney, and his law firm, represented AIT as outside general counsel, beginning as early as 2012. WILSON's firm was paid in full by AIT for its services.

52. On July 31, 2018, WILSON was deposed in a Judgment Debtor Examination in *Castel v. Aurora*, in an effort to enforce PLAINTIFF's judgment against AIT, and WILSON stated that he stepped in and became CEO of AIT because, in his words, "… my father-in-law invested – I don't know exactly how much, but I guess it's somewhere around half a million dollars. I didn't want to see him lose that. I thought we could preserve some value for the shareholders. But in the end, we didn't." (pg. 60, lines 2 to 10 in the Wilson Debtor Examination, true and correct copies of the transcript excerpts are attached hereto as **Exhibit D**). According to WILSON, his father-in-law had purchased roughly 78,733 shares in Series A preferred stock, 3,750 shares in Series B preferred stock and 106,861 shares of common stock in AIT, which, upon information and belief, are now owned by WILSON's children.

53. As AIT's CEO and sole officer and director, WILSON entered into agreements with PHAROS, ARF PARTNERS, CHENG, the Cayman Islands company, among others regarding the stock, assets, and liabilities of AIT.

54. As CEO and sole officer and director, WILSON had all information available in making material decisions for AIT.

55. Despite having access to all available information, WILSON failed to disclose to PLAINTIFF material information, including the transfer of PHAROS's instruments to ARF PARTNERS, material facts underlying the financial status of AIT, material facts and information regarding the sale of AIT to the Cayman Islands company, and that CHENG was

acting in her capacity as CEO of ARF PARTNERS, such that she was on all sides of the transaction.

56. Further, as CEO and sole officer and director, WILSON engaged with PHAROS, ARF PARTNERS and CHENG in making material decisions that were harmful to PLAINTIFF, including the sale of AIT to the Cayman Islands company.

57. WILSON made the final decision to enter into the Asset Purchase Agreement and sell AIT to the Cayman Islands company despite his knowledge of PLAINTIFF's express lack of consent.

58. As a result of the above allegations, PLAINTIFF has suffered damages in an amount to be proven at trial.

**FACTUAL ALLEGATIONS SPECIFIC TO PHAROS**

59. PHAROS owned approximately 6,000,000 shares of common stock, approximately 5,050,505 shares in Series C preferred stock and approximately 2,564,103 shares in Series D preferred stock of AIT.

60. PHAROS owned 83.3% of each Series C and D preferred stock in AIT, thus making it a majority stockholder.

61. A valid and fully executed Series C stockholders agreement dated June 2006 by and among AIT, PHAROS and PLAINTIFF ("Series C Stockholder Agreement") was entered into, which is attached hereto as **Exhibit F** Upon information and belief, a similar agreement was entered into for Series D stock ("Stockholder Agreements").

62. Pursuant to section 8.7 of the Series C Stockholder Agreement, the Agreement is to be governed by and construed under the laws of the State of Delaware.

63. As a majority stockholder, PHAROS was required to provide Notice of Meetings to other shareholders in accordance with the Shareholders' Agreement and Delaware Law.

64. PHAROS entered into the sale of its Notes and AIT stock, without disclosing and consulting with PLAINTIFF, as required by Section 4 of the Series C Stockholders Agreement.

65. Despite the requirements included in the Stockholders Agreements, PHAROS consented and authorized the sale of AIT to the Cayman Islands company, even though not all of the stockholders provided consent.

66. Further, PHAROS engaged in discussions and decisions with ARF PARTNERS, CHENG and WILSON regarding the sale of AIT to the Cayman Islands company that was harmful to PLAINTIFF, a minority stockholder.

67. As a result of the above, PLAINTIFF has suffered damages in the amount to be proven at trial.

## FACTUAL ALLEGATIONS SPECIFIC TO OLIVIA CHENG

68. CHENG was the President and CEO of AIT from about 2002 to 2012.

69. In 2012, CHENG was "basically forced to resign" according to WILSON at pg. 52, lines 21 to 22 in the Wilson Debtor Examination. True and correct copies of the transcript excerpts are attached hereto as **Exhibit D**. WILSON explained that CHENG's departure was due to the fact that "…around 2012, the board lost confidence in [her]. She resigned." Pg. 37, lines 4 to 5 in the Deposition of Aurora Imaging Technology on December 11, 2017. True and correct copies of the excerpt of the deposition transcript are attached hereto as **Exhibit E**.

