Antonio Valla, Esq. (SBN 136256)
Stefano Abbasciano, Esq. (SBN 277680)
Lisa Parrish, Esq. (SBN 300499)
Valla & Associates, Inc., P.C.
333 Bush Street, Suite 2020
San Francisco, CA 94104
Telephone:  415.856.9001
Fax:  415.856.9002

Attorneys for
Castel S.A. a Luxembourg joint stock company *(societe anonyme)*

Valla & Associates, Inc., P.C.
333 Bush Street, Suite 2020
San Francisco, CA 94104
www.vallalaw.com

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CASTEL S.A., a Luxembourg joint stock company *(societe anonyme)*<br><br>Plaintiff,<br><br>vs.<br><br>CHRISTOPHER A.WILSON, an individual; PHAROS CAPITAL PARTNERS II, LP, a Delaware limited partnership; PHAROS CAPITAL PARTNERS II-A, LP, a Delaware limited partnership; OLIVIA HO CHENG, an individual; ARF PARTNERS, LLC, a Massachusetts limited liability company; AURORA HEALTHCARE US CORP, a Massachusetts corporation; STEVEN J. JAMES, an individual.<br><br>Defendants. | Case No.: 2:19-cv-09336-ODW-PVC<br><br>**PLAINTIFF CASTEL S.A.'S OPPOSITION TO DEFENDANTS PHAROS CAPITAL PARTNERS II, LP AND PHAROS CAPITAL PARTNERS II-A, LP'S MOTION TO DISMISS PLAINTIFF'S CLAIMS ASSERTED AGAINST THEM IN THE FIRST AMENDED COMPLAINT**<br><br>**Date:   March 23, 2020**<br>**Time:   1:30 p.m.**<br>**Crtrm: 5D – 5th Floor**<br>**Judge:  Hon. Otis D. Wright II** |

1
2

# **TABLE OF CONTENTS**

**I.   INTRODUCTION**......................................................................................1

**II.  STATEMENT OF FACTS**........................................................................2

**III. ARGUMENT** ...........................................................................................6

   A.   Legal Standard ....................................................................................6

   B.   This Court Can Exercise Specific Personal Jurisdiction Over Defendants..6

     i.   Pharos has sufficient minimum contacts with California. ...........................7

     ii.  In the alternative, this Court should stay its decision on Pharos' motion and grant limited discovery on jurisdiction. ...........................................................10

   C.   California Law Applies to Fraud and Conspiracy Claims..........................11

     i.   Pharos owed a duty to Plaintiff..................................................................12

     ii.  Plaintiff's claims are not time-barred ........................................................13

   D.   Plaintiff's breach of contract claim against Defendants is sufficient. ........15

     i.   Plaintiff sufficently pled breach of contract. .............................................15

     ii.  Damage allegations are sufficient..............................................................16

   E.   Plaintiff's Breach of Fiduciary Duty Claim Against Pharos is Sufficient..16

     i.   Plaintiff's claim is not duplicative, and arises out of separate duties and factual allegations than the breach of contract claim.......................................16

     ii.  Pharos breached its fiduciary duties owed to Plaintiff ...............................17

   F.   Plaintiff's fraud claim is sufficient.............................................................19

     i.   Plaintiff adequately pled reasonable reliance. ...........................................21

     ii.  The Fraud Claim is not Duplicative...........................................................21

   G.   Plaintiff's claim for conspiracy is sufficient..............................................22

   H.   Plaintiff has sufficiently pled its unjust enrichment claim. .......................23

**IV. CONCLUSION** ......................................................................................25

Valla & Associates, Inc., P.C.
333 Bush Street, Suite 2020
San Francisco, CA 94104
www.vallalaw.com

Valla & Associates, Inc., P.C.
333 Bush Street, Suite 2020
San Francisco, CA 94104
www.vallalaw.com

# TABLE OF AUTHORITIES

**Cases**

*Aaroe v. First American Title Ins. Co.*, 222 Cal.App.3d 124 (1st Dist. 1990)........14

*Abraham v. Emerson Radio Corp.*, 901 A. 2d 751, 759 (Del. Ch. 2006) .........11, 12

*Am. Tel. & Tel. Co. v. Compagnie Bruxelles Lambert*, 94 F.3d 586, 588-89 (9th Cir. 1996). ......................................................................................................6

*Applied Equipment Corp. v. Litton Saudi Arabia Ltd.*, 7 Cal. 4th 503, 510-11 (Cal. App. 1994) ......................................................................................................22

*Asghari v. Volkswagen Group of Am., Inc.*, 42 F.Supp. 3d 1306, 1325 (C.D. Cal. 2013) ..............................................................................................................20

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009).......................................................................6

*Astiana v. Hain Celestial Group, Inc.*, 783 F.3d 753, 762 (9th Cir. 2015).......23, 24

*AT&T v. Compagnie Bruxelles Lambert*, 94 F.3d 586, 588 (9th Cir. 1996).............7

*Ballard v. Savage*, 65 F.3d 1495, 1498 (9th Cir. 1995). .........................................8

*Bell Atlantic v. Twombly*, 550 U.S. 544, 570 (2007)................................................6

*Bruns v. Desoto Operating Co.*, 251 Cal. Rptr. 462 (App. 4th Dist. 1988) .............9

*Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472, 105 S. Ct. 2174, 85 L. Ed. 2d 528 (1985)...................................................................................................8, 9

*Cede & Co. v. Technicolor, Inc.*, 634 A.2d 345 (Del. 1993) ...........................18, 19

*Citron v. Fairchild Camera and Instrument Corp.*, 569 A. 2d 53 (Del. 1989).......18

*Civic Partners Stockton, LLC v. Youssefi*, 218 Cal. App. 4th 1005, 1013 (2013)..23

*Ebeid ex rel. United States v. Lungwitz*, 616 F.3d 993, 999 (9th Cir. 2010) ..........19

*Fleer Corp. v. Topps Chewing Gum, Inc.*, 539 A.2d 1060, 1062 (Del. 1988)........24

*Gale v. Bershad*, 1998 WL 118022, 5 (Del. Ch. Mar. 4, 1998) .............................17

*Guth v. Loft, Inc.*, 23 Del. Ch. 255, 270 (Del. 1939)..............................................11

*In re Automobile Antitrust Cases I and II*, 37 Cal. Rptr. 3d 258 (App. 1st Dist. 2005) ..............................................................................................................9

*In re Cornerstone Therapeutics Inc. S'holders Litig.*, 115 A.3d 1173 (Del. 2015) 12

*In re Toyota Motor Corp*., 754 F.Supp.2d 1145, 1190-91(C.D.Cal. 2010) ............20

*In re Western States*, 715 F.3d 716, 741 (9th Cir. 2013)............................................7

*In re Zhongpin Inc. S'holders Litig., C.A.* No . 7393-VCN, 2014 WL 6735457, at
  *7– *9 (Del. Ch. Nov. 26, 2014) ........................................................12

*Integral Development Corp. v. Weissenbach,* 99 Cal. App. 4th 576 (6th Dist. 2002)
  ......................................................................................................9

*Ivanhoe Partners v. Newmont Mining Corp.*, 535 A.2d 1334, 1344 (Del. 1987)...12

*Jonathan Chuang v. Dr. Pepper Snapple Grp., Inc.*, Case No. 17-cv-01875, 2017
  WL 4286577, at *7 (C.D. Cal. Sept. 20, 2017) ...................................................23

*Kahn v. Lynch Communication Systems, Inc*., 638 A.2d 1110, 1113-15 and 1121-
  22 (Del. 1994) ....................................................................................................12

*Klein v. Wasseran*, 2019 WL 2296027, at *6 (Del. Ch. May 29, 2019) ................16