70. In addition, CHENG owned 185,814 shares of Series A preferred stock, 66,750 shares of Series B preferred stock and 264,697 shares of Common Stock of AIT.

71. CHENG is also the owner and Manager of ARF PARTNERS, a Massachusetts limited liability company, which purchased the Notes and stock owned by PHAROS in AIT.

72. CHENG founded the Cayman Islands company in May 2016, only months before the sale of AIT to the Cayman Islands company, and was a director and CEO of the Cayman Islands company during the time of the sale of AIT.

73. CHENG founded AURORA HEALTHCARE and was CEO at the time the Cayman Islands company transferred its assets into AURORA HEALTHCARE. CHENG is presently the CEO of AURORA HEALTHCARE, a presently operating company.

74. CHENG, as an agent of ARF PARTNERS, purchased PHAROS instruments for a low price, in order to receive a substantial benefit as a result of the sale of AIT to the Cayman Islands company, for which she was also an agent.

75. Upon information and belief, CHENG conspired to orchestrate the sale of substantially all of the assets of AIT, of which she had a majority stake in, to the Cayman Islands company, a company of which she is the CEO of, in order to benefit financially from the transaction and to the detriment and damage of PLAINTIFF.

76. Upon information and belief, CHENG conspired to avoid AIT's liabilities through the use of the Cayman Islands company as a holding company before transferring all or substantially all of the assets sold by AIT into AURORA HEALTHCARE.

77. As a result of the above allegations, PLAINTIFF has suffered damages in the amount to be proven at trial.

**FACTUAL ALLEGATIONS SPECIFIC TO ARF PARTNERS**

78. ARF PARTNERS, a Massachusetts limited liability company, was formed in September 2015 by CHENG, its sole manager, for the main purpose of investment and with its principal place of business in North Andover, Massachusetts.

79. ARF PARTNERS entered into a Stock and Note Purchase Agreement with PHAROS which allowed ARF PARTNERS to purchase PHAROS' notes, valued in the amount of $3,300,000, and its 13,614,608 shares of stock in AIT, the value of which is to be determined later, for a heavily discounted rate of $450,000.

80. Following this purchase, PHAROS, AIT, and ARF PARTNERS novated the Stock and Purchase Agreement, and thereby assigned PHAROS' rights, obligations and liabilities to ARF PARTNERS. It also effectively legally bound ARF PARTNERS to each and every agreement PHAROS had entered into with PLAINTIFF.

81. Upon information and belief, ARF PARTNERS, conspired with CHENG, WILSON and PHAROS, and was therefore able to buy a majority stockholder position in AIT for pennies on the dollar in an effort to effectuate a conspiracy with the Cayman Islands

company, in which it would buy AIT for half price by waiving its "rights" to the debt owed to it by AIT.

82. All of the benefits ARF PARTNERS acquired from these purchases came at the expense of and injury to PLAINTIFF.

**FACTUAL ALLEGATIONS SPECIFIC TO STEVEN J. JAMES**

83. JAMES was the former CFO of AIT, and, following his resignation from AIT, he was engaged as a part-time consultant to handle AIT's financials. Pg. 36, lines 5 to 14 in the Deposition of Aurora Imaging Technology on December 11, 2017. True and correct copies of the excerpt of the deposition transcript are attached hereto as **Exhibit E**.

84. JAMES' role in AIT continued despite his resignation as AIT's bookkeeper and accountant as of July 2018 and he has retained signatory authority of AIT's bank accounts according to WILSON at pg. 34, line 12 to pg. 35, line 8 in the Wilson Debtor Examination. True and correct copies of the transcript excerpts are attached hereto as **Exhibit D**.

85. JAMES is an officer of the Cayman Islands company, as well as an officer of both ARF PARTNERS and AURORA HEALTHCARE.

86. Upon information and belief, JAMES' role as CFO in AIT, and officer in CHENG's companies, ARF PARTNERS and the Cayman Islands company as well as his role as CFO in AURORA HEALTHCARE have put him in a position where he has been privy to and ratified the deceit and conspiracy occurring between the DEFENDANTS.

**FIRST CAUSE OF ACTION**
**(Fraudulent Deceit and Concealment against all Defendants)**

87. PLAINTIFF realleges and incorporates herein by this reference paragraphs 1 through 86 inclusive, as though set forth here in full.