*Lake v. Lake*, 817 F.2d 1416, 1421 (9th Cir. 1987)...................................................8

*Los Angeles Memorial Coliseum Com. v. Insomniac,* 233 C.A. 4th 803, 831 (Cal.
  App. 2015) ......................................................................................................22

*Lynch v. Vickers Energy Corp.*, 383 A.2d 278 (Del. 1977) ....................................18

*Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008)
  ......................................................................................................6

*Marvix Photo, Inc., v. Brand Techs., Inc.*, 647 F.3d 1218, 1223 (9th Cir. 2011) .....8

*McBride v. Boughton*, 123 Cal. App. 4th 379, 388 n.6 (2004). .............................23

*Mirkin v. Wasserman*, 5 Cal. 4th 1082 (1993) ......................................................21

*Nixon v. Blackwell*, 626 A. 2d 11366, 1376 (Del. 1993).........................................19

*OCM Principal Opportunities Fund, L.P. v. CIBC World Markets Corp.*, 157 Cal.
  App. 4th (Cal. App. 2007) ................................................................................22

*Orchid Biosciences, Inc. v. St. Louis Univ.*, 198 F.R.D. 670 (S.D. Cal. 2001).......10

*PT China LLC v. PT Korea LLC*, 2010 WL 761145, 7 (Del. Ch. Feb. 26, 2010) ..17

*Quelimane Co. v. Stewart Title Guaranty Co.* 19 Cal.4th 26,  47-48 (1998)..........23

*Republic Int'l Corp. v. Amco Eng'rs, Inc*., 516 F.2d 161, 167 (9th Cir. 1976) .........8

Valla & Associates, Inc., P.C.
333 Bush Street, Suite 2020
San Francisco, CA 94104
www.vallalaw.com

*Rickley v. Goodfriend,* 212 Cal.App.4th 1136, 1166 (2013)....................................23

*Ryan v. Gifford,* 918 A.2d 341, 361(Del. Ch. 2007) ................................................24

*Schuss v. Penfield Partners, L.P.*, 2008 WL 2433842, at *10 (Del. Ch. June 13, 2008) ...........................................................................................................16, 17

*Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d at 802 ..............................8, 9

*Semegen v. Weidner*, 780 F.2d 727, 734–35 (9th Cir. 1985) ...................................19

*Tatung Co., Ltd. v. Shu Tze Hsu*, 43 F.Supp.3d 1036 (C.D. Cal. 2014) .................10

*Threlkeld v. Tucker*, 496 F.2d 1101, 1103 (9th Cir. 1974)........................................8

*Tyler v. Cisneros*, 136 F.3d 603, 607 (9th Cir. 1998) ...............................................6

*Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987) ..........................21

*Vicky v. Koninklijke Philips Electronics, N.V.*, 85 A. 3d 725, 789 (Ch. Del. 2014) .............................................................................................................................14

*Wyatt v. Union Mortgage Co.*, 24 Cal. 3d 773, 774 (Cal. 1979)............................13

**Other Authorities**

CACI 3600..................................................................................................................23

**Statutes**

Fed. R. Civ. P. 12(b)(2) ............................................................................................29

Fed. R. Civ. P. 12(b)(6) ..............................................................................................6

Fed. R. Civ. P. 12(d) ................................................................................................12

Fed. R. Civ. P. 9(b) ..................................................................................................22

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Valla & Associates, Inc., P.C.
333 Bush Street, Suite 2020
San Francisco, CA 94104
www.vallalaw.com

1    Plaintiff Castel S.A. ("Plaintiff" or "Castel") respectfully submits its

2    opposition to Defendants Pharos Capital Partners II, LP and Pharos Capital

3    Partners II-A, LP's (collectively, "Pharos" or "Defendant") motion to dismiss.

## I.    INTRODUCTION

5    Plaintiff's claims stem from a journey of discovery, yet to be completed, but

6    that so far has been filled with Defendants'—including Pharos'—conspiracy to

7    deceive, conceal, and conduct insider transactions to Plaintiff's detriment. The

8    First Amended Complaint ("FAC") was drafted at the beginning of this journey,

9    but Plaintiff is confident that additional facts supporting its claims will come to

10   light throughout discovery.

11   The conspiracy began with Cheng's decision to regain control of Aurora

12   Imaging Technology, Inc. ("AIT"). Because she could not afford to buy AIT,

13   Cheng concocted a plan to purchase it, but at heavily discounted price. The plan

14   began with her decision to become a senior secured creditor in AIT and gain a

15   substantial equity ownership in AIT.  Thus, in 2015, Cheng conspired with Pharos

16   and was able to successfully complete part A of her conspiracy, when she created a

17   company Defendant ARF Partners, LLC ("ARF"), to purchase Pharos' Notes and

18   Investments. Plaintiff was neither consulted about the sale, nor knew who was

19   scheming behind the scenes.

20   In furtherance of the same conspiracy, in 2016, Defendant Christopher

21   Wilson ("Wilson") sold AIT to Cheng's other company created for the purpose of

22   executing the conspiracy, Aurora Healthcare SPC ("the Cayman Islands

23   Company"). Plaintiff neither consented to the sale, nor knew who was plotting

24   behind the scenes. As a result of Defendants' conspiracy and fraudulent omissions

25   that ultimately resulted in the sale of AIT to Aurora Healthcare US Corp. ("Aurora

26   Healthcare"), Plaintiff's investment was whittled away into nothing in order to

27   benefit those who were conspiring behind the scenes: Defendants.

28

PLAINTIFF CASTEL'S OPPOSITION TO DEFENDANTS PHAROS' MOTION TO DISMISS

Valla & Associates, Inc., P.C.
333 Bush Street, Suite 2020
San Francisco, CA 94104
www.vallalaw.com

Valla & Associates, Inc., P.C.
333 Bush Street, Suite 2020
San Francisco, CA 94104
www.vallalaw.com

Cheng would have never been able to fulfill the ultimate goal of the conspiracy, the purchase of AIT, without Pharos' agreement, cooperation, and participation.

In 2017, in order to seek relief from the loss of its loan to AIT, Plaintiff successfully brought an action against AIT for repayment of its entire loan. Through the course of post-judgment discovery[1], which occurred in July of 2018, Plaintiff uncovered some of the hidden and unauthorized transactions that Defendants attempted to keep buried away.

## II.    STATEMENT OF FACTS

AIT had value, and the Defendants, including Pharos, acted in concert to transfer that value to entities controlled by Cheng at a fire sale price, all the while (a) avoiding the orderly scrutiny of the bankruptcy process, (b) giving Plaintiff <u>only 11 days</u> to decide whether to take pennies on the dollar, (c) ignoring Plaintiff's material information and notice rights, (d) purposely opting out of a competitive bidding process, and (e) obfuscating matters to the point that had Plaintiff not gleaned information from a separate, but related, lawsuit, Plaintiff would have been hung out to dry.

## <u>INVESTMENTS IN AIT</u>

The entity at the center of this lawsuit, AIT, is a Delaware corporation, registered and qualified to do business in California, that manufactured advanced breast imaging machines for the prevention, diagnosis and treatment of breast cancer. Dkt. 44 at ¶ 21. AIT was authorized to issue 50,000,000 shares of common stock and 35,000,000 shares of preferred stock, in several series. *Id.*

Plaintiff invested and bought shares of Series C and Series D Preferred Stock in AIT, amounting to about 16.7% ownership of each series, thereby making Plaintiff a minority shareholder of AIT. Dkt. 44 at ¶ 25. In addition to owning

---

[1]  This case was filed in this court on June 6, 2017, and is styled as *Castel S.A. v. Aurora Imaging Technology, Inc.* (case number 2:17-cv-04198-DMG-KS).

stock in AIT, on March 14, 2011, Plaintiff lent AIT $250,000, documented by a secured promissory note. Dkt. 44 at ¶ 26.