88. DEFENDANTS, and each of them, and PLAINTIFF were in a fiduciary relationship, by and through PLAINTIFF's ownership of AIT stock beginning in June, 2006 and DEFENDANTS, and each of their majority ownership and control of AIT stock and WILSON'S management of AIT.

89. DEFENDANTS, and each of them, intended to and did deceive PLAINTIFF by suppressing, withholding or failing to communicate material facts to PLAINTIFF regarding the sale of PHAROS Notes and investments to ARF PARTNERS on November 25, 2015.

90. DEFENDANTS, and each of them, further intended to and did deceive PLAINTIFF by suppressing, withholding or failing to communicate material facts to PLAINTIFF regarding the sale of AIT to the Cayman Islands company on October 21, 2016 and later to AURORA HEALTHCARE. This includes CHENG's involvement as an agent for ARF PARTNERS on the seller side of the transaction, CHENG's involvement as an agent for the Cayman Islands company on the buyer side of the transaction, ARF PARTNER's additional financial and equity benefit received from the sale, that PLAINTIFF did not also receive and was not offered, and finally CHENG's involvement as an agent for both the Cayman Islands Co. and AURORA HEALTHCARE by acting on both the buyer and seller side of the transaction.

91. Further, DEFENDANTS, and each of them, intended to and did deceive PLAINTIFF by asserting material facts that were untrue and incomplete, and known by DEFENDANTS, and each of them, to be untrue and incomplete, regarding the sale of AIT to the Cayman Islands company on October 21, 2016 and later the sale of some or all of its assets to AURORA HEALTHCARE.

92. PLAINTIFF reasonably relied on DEFENDANTS, and each of them, to disclose all known material facts related to the sale of PHAROS' Notes and investments to ARF PARTNERS, CHENG's company and the sale of AIT to the Cayman Islands company, also CHENG's company, and finally the sale of some or all of AIT's assets to AURORA HEALTHCARE, also CHENG's company, truthfully and accurately and pursuant to law. Specifically, PLAINTIFF would have made substantially different business decisions with regards to PLAINTIFF's investments in AIT had it known the omitted and/or misstated material facts.

93. PLAINTIFF suffered damages, in an amount to be proven at trial, due to DEFENDANTS, and each of their failure to disclose material facts relating to both the above.

94. These acts constituted malicious conduct, which was carried out by DEFENDANTS and each of their willful and conscious disregard for PLAINTIFF's rights, with the intention of causing injury to PLAINTIFF, and was despicable conduct that subjected PLAINTIFF to a cruel and unjust hardship, so as to justify an award of exemplary and punitive damages. Accordingly, punitive damages should be awarded against DEFENDANTS, and each of them, to punish or deter DEFENDANTS and other such persons and entities from committing such wrongful and malicious acts in the future.

**SECOND CAUSE OF ACTION**
**(Breach of Fiduciary Duty Pursuant to California law against Christopher Wilson)**

95. PLAINTIFF realleges and incorporates herein by this reference paragraphs 1 through 86, inclusive, as though set forth here in full.

96. As the sole director and officer and decision maker of AIT, WILSON owed fiduciary duties of care, loyalty and good faith to AIT's stockholders, including PLAINTIFF. WILSON's fiduciary duties include obligations to exercise good business judgment, act prudently in the operation of AIT's business, discharge his actions in good faith, to act in the best interest of AIT and its stockholders, and to put the interests of AIT and its stockholders, before his own.

97. WILSON, a member of the California State Bar, conducted activities related to his role as a director and officer of AIT while his law firm also represented AIT as outside general counsel.

98. WILSON breached his fiduciary duties by failing to investigate business activities or conduct due diligence to determine the validity of the transactions and investigate the relationship between PHAROS and ARF PARTNERS and AIT and the Cayman Islands company.

99. Additionally, WILSON breached his duty of loyalty and good faith by, among other things, engaging in self-dealing and taking advantage as his role as a director and officer in order to benefit his own interests and those of his wife and family, when he ratified the sale of AIT to the Cayman Islands company.

100. As a result of WILSON's breach of his fiduciary duties of care, loyalty and good faith, PLAINTIFF incurred damages in an amount to be determined at trial.