Pharos owned 83.3% of each of the Series C and Series D Preferred Stock of AIT (the "Investment"). Dkt. 44 at ¶ 27. Similar to Plaintiff, Pharos loaned $3,300,000 to AIT, which was documented in a separate secured promissory note (the "Pharos Note"). *Id.*

Along with Plaintiff, Defendant Wilson, Defendant Steven James ("James"), and Defendant Olivia Ho Cheng ("Cheng") were each minority shareholders in AIT, whereas Defendant ARF became *de facto* controlling shareholder of AIT after it purchased the Pharos Note and Investment. Dkt. 44 at ¶¶ 56, 78, and 90.

## THE CO-CONSPIRATORS

### DEFENDANT PHAROS

Pharos had a stake in each of the fraudulent transactions, that make up the conspiracy.  Michael Devlin ("Devlin"), an agent for Pharos, controlled AIT's business affairs as CEO of AIT during all the relevant time periods. Dkt. 44 at ¶ 16. Thus, through Pharos' ownership of 83.3% of each Series C and D preferred shares, its status as AIT's only secured creditor, and its agent, Devlin's control of AIT, Pharos was a *de facto* controlling shareholder. Dkt. 44 at ¶ 27 and 68. As *de facto* controlling stockholder of AIT, Pharos owed AIT and its shareholders, including Plaintiff, fiduciary duties, including the duties of care, loyalty and disclosure, which Pharos breached when it failed to disclose to Plaintiff the underlying illegal transactions. Dkt. 44 at ¶¶27, 30, 66-74.

Pharos' wrongful conduct, however, went beyond its breach of fiduciary duties. Pharos breached its contract with AIT and Plaintiff. Pursuant to the Stockholder Agreement, which Pharos entered into with AIT and Plaintiff in 2006, Pharos had an obligation to consult with Plaintiff before approving any matter that required the approval of the holders of the Series C Preferred Stock as a separate class. *Id.*; Dkt. 44, **Exhibit M**. The purchase of Pharos Notes and Investment by

Valla & Associates, Inc., P.C.
333 Bush Street, Suite 2020
San Francisco, CA 94104
www.vallalaw.com

Valla & Associates, Inc., P.C.
333 Bush Street, Suite 2020
San Francisco, CA 94104
www.vallalaw.com

1  ARF qualified as such matter. *Id*. When Pharos failed to consult with Plaintiff

2  before selling the Pharos Notes and Investment, Pharos breached its contractual

3  obligations towards Plaintiff under the Stockholder Agreement. Dkt. 44 at ¶¶ 123-

4  128, 143-152, 161-175, **Exhibit M**.

5  PHAROS' SUCCESSOR - DEFENDANT ARF

6  ARF was formed on September 1, 2015, right before it purchased the Pharos

7  Notes and Investment in AIT. Dkt. 44 at ¶ 87. ARF, through Cheng, and

8  represented by Wilson and his law firm, entered into a Stock and Note Purchase

9  Agreement with Pharos on November 25, 2015, whereby Pharos sold, transferred,

10  assigned and conveyed unto ARF all right, title, and interest in the Investment in

11  AIT and in the Pharos Notes, valued in the amount of $3,300,000, at the heavily

12  discounted price of $450,000. Dkt. 44 at ¶¶ 28-30, 88. Upon ARF's purchase of

13  Pharos Notes and Investment, ARF became AIT's *de facto* controlling shareholder.

14  Dkt. 44 at ¶¶ 90-91. On November 25, 2015, Pharos, AIT, and ARF novated the

15  Stock and Note Purchase Agreement, and thereby assigned Pharos' rights,

16  obligations and liabilities under such agreement to ARF. Dkt. 44 at ¶ 89. As

17  Pharos' successor in interest, ARF became bound by the Stockholder Agreement.

18  Dkt. 44, **Exhibit M**.

19  **DEFENDANTS' CONCEALED ACTIONS**

20  Cheng was ousted from AIT in 2012. In her motion to dismiss, she admits

21  that her goal was to buy the Pharos Notes and Investment and then use her secured

22  creditor status and *de facto* controlling ownership in AIT to purchase AIT through

23  the Cayman Islands Company, which Cheng used to transfer AIT's assets to

24  Aurora Healthcare. Dkt. 44 at ¶¶ 44-45, 76-77, 79-1, 83, 87, see also Dkt. 48 at pg.

25  4, lines 7-16. Cheng further admits in her moving papers that this plan was

26  designed before ARF purchased the Pharos Notes and Investment. Dkt. 48 at pg. 4,

27  lines 7-16.

28

Valla & Associates, Inc., P.C.
333 Bush Street, Suite 2020
San Francisco, CA 94104
www.vallalaw.com

Once Cheng controlled AIT through ARF, Cheng's master plan finally was able to come to fruition - she could purchase AIT for less than half its value if Wilson and AIT provided her and the Cayman Islands Company with a $4.3 million "credit." Dkt. 44 at ¶¶ 30, 39-40, 84, 88. In exchange, she would release the senior secured debt owed to ARF, which then acquired an equity interest in Aurora Healthcare. In the course of this transaction, Cheng received a benefit of more than $4.2 million. *Id.*

Further, Cheng's company, ARF, effectively received greater than a 100% return on its loan which was originally $3.3 million, but was purchased from Pharos for less than $450,000 through Cheng's kickback of $4.3 million. *Id.* Not surprisingly, while Cheng received more than 100% for her loan, and potentially a portion of that for her investment, all other creditors, including Plaintiff, were only offered 40% of the value of their loan, and all other shareholders, including Plaintiff, lost their entire investments. Dkt. 44 at ¶¶ 41-44.

At that point, Cheng was able to add the final piece of the puzzle: transfer AIT's assets from the Cayman Islands Company to Aurora Healthcare, yet another one of Cheng's entities. Dkt. 44 at ¶ 46.

The only information Plaintiff ever received about AIT's sale to the Cayman Islands Company occurred on October 20, 2016, **11 days before the sale between the Cayman Islands Company and AIT took place.** Dkt. 44 at ¶¶ 33-38. Wilson wrote to Plaintiff notifying it of his intention to sell AIT for $8.5 million and that Plaintiff would receive a monetary settlement for far less than half of its loan to AIT. *Id.* When Wilson reached out to Plaintiff, he provided no other options to Plaintiff but to consent to the sale of AIT. *Id.* Wilson provided no information regarding Pharos' sale of its Notes and Investments, about any other offers, no information regarding who the prospective buyer was and, considering that the same actors positioned themselves on both sides of the transaction, no information regarding whether the transaction was being overseen by an independent

committee. *Id.* The only information Wilson provided to Plaintiff was either in conflict with information provided in the past, or was incomplete in an effort to cover up the conspiracy. *Id.* As a result, Plaintiff was kept in the dark about Cheng's scheme and Pharos' sale of its Notes and Investments to ARF until Plaintiff started to unveil the under-the-table transactions in 2018, during post-judgment discovery in the *Castel v. Aurora* lawsuit. *Id.* and at Dkt. 44 at ¶¶ 48-52.

### III.   ARGUMENT

#### A. Legal Standard

To withstand a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), citing *Bell Atlantic v. Twombly*, 550 U.S. 544, 570 (2007). The Court must give the plaintiff the benefit of every inference that reasonably may be drawn from well-pleaded facts. *Tyler v. Cisneros*, 136 F.3d 603, 607 (9th Cir. 1998).

"Denial of leave to amend 'is improper unless it is clear . . . that the complaint could not be saved by any amendment.'" *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).