### THIRD CAUSE OF ACTION
### (Breach of Fiduciary Duty Pursuant to Delaware Law against Pharos Capital Partners II, LP, Pharos Capital Partners II-A, LP, ARF Partners, LLC, and Olivia Ho Cheng)

101. PLAINTIFF realleges and incorporates herein by this reference paragraphs 1 through 86, inclusive, as though set forth here in full.

102. PHAROS and ARF PARTNERS exercised control over the business affairs of AIT by and through their ownership of majority interest in AIT and therefore owed a fiduciary duty to other stockholders.

103. PHAROS breached its fiduciary duty to PLAINTIFF by selling its Notes and investments to ARF PARTNERS without notifying or consulting with PLAINTIFF.

104. Each of PHAROS and ARF PARTNERS breached their fiduciary duty to PLAINTIFF through their failure to notify PLAINTIFF about the transaction at any time.

105. Further, each of PHAROS and ARF PARTNERS breached their fiduciary duty to PLAINTIFF through the transaction, which was self-dealing:

    a. PHAROS received a benefit from the transaction, to the detriment of PLAINTIFF, and helped dictate the terms of the transaction. Similarly, ARF PARTNERS and CHENG received a benefit of the transaction, to the detriment of PLAINTIFF; and/or

    b. PHAROS, ARF PARTNERS and CHENG derived a greater benefit from the transaction than PLAINTIFF, who derived no benefit.

106. In addition, CHENG is liable to PLAINTIFF for harm caused to PLAINTIFF as a result of the breach of fiduciary duties to PLAINTIFF committed by PHAROS and ARF PARTNERS, as an apparent or ostensible agent of ARF PARTNERS.

107. Furthermore, AIT was not sold at a fair price, as a result of PHAROS, ARF PARTNERS and CHENG's breach of fiduciary duty and self-dealing, resulting in a direct harm to PLAINTIFF.

108. PHAROS, ARF PARTNERS and CHENG engaged in self-dealing, when they orchestrated the a transaction through the use of ARF PARTNERS and its purchase of PHAROS Notes and investments for $450,000, and structured a deal by which the Cayman Islands company would have to pay less than half of the purchase price of AIT, saving the Cayman Islands company $4,300,000, in exchange for a waiver of ARF PARTNER's return on its Notes and investments from AIT. This effectively created a transaction in which CHENG purchased PHAROS Notes and Investments for pennies on the dollar, and then received a $4,300,000 kickback for CHENG's other company, the Cayman Islands company.

109. The applicable standard that applies to Delaware law is the entire fairness doctrine rather than the business judgment rule. The entire fairness doctrine provides that it is DEFENDANTS, and each of their burden to prove that a challenged transaction is entirely fair to stockholders. The entire fairness doctrine applies to transactions, as here, that have conflicts in which the majority of the board is interested or stands to receive a material benefit, a director has financial incentives adverse to the company, or a conflicted director or stockholder controls or dominates the board as a whole.

110. PLAINTIFF has been damaged in an amount to be proven at trial as a result of PHAROS, ARF PARTNERS and CHENG's breach of their fiduciary duty to PLAINTIFF.

**FOURTH CAUSE OF ACTION**
**(Civil Conspiracy against all Defendants)**

111. PLAINTIFF realleges and incorporates herein by this reference paragraphs 1 through 86, inclusive, as though set forth here in full.

112. PLAINTIFF is informed and believes that DEFENDANTS knowingly and willfully conspired and agreed among themselves to (1) misrepresent the status and majority ownership of PHAROS in AIT, leading PLAINTIFF to believe PHAROS was majority owner of AIT when it was not; (2) misrepresent the financial status of AIT to PLAINTIFF; and (3) manipulate and thereby engage in a self-dealing transaction, for the benefit of DEFENDANTS, and each of them, only.

113. In furtherance of the conspiracy and agreement, DEFENDANTS, and each of them, engaged in fraudulent representations, omissions and concealment of facts, acts of cover-

up and statements to obtain stockholders' consent of the sale of AIT to the Cayman Islands company, as set forth in detail in the foregoing paragraphs, which are incorporated herein.

114. The actions of DEFENDANTS, and each of them, was in violation of the rights of PLAINTIFF and committed in furtherance of DEFENDANTS, and each of their conspiracy and agreements. Moreover, DEFENDANTS, and each of them, lent aid and encouragement and knowingly financed, ratified and/or adopted the acts of the other DEFENDANTS.