#### B. This Court Can Exercise Specific Personal Jurisdiction Over Defendants.

The plaintiff bears the burden of establishing personal jurisdiction. *Ziegler v. Indian River County*, 64 F.3d 470, 473 (9th Cir. 1995). If a court has not heard testimony or made factual determinations, however, the plaintiff must only make a prima facie showing of personal jurisdiction. *Id*. In determining whether the plaintiff has met this burden, a court must take the allegations in the plaintiff's complaint as true and resolve disputed jurisdictional facts in the plaintiff's favor. *Am. Tel. & Tel. Co. v. Compagnie Bruxelles Lambert*, 94 F.3d 586, 588-89 (9th Cir. 1996).

On a prima facie showing, the court resolves all contested facts in favor of

Valla & Associates, Inc., P.C.
333 Bush Street, Suite 2020
San Francisco, CA 94104
www.vallalaw.com

the non-moving party. *In re Western States,* 715 F.3d 716, 741 (9th Cir. 2013); *AT&T v. Compagnie Bruxelles Lambert*, 94 F.3d 586, 588 (9th Cir. 1996).

Here, Plaintiff has made a prima facie showing of jurisdictional facts: Wilson is a resident of California and is the CEO of AIT, beginning in 2015 until present (Dkt. 44 at ¶2); AIT, the subject of this lawsuit, is a corporation with its principal place of business in California at 818 West Seventh Street, Los Angeles, California 90017 (Dkt. 44 at ¶12);  AIT was registered to do business in California beginning as early as June 4, 2009, and continued through all relevant times (Dkt. 44 at ¶14); and Pharos, through its agent, Devlin, acted on behalf of AIT as CEO of AIT at some time on and around 2014 and during the relevant time period (Dkt. 44 at ¶16). Specifically, Devlin was listed as CEO of AIT on AIT's November 20, 2014 filing of the Statement of Information with the California Secretary of State. *Id.* Further, while Wilson was CEO, he governed and took actions related to AIT from the State of California and while residing in California pursuant to 28 U.S.C. § 1391(c)(1), including unlawfully selling AIT to Aurora Healthcare, which irreparably harmed Plaintiff. Dkt. 44 at ¶17. Defendants acted through Wilson, when he governed and took actions related to AIT from the State of California. *Id.* Further, upon information and belief, while AIT was registered to do business in California and while Wilson was operating AIT from the State of California, Pharos sold the Pharos Notes and Investment in AIT to ARF, which was a transaction approved by Wilson in California. Dkt 44 at ¶18. Finally, Devlin, an agent for Pharos and as CEO of AIT, had knowledge regarding the dire financial status of AIT that other investors, including Plaintiff, did not have that led to Pharos' decision to quietly back out of AIT. Dkt 44 at ¶127.

### i. Pharos has sufficient minimum contacts with California.

Specific personal jurisdiction may be exercised when the "nature and quality" of the defendant's contacts with the forum state are significant in relation to the specific cause of action. *Data Disc, Inc. v. Systems Technology Assoc., Inc.,*

Valla & Associates, Inc., P.C.
333 Bush Street, Suite 2020
San Francisco, CA 94104
www.vallalaw.com

557 F.2d 1280, 1287 (9th Cir. 1977). In order for the forum state to properly assert jurisdiction over an out of state defendant, the defendant must have purposefully directed its activities towards residents of the forum state. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985). Further, the forum-related activities must be related to the claim, and the exercise of jurisdiction must be reasonable. *Ballard v. Savage*, 65 F.3d 1495, 1498 (9th Cir. 1995).

Where, as here, no federal statute authorizes personal jurisdiction, the district court applies the law of the state in which the court sits. *Marvix Photo, Inc., v. Brand Techs., Inc.*, 647 F.3d 1218, 1223 (9th Cir. 2011) (citations omitted). California's long-arm statute is "coextensive with the outer limits of due process under the state and federal constitutions, as those limits have been defined by the United States Supreme Court." *Republic Int'l Corp. v. Amco Eng'rs, Inc.*, 516 F.2d 161, 167 (9th Cir. 1976), quoting *Threlkeld v. Tucker*, 496 F.2d 1101, 1103 (9th Cir. 1974). As such, the Court need only consider the requirements of due process. Due process requires that nonresident defendants have "minimum contact" with the forum state "such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).

The Ninth Circuit has developed a three-part test for assessing the exercise of specific personal jurisdiction over a party: (1) the non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws; (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and (3) the exercise of jurisdiction must comport with fair play and substantial justice, *i.e.*, it must be reasonable. *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802, quoting *Lake v. Lake*, 817 F.2d 1416, 1421 (9th Cir. 1987). "The plaintiff bears the burden of

satisfying the first two prongs of the test . . . If the plaintiff succeeds in satisfying both of the first two prongs, the burden then shifts to the defendant to 'present a compelling case' that the exercise of jurisdiction would not be reasonable." *Schwarzenegger*, 374 F.3d at 802, quoting *Burger King*, 471 U.S. at 476-78.

Here, Plaintiff meets the first two prongs of the test in *Schwarzenegger*:

<u>First</u>, based on the allegations in the FAC, it is clear that Pharos purposefully availed itself of the privilege of conducting activities in California by, in concert with the other defendants in this action, (1) affirmatively appointing Devlin as CEO in California during relevant time periods, and registering to do business through him in California – which, by its very nature, avails Pharos through Devlin of the privilege to conduct business in the state; and (2) through the subsequent CEO, Wilson, who was and still is a resident of California and has conducted all business of AIT in California, including the sale of AIT to Aurora Healthcare. *In re Automobile Antitrust Cases I and II*, 37 Cal. Rptr. 3d 258 (App. 1st Dist. 2005) (under the representative services doctrine for personal jurisdiction over a nonresident defendant, the contacts of a local agent through which a foreign principal acts may be imputed to that foreign defendant and agency principles apply to confer jurisdiction in California over the nonresident defendant corporation).

Further, Pharos, through its agent, Devlin, entered into several contracts with AIT and Plaintiff, including the 2006 Stockholder Agreement that had substantial connections to the State of California. Dkt. 44, **Exhibit M**. Here, Plaintiff's claims against Pharos are based on Pharos' breach of the Stockholder Agreement. *Integral Development Corp. v. Weissenbach,* 99 Cal. App. 4th 576 (6th Dist. 2002) (it is sufficient for purposes of due process that the suit is based on a contract that has a substantial connection with the forum state); *Bruns v. Desoto Operating Co.*, 251 Cal. Rptr. 462 (App. 4th Dist. 1988) (California had personal jurisdiction over foreign corporation which had assumed operating agreement contracts of mineral

Valla & Associates, Inc., P.C.
333 Bush Street, Suite 2020
San Francisco, CA 94104
www.vallalaw.com

Valla & Associates, Inc., P.C.
333 Bush Street, Suite 2020
San Francisco, CA 94104
www.vallalaw.com

leases for oil wells located in other states, even though corporation had little contact with California).

Second, Plaintiff's claims against Pharos arise out of its fraudulent activities and conspiracy. Pharos negotiated, entered into, and was bound by agreements, including, the Settlement Agreement with AIT (Dkt. 44, **Exhibit E**) and the Novation Agreement with AIT and ARF (Dkt. 44, **Exhibit F**). These contracts were entered into by a company based in California, AIT.

Accordingly, the burden shifts to Pharos to show that the exercise of jurisdiction by this Court is not reasonable. Pharos has not done so and cannot possibly do so. Jurisdiction by this Court is reasonable in that judicial economy is best served by adjudicating one matter against all defendants, all of which are subject to the jurisdiction of this Court, rather than breaking up the case into multiple jurisdictions. Further, Pharos did not present a compelling case that the presence of Pharos in the Central District of California is unreasonable. *Tatung Co., Ltd. v. Shu Tze Hsu*, 43 F.Supp.3d 1036 (C.D. Cal. 2014) (finding that "California has a strong interest in providing redress for companies doing business in California for California-based entities" and therefore holding that jurisdiction is reasonable).