115. As a proximate result of the wrongful acts herein alleged, PLAINTIFF has suffered significant damages, in an amount to be determined at trial.

116. These acts constituted malicious conduct, which was carried out by DEFENDANTS with willful and conscious disregard for PLAINTIFF's rights, with the intention of causing injury to PLAINTIFF, and was despicable conduct that subjected PLAINTIFF to a cruel and unjust hardship, so as to justify an award of exemplary and punitive damages. Accordingly, punitive damages should be awarded against DEFENDANTS to punish or deter DEFENDANTS and other such persons and entities from committing such wrongful and malicious acts in the future.

**FIFTH CAUSE OF ACTION**

**(Breach of Contract Pursuant to Delaware Law against Pharos Capital Partners II, LP, Pharos Capital Partners II-A, LP, and ARF Partners, LLC)**

117. PLAINTIFF realleges and incorporates herein by this reference paragraphs 1 through 86, inclusive, as though set forth here in full.

118. The Stockholder Agreements were entered into by AIT, PHAROS and PLAINTIFF on or about June 2006 and are to be governed and construed under the laws of the State of Delaware, pursuant to section 8.7 of the Series C Stockholder Agreement. A true and correct copy of the Series C Stockholder Agreement is attached hereto as **Exhibit F**. When ARF PARTNERS purchased PHAROS' Notes and investments, and entered into a Novation, ARF PARTNERS was in privity of contract and bound to the Stockholder Agreements.

119. PLAINTIFF holds Series C Preferred stock in the amount of 1,010,101 shares and Series D stock in the amount of 512,821 shares in AIT.

120. The AIT Series C Stockholders Agreement included specific covenants and agreements regarding Series C Preferred Stock.

121. Upon information and belief, the AIT series D Stockholders Agreement contained substantially similar provisions.

122. Specifically, the AIT Series C Stockholder Agreement contained a provision regarding consultation in Section 4 of the Agreement, which required PHAROS, and thereafter ARF PARTNERS, upon assuming PHAROS obligations and status as majority stockholder, to make reasonable efforts to consult with PLAINTIFF with respect to any matter requiring the approval of the holders of Series C stock.

123. PHAROS and ARF PARTNERS each breached the AIT Stockholder Agreements when PHAROS sold all of its Series C and Series D stock to ARF PARTNERS, without notifying or consulting with PLAINTIFF.

124. Additionally, PHAROS breached the AIT Stockholder Agreements by failing to disclose material details regarding ARF PARTNERS' ownership interest in AIT.

125. Finally, ARF PARTNERS breached the AIT Stockholder Agreements by consenting to the sale of AIT to the Cayman Islands company without first notifying or consulting with PLAINTIFF.

126. PLAINTIFF was damaged as a direct result of PHAROS and ARF PARTNER's breach of the AIT Stockholders Agreements.

**SIXTH CAUSE OF ACTION**

**(Unjust Enrichment against all Defendants)**

127. PLAINTIFF realleges and incorporates herein by this reference paragraphs 1 through 86, inclusive, as though set forth here in full.

128. DEFENDANTS, and each of them, received a financial benefit from PLAINTIFF's purchase of Series C and D shares and the purchase of a Note in the amount of $250,000 at the expense and detriment of PLAINTIFF.

129. DEFENDANTS, and each of them, knew they received that benefit.

130. DEFENDANTS, and each of them, unjustly accepted and retained that benefit both by devaluing the worth of the Series C and Series D shares and without payment for their value.

131. As a result of DEFENDANTS, and each of their, wrongful acts and omissions, DEFENDANTS, and each of them, have been unjustly enriched to the detriment of PLAINTIFF.

**PRAYER**

Therefore, PLAINTIFF demands that judgment be entered against DEFENDANTS as follows:

1. Judgment against each DEFENDANT in excess of $75,000;
2. For interest in the statutory amount;
3. For costs of suit incurred herein;
4. For punitive damages against DEFENDANTS, and each of them, related to the First and Fourth causes of action;
5. For attorneys' fees incurred in prosecuting this proceeding;
6. For any other relief that the Court may deem just and proper.

DATED: October 30, 2019            Valla & Associates, Inc., P.C.

By: ___*/s/ Lisa M. Parrish*_____
     Lisa Parrish, Esq.
     Attorneys for Plaintiff
     CASTEL S.A. a joint stock company *(societe anonyme)*, a Luxembourg corporation