### ii. In the alternative, this Court should stay its decision on Pharos' motion and grant limited discovery on jurisdiction.

Pursuant to Rule 12(d) of the Federal Rules of Civil Procedure, a Court may hold in abeyance a motion to dismiss for lack of personal jurisdiction to enable the parties to employ discovery on the jurisdictional issue. Fed. R. Civ. P. 12(d). The question of whether to allow discovery relating to jurisdictional issues while a motion to dismiss is pending, is generally within the discretion of the trial judge; however, where pertinent facts bearing on the question of jurisdiction are in dispute, discovery should be allowed. *Orchid Biosciences, Inc. v. St. Louis Univ.*, 198 F.R.D. 670 (S.D. Cal. 2001).

Valla & Associates, Inc., P.C.
333 Bush Street, Suite 2020
San Francisco, CA 94104
www.vallalaw.com

Here, Plaintiff has made more than a colorable showing that personal jurisdiction exists, and has put forward evidence tending to establish personal jurisdiction over Pharos. However, if this Court determines that there are not enough facts to exercise personal jurisdiction, the Court should permit the parties to obtain jurisdictional discovery. The relevant facts that Plaintiff expects to come to light during limited discovery include: (1) Devlin's business activities in California; (2) discussions related to the Pharos transaction that took place, at least in part, in California; (3) discussions related to the AIT sale to Aurora Healthcare took place in California.

### C. California Law Applies to Fraud and Conspiracy Claims

The parties do not dispute that Delaware substantive law governs contractual claims that arise out of the Stockholder Agreements. However, Plaintiff's claims against Pharos for fraud and conspiracy arise out of Pharos' fiduciary duties and activities additional to the Stockholder Agreements, and therefore California law applies.

Here, the legal relationship upon which Plaintiff's fraud and conspiracy claims are based arise from Pharos' fiduciary duties owed to minority shareholders, like Plaintiff, as a *de facto* controlling shareholder of AIT. The duties of directors, officers, and controlling stockholders towards a corporation and its shareholders are fiduciary in nature. *Guth v. Loft, Inc.*, 23 Del. Ch. 255, 270 (Del. 1939). Where a stockholder controls the conduct of the corporation similar to board control, the law of fiduciary duties logically extends to the controlling stockholder. *Abraham v. Emerson Radio Corp.*, 901 A. 2d 751, 759 (Del. Ch. 2006).  Pharos' fiduciary duty is premised on its capacity as a *de facto* controlling stockholder of AIT. *Id.* Thus, the choice of law provisions included in the Stockholder Agreements do not apply to the claims that arise under a separate and distinct fiduciary duty.

Additionally, neither the conspiracy nor the underlying fraudulent activities were conducted in or are in any way related to Delaware.  As described above, both the fraud and conspiracy were perpetrated, at least in part, in the state of California, through the conduct of Devlin, Wilson, and the other Defendants.[2]

### i.  Pharos owed a duty to Plaintiff.

A stockholder owes a fiduciary duty to other stockholders "only if it owns a majority interest in or exercises control over the business affairs of the corporation." *Ivanhoe Partners v. Newmont Mining Corp.*, 535 A.2d 1334, 1344 (Del. 1987). A stockholder with less than a 50% stake in the corporation can still be considered controlling if it somehow controls corporate conduct, such as through its relationships with directors or through threats of retaliation on other transactions. *Kahn v. Lynch Communication Systems, Inc.*, 638 A.2d 1110, 1113-15 and 1121-22 (Del. 1994); see *In re Zhongpin Inc. S'holders Litig., C.A.* No . 7393-VCN, 2014 WL 6735457, at *7– *9 (Del. Ch. Nov. 26, 2014) (17.3% shareholder considered controlling at pleading stage where he was alleged to be company's largest shareholder, its founder, chairman, and CEO, and to exercise meaningful influence over director elections, merger transactions, and bylaw amendments), rev'd on other grounds, *In re Cornerstone Therapeutics Inc. S'holders Litig.*, 115 A.3d 1173 (Del. 2015).

Where a stockholder controls the conduct of the corporation similar to board control, the law of fiduciary duties logically extends to the controlling stockholder. *Abraham v. Emerson Radio Corp.*, 901 A.2d at 759  ("the premise for contending that the controlling stockholder owes fiduciary duties in its capacity as a

---

[2] As a practical matter, Pharos does not request any remedy related to the assertion that Delaware applies to all claims against it. Therefore, Plaintiff requests that if this Court finds that Delaware substantive law applies to the remaining claims against Pharos, that the Court analyzes the below claims under Delaware law or grant Plaintiff leave to amend the complaint as to Pharos, rather than dismiss Plaintiffs' claims against Pharos in their entirety.

Valla & Associates, Inc., P.C.
333 Bush Street, Suite 2020
San Francisco, CA 94104
www.vallalaw.com

Valla & Associates, Inc., P.C.
333 Bush Street, Suite 2020
San Francisco, CA 94104
www.vallalaw.com

stockholder is that the controller exerts its will over the enterprise in the manner of the board itself.").

Plaintiff has pled sufficient factual claims to demonstrate that Pharos was a *de facto* controlling shareholder. These allegations include: (1) Pharos' agent, Devlin, served on the board of AIT and was CEO of AIT during relevant time[3]; (2) Pharos owned 83.3% of AIT Series C Preferred Stock and 83.3% of Series D Preferred Stock, and (3) Pharos issued the Pharos Notes, making it the senior secured creditor of AIT. At this time, Plaintiff has not had an opportunity to uncover Devlin's specific conduct because that conduct is known only to Pharos. Further, the Court can reasonably infer that because Devlin was CEO of AIT when he was also an agent for Pharos, he was exercising control over AIT for the benefit of Pharos. Thus, the allegations are not mere "conclusory allegations."

### ii.  Plaintiff's claims are not time-barred

Pharos' argument that Plaintiff's claims against it are time-barred fails both under California and Delaware substantive law. While the parties agree that the statute of limitations period as applied to each cause of action against Pharos is three years pursuant to both California and Delaware law, the parties disagree as to what the triggering event is to each claim. Additionally, Pharos ignores that applicable tolling provisions also apply.

In California, when there is a cause of action that is based upon conspiracy to commit fraud, the limitations period is tolled until the commission of the last overt act pursuant to the conspiracy has been completed. *Wyatt v. Union Mortgage Co.*, 24 Cal. 3d 773, 774 (Cal. 1979). However, the three-year limitations period does not commence until either the discovery of the fraud or the last overt act of

---

[3] Defendants attempt to provide their own facts and analysis regarding when Devlin was CEO of AIT. However, Defendants have not requested that this Court take judicial notice of any facts whatsoever. Further, the facts alleged in the complaint state that Devlin was CEO during the relevant time period. As a result, the Court should ignore any factual claims that Devlin was not CEO of AIT during the relevant time period.

Valla & Associates, Inc., P.C.
333 Bush Street, Suite 2020
San Francisco, CA 94104
www.vallalaw.com

the fraudulent conspiracy, whichever is later. *Aaroe v. First American Title Ins. Co.*, 222 Cal.App.3d 124 (1st Dist. 1990).

Delaware also recognizes the tolling of the statute of limitations where a defendant fraudulently has concealed from a plaintiff facts necessary to put him on notice of a breach. *Vicky v. Koninklijke Philips Electronics*, *N.V.*, 85 A. 3d 725, 789 (Ch. Del. 2014). As with the discovery rule, a statute of limitations is tolled only until the plaintiff becomes aware of his rights or until he could have become aware by the exercise of reasonable diligence.

As alleged in the FAC, Plaintiff was able to piece together, for the first time, the fraud, the conspiracy and the concealed facts, including Pharos' breach of the Stockholder's agreement, that gave rise to Plaintiff's claims only on July 31, 2018, when, during the course of post-judgment discovery and a debtor's examination of Wilson, in an effort to enforce Plaintiff's judgment against AIT in the *Castel v. Aurora* matter, Wilson turned over some documents. Dkt. 44 at ¶ 51. Although the last overt act of the conspiracy, *i.e.*, the sale of AIT to Aurora Healthcare, occurred on October 31, 2016, the delayed discovery rule tolled the statute until Plaintiff's discovery of the underlying concealed facts on July 31, 2018, which is well within the statute of limitations period for all of Plaintiff's claims against Pharos.

However, even if this Court determines that the delayed discovery rule does not apply here, Plaintiff's claims are not precluded by statute because Defendants' last overt act was within the limitations period. The FAC specifically identifies the last overt act of the conspiracy, including Defendants' fraudulent conduct, was the unlawful sale of AIT to Aurora Healthcare, which occurred on October 31, 2016. It is undisputed that the unlawful sale of AIT to Aurora Healthcare occurred less than three years before the filing of the complaint on October 30, 2019, and thus within the statute of limitations for each claim.

//

//

Valla & Associates, Inc., P.C.
333 Bush Street, Suite 2020
San Francisco, CA 94104
www.vallalaw.com

### D. Plaintiff's breach of contract claim against Defendants is sufficient.

#### i.   Plaintiff sufficiently pled breach of contract.

Defendant inartfully disregards relevant provisions of applicable contracts, in an attempt to skirt its duties and bury its head in the sand.

The underlying contracts that govern Pharos' duties to Plaintiff require Pharos to consult with Plaintiff prior to the sale of its shares. Pharos breached by failing to do so and instead concealed the entire transaction.

Section 4 of the 2006 Stockholder Agreement of AIT, attached as **Exhibit M** to the FAC, provides that "in respect to any matter that requires the approval of the holders of the Series C Stock as a separate class . . .  Pharos shall make reasonable efforts to consult with the Investor (here, Plaintiff) before approving such matter." The purchase of Pharos Notes and Investment by ARF was a matter requiring the consent of the majority holders of Series C Preferred Stock (here, Pharos) voting as separately as a class. Dkt. 44 at **Exhibit M** which applies the provisions included in AIT's Third Amended and Restated Certificate of Incorporation. When Pharos failed to consult with Plaintiff before selling the Pharos Notes and Investment to ARF, Pharos breached its contractual obligations towards Plaintiff under the Stockholder Agreement, causing damages to Plaintiff.

The allegations of breach of contract against Pharos constitute exactly what the Stockholder Agreement requires Pharos to do, *i.e.*, consult with Plaintiff prior to the sale of Pharos' Investment to ARF. Specifically, Plaintiff alleges that (1) pursuant to the Stockholder Agreement, Pharos was under a contractual obligation to consult with Plaintiff prior to selling its shares of Series C and Series D preferred Stock in AIT to ARF (Dkt. 44 at ¶¶ 66-75), (2) Pharos breached its contractual obligation when it failed to consult with Plaintiff regarding ARF's acquisition of its Investment (*Id.*), and (3) damages resulted from Pharos' breach of its contractual obligations towards Plaintiff under the Stockholder Agreement. (*Id.*) //

### ii.  Damage allegations are sufficient.

A lack of detail does not render an allegation conclusory. *Klein v. Wasseran*, 2019 WL 2296027, at \*6 (Del. Ch. May 29, 2019) ("Conclusory allegations are those that 'state[ ] a generalized conclusion with no supporting facts.' By contrast, the Amended Complaint points to specific events demonstrating the alleged campaign . . . [Plaintiff]'s allegations concerning the alleged campaign could be more detailed, but a lack of detail does not render an allegation conclusory").

Plaintiff's FAC points to specific facts demonstrating Pharos' breach of its contractual obligations towards Plaintiff; as with any other elements of its breach of contract claim, a lack of detail does not render Plaintiff's alleged damages which are based on the sufficiently described duty and breach, conclusory. Plaintiff alleged that "as a result of the above actions and inactions by Pharos, Plaintiff has suffered damages in the amount to be proven at trial." Thus,  Plaintiff's allegation that it suffered damages as a direct result of Pharos's breach of the Stockholder's Agreement, is sufficiently pled.

### E.  Plaintiff's Breach of Fiduciary Duty Claim Against Pharos is Sufficient.

#### i.  Plaintiff's claim is not duplicative, and arises out of separate duties and factual allegations than the breach of contract claim

Pharos seeks to dismiss Plaintiff's breach of contract claim by arguing that Plaintiff's claims arise solely from contractual rights contained in the Stockholder Agreement, thereby precluding fiduciary claims.

Delaware law recognizes that breach of contract and breach of fiduciary duty claims can arise from the same nucleus of operative facts. *Schuss v. Penfield Partners, L.P.*, 2008 WL 2433842, at \*10 (Del. Ch. June 13, 2008) (holding that plaintiff's breach of fiduciary duty was not duplicative of its breach of contract claim "[a]lthough these fiduciary duty claims share a common nucleus of operative facts with Plaintiffs' breach of contract claim, they depend on additional facts as

Valla & Associates, Inc., P.C.
333 Bush Street, Suite 2020
San Francisco, CA 94104
www.vallalaw.com

well, are broader in scope, and involve different considerations in terms of a potential remedy"). Only when the obligations at issue arise expressly and solely from the relevant contract does the contract claim take precedence and the fiduciary duty claim get dismissed. *Id.* See also *Gale v. Bershad*, 1998 WL 118022, 5 (Del. Ch. Mar. 4, 1998). In short, the relevant inquiry is not whether the fiduciary and contract claims are based on the same facts, but rather, "whether there exists an independent basis for the fiduciary duty claims apart from the contractual claims, even if both are related to the same or similar conduct. If so, the fiduciary duty claims will survive." *PT China LLC v. PT Korea LLC*, 2010 WL 761145, 7 (Del. Ch. Feb. 26, 2010).

Under Delaware common law, there is a strong independent basis for Plaintiff's claims challenging Pharos' action in concealing facts and failing to consult. While the breach of contract claim arises out of the Stockholders Agreements, the breach of fiduciary duty claim arises out of Pharos' status as a *de facto* controlling shareholder, an entirely different duty. Dkt. 44 at ¶¶ 143-144.

Further, the factual allegations are substantially different between the two claims. For example, in its breach of fiduciary duty claim, Plaintiff's allegations go beyond those of the breach of contract claim and demonstrate that Pharos conspired to conceal certain facts regarding AIT's dire financial situation and Cheng's plan to ultimately use the security and investments obtained from Pharos to buy AIT for a discount, among others. Dkt. 44 at ¶¶145-147.

As such, there is both an independent legal and factual basis for Plaintiff's fiduciary duty claim, and therefore the fiduciary duty claim must survive.

### ii. Pharos breached its fiduciary duties owed to Plaintiff

Defendant's claim that Plaintiff's fiduciary duty claim fails is predicated on two failed arguments—that Pharos did not owe a fiduciary duty to Plaintiff and that the business judgment rule applies to Pharos' actions.

-17-

1    Pharos owed fiduciary duties to Plaintiff through its status as a *de facto*

2 controlling shareholder of AIT, as addressed above. Controlling stockholders have

3 a duty to disclose material facts regarding transactions that affect minority

4 stockholders. *Lynch v. Vickers Energy Corp.*, 383 A.2d 278 (Del. 1977).

5    Here, Pharos, as *de facto* controlling stockholder of AIT, owed a fiduciary

6 duty to disclose to Plaintiff information regarding ARF, the buyer of its Series C

7 and Series D Preferred Stock in AIT which, through such sale, would have become

8 *de facto* controlling stockholder of AIT. This information was material as it

9 affected Plaintiff as minority shareholder of AIT and minority shareholder of

10 Series C and Series D Preferred Stock in AIT. Pharos failed to disclose this fact to

11 Plaintiff, thereby breaching its fiduciary duty to Plaintiff.

12    In addition, Defendant uses disputed facts about Devlin, which must be

13 construed in favor of Plaintiff, to attempt to prove that any fiduciary duties expired

14 upon the end of Devlin's tenure as CEO of AIT. This argument is flawed for a

15 number of reasons. First, Pharos does not cite to any authority to demonstrate

16 fiduciary duties end when an agent's tenure as an officer of the company also ends.

17 Second, Plaintiff alleges in its complaint that Devlin was CEO during the relevant

18 time periods. Dkt. 44 at ¶ 16. Third, even assuming that Defendant is correct and

19 Devlin was not CEO during the Pharos transaction, the parties' agreement to

20 conspire began before the Pharos' transaction occurred.

21    Further, Plaintiff adequately pled breach of fiduciary duty pursuant to

22 Delaware's *entire fairness* doctrine. "A shareholder plaintiff challenging a board

23 decision has the burden at the outset to rebut the [business judgment] rule's

24 presumption." *Cede & Co. v. Technicolor, Inc.*, 634 A.2d 345 (Del. 1993), citing

25 *Citron v. Fairchild Camera and Instrument Corp.*, 569 A. 2d 53 (Del. 1989). If a

26 shareholder plaintiff assumes the burden of providing evidence that controlling

27 shareholders, in reaching their challenged decision, breached any one of

28 the *triads* of their fiduciary duty—good faith, loyalty or due care, then the rule is

Valla & Associates, Inc., P.C.
333 Bush Street, Suite 2020
San Francisco, CA 94104
www.vallalaw.com

rebutted, the burden shifts to . . . the proponents of the challenged transaction, to prove to the trier of fact the 'entire fairness' of the transaction to the shareholder plaintiff. *Cede & Co.,* 634 A.2d at 345, citing *Nixon v. Blackwell*, 626 A. 2d 11366, 1376 (Del. 1993). Under the entire fairness standard, the defendant must establish that the transaction was the product of both fair dealing *and* fair price. *Id.*

Pursuant to the entire fairness doctrine, Plaintiff alleges that Pharos did not show the entire fairness of the sale of the Pharos Notes and Investment in AIT to ARF and did not show that the sale was the product of both fair dealing and fair price. Pharos' Notes alone were valued at more than $3,300,000, however ARF purchased Pharos' Notes and Investment in AIT for $450,000, pennies on the dollar. Dkt 44. at ¶¶ 28, 39, 84, 88. Pharos' benefit from the transaction, which was not communicated to Plaintiff in any way, was part of a larger scheme envisioned by Cheng who, finally, bought AIT's assets through the Cayman Islands Company by obtaining a $4,200,000 kickback. *Id.*

### F.  Plaintiff's fraud claim is sufficient.

Pharos' allegations related to Plaintiff's fraud claim are nothing more than boilerplate objections that Plaintiff failed to plead with particularity, despite the multitude of factual allegations that demonstrate the contrary. Plaintiff adequately pled the necessary "who, what, where, when, and how" to put Defendant on notice and to meet the heightened requirements of Fed. Rule Civ. Proc. Rule 9(b).

"[A] pleading is sufficient under Rule 9(b) if it identifies the circumstances constituting fraud so that the defendant can prepare an adequate answer from the allegations." *Semegen v. Weidner*, 780 F.2d 727, 734–35 (9th Cir. 1985) (internal quotation marks omitted). But under Rule 9(b), a plaintiff "is not required to allege all facts supporting each and every instance" of allegedly fraudulent conduct. *Ebeid ex rel. United States v. Lungwitz*, 616 F.3d 993, 999 (9th Cir. 2010) (internal quotation marks omitted).

Valla & Associates, Inc., P.C.
333 Bush Street, Suite 2020
San Francisco, CA 94104
www.vallalaw.com

Valla & Associates, Inc., P.C.
333 Bush Street, Suite 2020
San Francisco, CA 94104
www.vallalaw.com

Further, courts apply Rule 9(b) more leniently when omissions, rather than affirmative representations are involved, as is the case here. *Asghari v. Volkswagen Group of Am., Inc.*, 42 F.Supp. 3d 1306, 1325 (C.D. Cal. 2013). Courts have found that plaintiffs have sufficiently pled fraudulent concealment claims when they alleged "the 'what' the 'why' and the 'how'". *In re Toyota Motor Corp.*, 754 F.Supp.2d 1145 , 1190-91(C.D.Cal. 2010).

First, Plaintiff has sufficiently pled and demonstrated that Pharos was in a fiduciary relationship with Plaintiff through its status as *de facto* controlling stockholder in AIT.[4]

Second, contrary to Defendant's assertions, Plaintiff has adequately pled each element with particularity.

**Who**: Pharos intended to and did deceive Plaintiff. Dkt. 44 at ¶¶ 123-125.

**What/When**: Pharos failed to communicate material facts to Plaintiff regarding the sale of Pharos Notes and Investments to ARF on November 25, 2015. Additionally, Pharos failed to communicate material facts including that Cheng was an agent for ARF when ARF bought the Pharos Notes and Investment at a discounted price, converted its secured debt into an equity interest in Aurora Healthcare, was as an agent for the Cayman Islands Company on the buyer side of the AIT sale transaction, and was as a shareholder of AIT on the seller side of the AIT sale transaction. Dkt. 44 at ¶¶ 124-125.

**Where**: Pharos, through Devlin, who was CEO of AIT, acted on behalf of Pharos while AIT was registered to do business in California. Dkt. 44 at ¶¶ 16, 122, 127. Wilson later, as CEO of AIT, operated AIT from California. Dkt. 44 at ¶¶ 17, 122.

**Why**: Pharos, through Devlin, had information regarding the dire financial status of AIT that other investors, including Plaintiff, did not have. Further, Pharos

---

[4]  Pharos flippantly argues that it was never a *de facto* majority shareholder in AIT. However, a motion to dismiss is not an adequate vehicle for Defendant to assert factual claims or its defenses regarding a claim asserted against it.

Valla & Associates, Inc., P.C.
333 Bush Street, Suite 2020
San Francisco, CA 94104
www.vallalaw.com

intentionally failed to disclose concealed facts to Plaintiff so Pharos could regain some portion of its investment in AIT and quietly remove itself from AIT, before it was sold, leaving the other shareholders with no recovery. Dkt. 44 at ¶¶ 127-128. **How**: Plaintiff would have behaved differently had it known of the concealed facts. Dkt. 44 at ¶ 133.

Defendant attempts to apply Delaware law, which is inapplicable to the fraud claim for the reasons set forth above, in an effort to thwart liability for the fraud claim. However, even under Delaware law, Plaintiff has sufficiently pled a cause of action for fraud against Pharos.

### i. Plaintiff adequately pled reasonable reliance.

In proving reasonable reliance in a fraud claim one need only prove that, "had the omitted information been disclosed, one would have been aware of it and behaved differently." *Mirkin v. Wasserman*, 5 Cal. 4th 1082 (1993).

In its moving papers, Pharos acknowledges that Plaintiff pled both reliance and damages, and therefore Pharos was put on notice of both. Specifically, Plaintiff alleges that "Had PHAROS and ARF PARTNERS disclosed the concealed facts, PLAINTIFF would have behaved differently." Dkt. 44 at ¶ 132. Further, to the extent Defendant argues that Plaintiff's FAC fails to allege specific instances of reliance, it is reasonable for the Court to draw an inference in favor of Plaintiff that Plaintiff reasonably relied on the facts that were provided to it without knowledge of those additional material facts that were being concealed. *Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987) (at the motion to dismiss stage, "the court must presume all factual allegations of the complaint to be true and draw all reasonable inferences in favor of the nonmoving party").

### ii. The Fraud Claim is not Duplicative.

Defendant incorrectly applies Delaware law to Plaintiff's fraud claim. In California, to maintain a cause of action for fraud through nondisclosure or concealment of facts, there must be allegations demonstrating that the defendant

Valla & Associates, Inc., P.C.
333 Bush Street, Suite 2020
San Francisco, CA 94104
www.vallalaw.com

was under a legal duty to disclose those facts. *Los Angeles Memorial Coliseum Com. v. Insomniac,* 233 C.A. 4th 803, 831 (Cal. App. 2015), citing *OCM Principal Opportunities Fund, L.P. v. CIBC World Markets Corp.*, 157 Cal. App. 4th (Cal. App. 2007).

Here, as discussed in detail above, the FAC demonstrates that Pharos was under a legal duty to disclose material facts regarding the sale of Pharos Notes and Investment to ARF and that such duty arose from the fiduciary relationship Pharos had with Plaintiff. Therefore, Pharos' fiduciary relationship with Plaintiff falls under one of the "four circumstances in which nondisclosure or concealment may constitute actionable fraud" *Los Angeles Memorial Coliseum Com.*, 233 Cal. App. 4th at 831. Plaintiff sufficiently maintains its fraud claim by demonstrating that Pharos was under a fiduciary duty to disclose material facts.

### G. Plaintiff's claim for conspiracy is sufficient.

Pharos' argument that Plaintiff's conspiracy claim fails is unsupported. Under California law, which governs Plaintiff's claim for conspiracy, "[t]he elements of an action for civil conspiracy are the formation and operation of the conspiracy and damage resulting to plaintiff from an act or acts done in furtherance of the common design." *Id.* at 833, citing *Applied Equipment Corp. v. Litton Saudi Arabia Ltd.*, 7 Cal. 4th 503, 510-11 (Cal. App. 1994).

First, similar to the *Los Angeles* case, Plaintiff's conspiracy claim is based on Plaintiff's well pleaded fraud claim. Dkt. 44 at ¶ 155[5].

Second, Plaintiff has demonstrated that there was an agreement by Pharos to commit a wrongful act. Dkt. 44 at ¶ 155. Plaintiff has pled that such agreement existed. *Id*. "General allegations of agreement have been held sufficient, and the conspiracy averment has even been held unnecessary, providing the unlawful acts or civil wrongs are otherwise sufficiently alleged." *Quelimane Co. v. Stewart Title*

---

[5] Paragraph 155 incorporates the fraud allegations into the conspiracy claims and forms a basis for conspiracy.

Valla & Associates, Inc., P.C.
333 Bush Street, Suite 2020
San Francisco, CA 94104
www.vallalaw.com

*Guaranty Co.* 19 Cal.4th 26,  47-48 (1998) (called into doubt on other grounds). California permits that an agreement to commit fraud may be implied by the conduct of the parties. CACI 3600. Further, "[c]onspiracies are typically proved by circumstantial evidence. '[S]ince such participation, cooperation or unity of action is difficult to prove by direct evidence, it can be inferred from the nature of the act done, the relation of the parties, the interests of the alleged conspirators, and other circumstances.'" *Rickley v. Goodfriend,* 212 Cal.App.4th 1136, 1166 (2013) (internal citation omitted).

Here, Plaintiff's conspiracy claim is based on the underlying fraud and concealment claim, which is alleged in detail in Plaintiff's First, Second and Third causes of action for Fraud and Concealment against Defendants. Based on those factual allegations surrounding the fraud, and the parties' conduct in actually perpetrating the fraud, it can be inferred that the Defendants agreed among themselves at all relevant times to commit fraud and concealment, which is sufficient to plead conspiracy pursuant to California law.

### H. Plaintiff has sufficiently pled its unjust enrichment claim.

Quasi-contract in California is a claim for relief that seeks restitution based on the defendant's unjust enrichment. *Astiana v. Hain Celestial Group, Inc.*, 783 F.3d 753, 762 (9th Cir. 2015); *Jonathan Chuang v. Dr. Pepper Snapple Grp., Inc.*, Case No. 17-cv-01875, 2017 WL 4286577, at *7 (C.D. Cal. Sept. 20, 2017) ("Plaintiffs may plead unjust enrichment claims even when they are duplicative of other claims").

The purpose of a quasi-contract claim is to "restore the aggrieved party to his former position by return of the thing or its equivalent in money." *McBride v. Boughton*, 123 Cal. App. 4th 379, 388 n.6 (2004). The bases for a quasi-contract claim may be unjust enrichment that is caused by . . . fraud. *Civic Partners Stockton, LLC v. Youssefi*, 218 Cal. App. 4th 1005, 1013 (2013).

In *Astiana*, the Ninth Circuit analyzed whether the plaintiffs' complaint

sufficiently pled a quasi-contract claim for restitution. *Astiana*, 783 F.3d at 763. The complaint alleged that the defendants had enticed the plaintiffs into purchasing one of the defendant's products through false and misleading labeling, which resulted in the defendant being unjustly enriched. *Id.* The Ninth Circuit stated that "[t]his straightforward statement is sufficient to state a quasi-contract cause of action." *Id.* Accordingly, the Ninth Circuit reversed the district court's dismissal of the plaintiffs' restitution claim, which was to be construed as a quasi-contract claim. *Id.*

Therefore, this Court should construe Plaintiff's unjust enrichment claim as a quasi-contract claim seeking restitution, which is recognized as a claim for relief in California.

However, even if Delaware law applies to the unjust enrichment claim, the claim nevertheless survives this motion. Delaware law has long recognized a cause of action for unjust enrichment. *Fleer Corp. v. Topps Chewing Gum, Inc*., 539 A.2d 1060, 1062 (Del. 1988).  Under Delaware law, unjust enrichment is the "unjust retention of a benefit to the loss of another, or the retention of money or property of another against the fundamental principles of justice or equity and good conscience." *Ryan v. Gifford,*  918 A.2d 341, 361(Del. Ch. 2007) .

//
//
//
//
//
//
//
//
//
//

PLAINTIFF CASTEL'S OPPOSITION TO DEFENDANTS PHAROS' MOTION TO DISMISS

Valla & Associates, Inc., P.C.
333 Bush Street, Suite 2020
San Francisco, CA 94104
www.vallalaw.com

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Valla & Associates, Inc., P.C.
333 Bush Street, Suite 2020
San Francisco, CA 94104
www.vallalaw.com

## IV.   CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests this Court deny Defendant's Motion to Dismiss pursuant to 12(b)(2) as to personal jurisdiction, or in the alternative, stay the Motion and grant limited discovery on jurisdictional issues. Additionally, Plaintiff requests this Court deny Defendant's Motion to Dismiss as to each argument related to its 12(b)(6) claims, as Plaintiff has sufficiently pled each claim against Pharos, or in the alternative, grant Plaintiff leave to amend the complaint to address any potential deficiencies.

DATED:  March 2, 2020                    Valla & Associates, Inc., P.C.


By:  ___*/s/ Lisa M. Parrish*_____
        Lisa M. Parrish, Esq.
        Attorneys for Plaintiff CASTEL S.A.

PLAINTIFF CASTEL'S OPPOSITION TO DEFENDANTS PHAROS' MOTION TO DISMISS