O

# United States District Court
# Central District of California

| | |
|---|---|
| CASTEL S.A., a Luxembourg joint stock company (societe anonyme),<br><br>              Plaintiff,<br><br>       v.<br><br>CHRISTOPHER A. WILSON, an individual; PHAROS CAPITAL PARTNERS II, LP, a Delaware limited partnership; PHAROS CAPITAL PARTNERS II-A, LP, a Delaware limited partnership; OLIVIA HO CHENG, an individual; ARF PARTNERS, LLC, a Massachusetts corporation; AURORA HEALTHCARE US CORP, a Massachusetts corporation; STEVEN J. JAMES, an individual.<br><br>              Defendants. | Case No.: 2:19-cv-09336-ODW-(MAAx)<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS TO DISMISS [46, 47, 48, 49]** |

## I.      INTRODUCTION

Before the Court are four motions:

1.      A Motion to Dismiss under Federal Rule of Civil Procedure ("Rule") 12(b)(6) filed by defendant Christopher Wilson ("Wilson"). (*See* Wilson Mot. to Dismiss ("Wilson Mot."), ECF No. 46.)

2.     A Motion to Dismiss under Rules 12(b)(2), 12(b)(6), and 9(b) filed by defendants Pharos Capital Partners II, LP, and Pharos Capital Partners II-A, LP (collectively, "Pharos").  (*See* Pharos Mot. to Dismiss ("Pharos Mot."), ECF No. 47.)

3.     A Motion to Dismiss under Rule 12(b)(6) filed by defendants Olivia Ho Cheng ("Cheng") and ARF Partners, LLC ("ARF") (collectively, the "ARF Defendants").  (*See* ARF Mot. to Dismiss ("ARF Mot."), ECF No. 48.)

4.     A Motion to Dismiss under Rules 12(b)(6) and 12(b)(2) filed by defendants Aurora Healthcare US Corp. ("Aurora") and Steven James ("James") (collectively, the "Aurora Defendants").  (*See* Aurora Mot. to Dismiss ("Aurora Mot."), ECF No. 49.)

Defendants' motions have been fully briefed.  For the following reasons, the Court **GRANTS IN PART** and **DENIES IN PART** Defendants' motions.[1]

## II.     PLAINTIFF'S ALLEGATIONS

Plaintiff Castel S.A., a Luxembourg joint stock company (*societe anonyme)* ("Plaintiff") filed its First Amended Complaint ("FAC") on January 29, 2020, alleging eight causes of action against seven defendants.  (*See* FAC, ECF No. 44.)  The FAC describes the insolvency and sale of Aurora Imaging Technology, Inc. ("AIT"), a company with a California principal place of business that developed, manufactured, and sold a system used to perform breast MRIs.  (FAC ¶¶ 21, 31–39.)

Plaintiff first invested in AIT on June 19, 2006, purchasing 1,010,101 shares of AIT's Series C preferred stock in accordance with the Series C Preferred Stock Purchase Agreement between Plaintiff and AIT.[2]  (FAC ¶ 23.)  Plaintiff again invested in AIT on July 15, 2008, purchasing 512,821 shares of AIT's Series D preferred stock in accordance with the Series D Preferred Stock Purchase Agreement.[3]   (FAC ¶ 24.)  Plaintiff therefore owned almost 4% of AIT and was at all relevant times a minority

---

[1] After carefully considering the papers filed in connection with the motions, the Court deemed this matter appropriate for decision without oral argument.  Fed. R. Civ. P. 78(b); C.D. Cal. L.R. 7-15.

[2] The Series C Preferred Stock Purchase Agreement is Exhibit A to the FAC.  (ECF No. 44-1.)

[3] The Series D Preferred Stock Purchase Agreement is Exhibit B to the FAC.  (ECF No. 44-2.)

shareholder of AIT.  (FAC ¶ 25.)  In addition to stock, Plaintiff lent $250,000 to AIT on March 14, 2011, documented by a promissory note.  (FAC ¶ 26.)  Pharos owned 83.3% of the Series C and Series D Preferred Stock of AIT and held $3,300,000 in senior secured promissory notes in AIT.  (FAC ¶ 27.)

Cheng was the President and CEO of AIT from 2002 to 2012, but was "basically forced to resign" by AIT's Board of Directors in 2012.  (FAC ¶¶ 76–77.) Cheng owned 185,814 shares of Series A preferred stock, 66,750 shares of Series B preferred stock, and 264,697 shares of Common Stock of AIT.  (FAC ¶ 78.)  Cheng is also the owner and manager of ARF, a Massachusetts limited liability company that purchased Pharos's notes and investments in AIT as described below.  (FAC ¶ 79.)

By mid-2015, AIT was over $20,000,000 in debt and insolvent.  (FAC Ex. H 4-5, ECF No. 44-8.)  Around that time, AIT hired Wilson as its CEO to guide it through bankruptcy.  (FAC ¶¶ 53–55.)  "At all relevant times," Wilson owned 17,811 shares of common stock, 13,122 shares of Series A preferred stock, and 625 shares of Series B preferred stock of AIT.  (FAC ¶ 56.)

On November 25, 2015, Pharos entered into a Stock and Note Purchase Agreement[4] under which Cheng, through ARF, purchased Pharos's secured notes and shares of AIT for $450,000.  (FAC ¶¶ 28, 79, 82–83.)  This transaction was approved by Wilson as CEO of AIT.  (FAC ¶ 58.)  Cheng thereafter began negotiations to purchase AIT's assets through Aurora Healthcare SPC, of which Cheng was the manager and CEO.  (FAC ¶¶ 31–33, 39.)

On October 20, 2016, Wilson informed Plaintiff that AIT "received only one offer to purchase the assets of the business for $8,500,000, which we are going to accept, subject to the approval of the shareholders."  (*See* FAC Ex. H, ECF No. 44-7.) Wilson also wrote that the purchase price was insufficient to pay AIT's existing debts, and the sale's proceeds would therefore be "distributed pro rata to all debtors, subject to their signing a settlement agreement and mutual release."  (FAC Ex. H.)  Plaintiff

---

[4] The Stock and Note Purchase Agreement is Exhibit D to the FAC.  (ECF No. 44-4.)

objected to the sale, stating that it did not have sufficient information to make an informed decision and that it was entitled to receive all material information concerning the proposed sale.  (*See* FAC Ex. G, ECF No. 44-8.)  Wilson responded that "I am happy to provide any information you want to receive" and attached AIT's financial statements for the previous five years showing more liabilities than assets, including over $12,000,000 in past due loans.  (*See* FAC Ex. G.)  Wilson continued: "The current owner of the senior secured debt originally issued to Pharos could have acquired all of the assets of the company by commencing legal proceedings, which would have left nothing for any of the unsecured creditors. While the current offer is less than we hoped, it is the only offer we have that returns any amounts to the unsecured creditors.  If you have specific information you would like to see, please let me know. We can also make all of the company records available to you at the company offices in Danvers, Massachusetts."  (FAC Ex. G.)  Plaintiff objected again, stating that Wilson's communications did not constitute all material information concerning the proposed sale, and that those communications were "inaccurate or misleading."  (*See* FAC Ex. G.)

Despite Plaintiff's objections, Aurora Healthcare SPC and AIT executed the Asset Purchase Agreement[5] on October 31, 2016 in which Aurora Healthcare SPC agreed to purchase AIT's assets for $8,500,000.  (FAC ¶ 37.)  The purchase price consisted of $4,300,000 in secured debt originally held by Pharos and $4,200,000 in cash.  (*See* Asset Purchase Agreement § 3, ECF No. 44-9.)  The Asset Purchase Agreement stated that the $4,300,000 in secured debt "would otherwise be due and payable to Buyer, as the holder of the senior secured debt of [s]eller to Pharos Capital Partners, L.P. and its affiliates."  (Asset Purchase Agreement § 3.1.)

Upon Plaintiff's information and belief, the Asset Purchase Agreement allowed Cheng to purchase Pharos's notes for "pennies on the dollar," and then receive $4,300,000 through Aurora Healthcare SPC at Plaintiff's expense.  (FAC ¶ 39.)

---

[5] The Asset Purchase Agreement is Exhibit I to the FAC.  (ECF No. 44-9.)

Plaintiff cites an unexecuted Waiver, Acknowledgement and Agreement Buyer Equity Conversion ("Waiver")[6] dated November 15, 2016.  (FAC ¶ 40.)   According to Plaintiff, the Waiver shows that AIT agreed to use $4,000,000 of the purchase price to pay toward debt held by ARF and BE Pacific Management Consulting Co, LTC, a separate lender to AIT.   (FAC ¶ 40.)   Plaintiff also alleges that BE Pacific Management Consulting Co, LTC and ARF would receive an equity interest in Aurora Healthcare SPC in exchange for their loans to AIT through the Waiver, an arrangement Plaintiff describes as a "kickback."  (FAC ¶ 40.)

Upon Plaintiff's information and belief, Aurora Healthcare SPC then transferred all or substantially all assets into Aurora to avoid liabilities on Plaintiff's note.  (FAC ¶¶ 44–46.)   Cheng founded Aurora and was its CEO at the time of this transfer and remains its CEO.  (FAC ¶ 81.)

Plaintiff ultimately did not accept the offer of payment from the Asset Purchase Agreement and filed a separate civil action against AIT for breach of contract, account stated, quantum meruit, and declaratory relief.  (FAC ¶¶ 47–48.)   Plaintiff obtained a judgement in that action against AIT on January 18, 2018 for $338,385.05 with interest.  (FAC ¶ 50.)   "Through the course of post-judgment discovery and a debtor's examination" of Wilson, "facts and documents first came to light" that gave rise to the instant action.  (FAC ¶ 52.)

Based on these allegations, Plaintiff brings the following claims: (1) fraudulent deceit and concealment against Wilson; (2) fraudulent concealment and deceit against James and Cheng; (3) fraudulent deceit and concealment against Pharos and ARF; (4) breach of fiduciary duty against Wilson; (5) breach of fiduciary duty against Pharos, ARF, and Cheng; (6) civil conspiracy against all defendants; (7) breach of contract against Pharos and ARF; and (8) unjust enrichment against Pharos and ARF.  (FAC ¶¶ 98-175.)

---

[6] The Waiver is Exhibit J to the FAC.  (ECF No. 44-10.)

### III.   LEGAL STANDARD

**A.   Rule 12(b)(2)**

Pursuant to Rule 12(b)(2), a party may seek dismissal of an action for lack of personal jurisdiction.   Once a party seeks dismissal under Rule 12(b)(2), the plaintiff has the burden of demonstrating that the exercise of personal jurisdiction is proper. *Menken v. Emm*, 503 F.3d 1050, 1056 (9th Cir. 2007).   Where the motion is based on written materials rather than an evidentiary hearing, "the plaintiff need only make a prima facie showing of jurisdictional facts."   *Sher v. Johnson*, 911 F.2d 1357, 1361 (9th Cir. 1990).   Accordingly, a court only "inquire[s] into whether [the plaintiff's] pleadings and affidavits make a prima facie showing of personal jurisdiction." *Caruth v. Int'l Psychoanalytical Ass'n*, 59 F.3d 126, 128 (9th Cir. 1995).   Although the plaintiff cannot "simply rest on the bare allegation of its complaint," uncontroverted allegations in the complaint must be taken as true.   *Amba Mktg. Sys., Inc. v. Jobar Int'l, Inc.*, 551 F.2d 784, 787 (9th Cir. 1977).   Factual disputes are resolved in the plaintiff's favor.   *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1154 (9th Cir. 2006).

A federal district court may exercise personal jurisdiction over a non-resident defendant if the defendant has "at least 'minimum contacts' with the relevant forum such that the exercise of jurisdiction 'does not offend traditional notions of fair play and substantial justice.'"   *Dole Food Co., Inc. v. Watts*, 303 F.3d 1104, 1110–11 (9th Cir. 2002) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 326 (1945)).   A district court may exercise either general or specific personal jurisdiction over nonresident defendants.   *Fed. Deposit Ins. Corp. v. British-Am. Ins. Co.*, 828 F.2d 1439, 1442 (9th Cir. 1987).

**B.   Rule 12(b)(6)**

A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a statement of claim for relief.   A complaint may be dismissed for failure to state a claim for two reasons: (1) lack of a cognizable legal theory; or (2) insufficient facts under a cognizable legal theory.   *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th

Cir. 1990).  In determining whether a complaint states a claim on which relief may be granted, its allegations of material fact must be taken as true and construed in the light most favorable to the plaintiff.  *Lazy Y Ranch Ltd. v. Behrens*, 546 F.3d 580, 588 (9th Cir. 2008).  "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

To survive a Rule 12(b)(6) dismissal, a complaint must allege enough specific facts to provide both "fair notice" of the particular claim being asserted and "the grounds upon which it rests."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 & n.3 (2007) (citation omitted).  While detailed factual allegations are not required, a complaint with "unadorned, the-defendant-unlawfully-harmed-me accusation[s]" and "'naked assertion[s]' devoid of 'further factual enhancement'" would not suffice. *Iqbal*, 556 U.S. at 678 (citation omitted).  Instead, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'  A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* (internal citation omitted).

Courts considering a Rule 12(b)(6) motion to dismiss are generally limited to information contained in the complaint.  *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001).  However, there are two instances in which courts are allowed to take into account information outside of the complaint without converting the motion into one for summary judgment: judicial notice and incorporation by reference.  *Hsu v. Puma Biotech., Inc.*, No. SA-CV-15-0865AGJ-CGX, 213 F. Supp. 3d 1275, 2016 WL 5859000, at *3 (C.D. Cal. Sept. 30, 2016) (citing *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003)).  Judicial notice allows courts to consider a fact that is not subject to reasonable dispute because it is generally known within the territory or can be determined from sources of unquestionable accuracy.  Fed. R. Evid. 201. Incorporation by reference allows a court to consider documents that are physically

attached to the complaint or those which are (1) referenced in the complaint, (2) central to the plaintiff's claim, and (3) of unquestioned authenticity by either party. *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006).

## C.   Rule 9(b)

Fraud-based claims are subject to the heightened Rule 9(b) pleading standard. Rule 9(b) requires a party alleging fraud to "state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). The allegations "must set forth more than the neutral facts necessary to identify the transaction. The plaintiff must set forth what is false or misleading about a statement, and why it is false." *Vess v. Ciba–Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (internal quotation marks omitted). In essence, the defendant must be able to prepare an adequate answer to the allegations of fraud. *Odom v. Microsoft Corp.*, 486 F.3d 541, 553 (9th Cir. 2007). Although conclusory allegations of the circumstances constituting the alleged fraud are insufficient, *see Moore v. Kayport Package Express, Inc.*, 885 F.2d 531, 540 (9th Cir. 1989), a party is not required to plead with specificity the alleged wrongdoer's state of mind, *see Concha v. London*, 62 F.3d 1493, 1503 (9th Cir. 1995).

## IV.   EXTRANEOUS MATERIALS

In support of his motion, Wilson submits the Declaration of Christopher A. Wilson in which he attests to communications between Wilson and Plaintiff's counsel concerning AIT's sale, allegations outside the FAC concerning the sale, and Wilson's stance that the FAC does not accurately depict disputed events. (*See* Wilson Decl., ECF No. 46-2.) Attached to the declaration are two exhibits intended to support Wilson's version of the instant dispute. (*Id.*)

Wilson did not file a request for judicial notice and none of his briefing explains how the Court could consider these extraneous materials in connection with a Rule 12(b)(6) motion. Wilson also does not even attempt to rebut Plaintiff's request to exclude these materials or point to allegations in the FAC that reference them in a manner where the incorporation by reference doctrine could apply.

As such, the Court has not considered the Wilson Declaration or its exhibits in adjudicating the motions.

## I.  DISCUSSION

### A. <u>Specific Jurisdiction and Jurisdictional Discovery</u>

Pharos and Aurora move to dismiss under Rule 12(b)(2) for lack of personal jurisdiction.  (Pharos Mot. 6–9; Aurora Mot. 7–8.)  Plaintiff does not dispute that Pharos and Aurora would not be subject to general jurisdiction in California; therefore, only specific jurisdiction is at issue.  (Opp'n to Pharos Mot. 6–10, ECF No. 66; Opp'n to Aurora Mot. 8–13, ECF No. 65.)  Plaintiff alternatively requests that the Court stay its decision on the motions filed by Pharos and Aurora until the parties can conduct jurisdictional discovery.  (Opp'n to Pharos Mot. 10–11; Opp'n to Aurora Mot. 13–14.)

The Ninth Circuit has established a three-prong test for analyzing a claim of specific personal jurisdiction:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
> (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and
> (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

*Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004) (citing *Lake v. Lake,* 817 F.2d 1416, 1421 (9th Cir. 1987).  A plaintiff can make a prima facie showing of personal jurisdiction by establishing the first two factors, at which point the burden shifts to the defendant to "present a compelling case that the presence of some other considerations would render jurisdiction unreasonable."  *Dole Food Co., Inc.*, 303 F.3d at 1114 (*citing Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 477 (1985)).

1    Jurisdictional discovery "may be appropriately granted where pertinent facts

2    bearing on the question of jurisdiction are controverted or where a more satisfactory

3    showing of the facts is necessary."  *Boschetto v. Hansing*, 539 F.3d 1011, 1020 (9th

4    Cir. 2008).   Such discovery is inappropriate though if it is merely a "fishing

5    expedition."  *Barantsevich v. VTB Bank*, 954 F.Supp.2d 972, 996 (C.D. Cal. 2013).

6    Ultimately, such discovery is within the district court's discretion.  *Wells Fargo & Co.*

7    *v. Wells Fargo Express Co.*, 556 F.2d 406, 430 n.24 (9th Cir. 1977).

8    a.  *Pharos*

9    Pharos is a limited partnership under the laws of Delaware with a Tennessee

10   principal place of business that invests in healthcare companies.   (FAC ¶¶ 3–4.)

11   Pharos was a minority shareholder in AIT from 2006 until November 15, 2015 when

12   Pharos sold its investments to ARF at a significant loss.   (FAC ¶¶ 28, 79, 82–83.)

13   Plaintiff alleges that Michael Devlin, Pharos's purported agent, "acted on behalf of

14   AIT as CEO of AIT at some time on or around 2014 and during the relevant time

15   period, and while AIT was registered to do business in California."   (FAC ¶ 16.)

16   Upon Plaintiff's information and belief, Michael Devlin, Pharos's purported agent and

17   "as CEO of AIT, had knowledge regarding the dire financial status of AIT" that

18   resulted in Pharos's decision to "quietly back out of AIT."  (FAC ¶ 127.)

19   Plaintiff argues that specific jurisdiction over Pharos is proper due to Michael

20   Devlin's earlier role as CEO of AIT and because Pharos "entered into several

21   contracts with AIT and Plaintiff, including the 2006 Stockholder Agreement that had

22   substantial connections to the State of California," which Plaintiff fails to identify.

23   (Opp'n to Pharos Mot. 9–10.)   Plaintiff also cites allegations concerning Wilson as

24   AIT's CEO in an apparent attempt to impute Wilson's actions to Pharos for

25   jurisdictional purposes.  (Opp'n to Pharos Mot. 7-8.)

26   The Court first rejects Wilson's alleged conduct as grounds to exercise

27   jurisdiction over Pharos because the FAC and Plaintiff's briefing fail to explain how

28

such conduct could be relevant to Pharos's role in Plaintiff's loss, if any.[7]  The Court likewise rejects Plaintiff's conclusory assertion that jurisdiction is proper because Michael Devlin served as Pharos's "agent" while he served as AIT's CEO years before the transactions that erased Plaintiff's investment.  (Opp'n to Pharos Mot. 9.)  Plaintiff's sole authority for this theory is the "representative services doctrine," which concerns general jurisdiction over foreign parent companies of local subsidiaries.  (*Id.* (citing *In re Auto. Antitrust Cases I & II*, 37 Cal. Rptr. 3d 258 (2005)).)  This doctrine is inapplicable because Pharos is an investor with no subsidiaries in California and Plaintiff's argument is based on specific (not general) jurisdiction.  *In re Auto. Antitrust Cases I & II*, 37 Cal. Rptr. 3d at 277.

Finally, Plaintiff has not shown that the 2006 Stockholder Agreement or the "several contracts" between AIT and Plaintiff executed while Michael Devlin was CEO establish sufficient contacts between Pharos and California.  (Opp'n to Pharos Mot. 9–10.)  In evaluating purposeful availment, the Supreme Court has instructed that "[i]f the question is whether an individual's contract with an out-of-state party *alone* can automatically establish sufficient minimum contacts in the other party's home forum, we believe the answer clearly is that it cannot."  *Burger King Corp.,* 471 U.S. at 478 (emphasis in original).  Instead, to determine whether the defendant purposefully established minimum contact within the forum, the Court must analyze "these factors—prior negotiations and contemplated future consequences, along with the terms of the contract and the partie' actual course of dealing."  *Id*. at 479.

The 2006 Stockholder Agreement and contracts attached to the FAC that could bear on Pharos's dealings with AIT do not demonstrate sufficient California connections to support specific jurisdiction.  (*See* ECF Nos. 44-4, 44-5, 44-6, 44-13.)  Plaintiff does not allege facts to support that these contracts were performed in or caused damage in California, or that prior negotiations or contemplated future

---

[7] Plaintiff's opposing papers repeat arguments that do not pertain to certain moving defendants, and the Court has therefore disregarded duplicative opposition arguments that are not relevant to grounds raised in each motion.

consequences were in California.  Plaintiff does not even point a specific contract provision or a consequence thereof that could support jurisdiction over Pharos. Instead, Plaintiff observes that AIT maintained a California principal place of business when it entered into the contracts and concludes that this is sufficient for specific jurisdiction.  (Opp'n to Pharos Mot. 9–10.)  Again, however, controlling precedent holds that such a transaction *alone* is insufficient to establish the first prong of specific jurisdiction, and Plaintiff points to no additional contacts beyond AIT's principal place of business to carry its burden as to purposeful availment.  *Burger King Corp.,* 471 U.S. at 478; *see also Walden v. Fiore*, 571 U.S. 277, 278 (2014) ("mere injury to a forum resident is not a sufficient connection to the forum.") Plaintiff has therefore failed to satisfy its burden as to purposeful availment.

Nor does Plaintiff provide a valid reason to stay adjudication of Pharos's Motion until after jurisdictional discovery.  Plaintiff instead argues that it requires more evidence concerning: "(1) Devlin's business activities in California; (2) discussions related to the Pharos transaction that took place, at least in part, in California; and (3) discussions related to the AIT sale to Aurora Healthcare that took place in California."  (Opp'n to Pharos Mot. 11.)

As discussed above, these requests are not based on sound jurisdictional theories.  Pharos sold its investments in AIT on November 15, 2015, well before the subsequent transactions at issue; any role Michael Devlin could have had with respect to AIT similarly predates relevant events; and merely entering into contracts with a California entity is insufficient on its own to establish specific jurisdiction.  Plaintiff's suspicion that discovery will uncover information establishing jurisdiction over Pharos is not enough to grant Plaintiff's requested relief. *See, e.g., Boschetto v. Hansing*, 539 F.3d 1011, 1020 (9th Cir. 2008) (affirming denial of jurisdictional discovery request based on a "hunch"); *Butcher's Union Local No. 498 v. SDC Inv., Inc.*, 788 F.2d 535, 540 (9th Cir. 1986) (affirming denial of jurisdictional discovery request based only on plaintiffs' statements that "they 'believe' that discovery will

enable them to demonstrate sufficient California business contacts to establish the court's personal jurisdiction").

Accordingly, the Court **GRANTS** Pharos's Motion under Rule 12(b)(2). Because the FAC cannot be cured by additional allegations as to Pharos, the claims against Pharos are **DISMISSED without leave to amend** for lack of jurisdiction. *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000).

                b. *Aurora*

Aurora primarily argues that all Plaintiff's claims against it are based on conspiracy and, thus, are insufficient on their own to establish specific jurisdiction. (Aurora Mot. 6–7.)  Plaintiff responds that it "is not attempting to use its allegation of conspiracy against [Aurora] as a basis for jurisdiction" but that the FAC's allegations establish a prima facie case against Aurora independent of conspiracy allegations. (Opp'n to Aurora Mot. 10.)  The Court agrees with Plaintiff.

As to the first and second prongs of specific jurisdiction, Aurora Healthcare SPC transferred all or substantially all of AIT's assets to Aurora shortly after AIT's initial sale.  (FAC ¶¶ 44–46.)  This transfer occurred despite Plaintiff's objections, in an alleged attempt to avoid liabilities on Plaintiff's note, and was conducted by AIT's CEO in California.  (FAC ¶¶ 17, 47.)  Moreover, James is Aurora's Chief Financial Officer ("CFO") and the former CFO of AIT who consulted AIT concerning its financials.  (FAC ¶¶ 8, 94.)  Hence, unlike Pharos, Aurora participated in the transfer of a California company's assets via a disputed transaction central to this litigation that occurred partly in California.  These allegations are sufficient to demonstrate purposeful availment and that Aurora's California-related activities gave rise to Plaintiff's claims.  *Schwarzenegger*, 374 F.3d at 802 ("A showing that a defendant purposefully availed himself of the privilege of doing business in a forum state typically consists of evidence of the defendant's actions in the forum, such as executing or performing a contract there.")

1   Since Plaintiff has satisfied the first two prongs of specific jurisdiction, the
2   burden shifts to Aurora to present a "compelling case that the exercise of jurisdiction
3   would not be reasonable." *Id.* Aurora has presented no evidence or argument
4   concerning this prong of the specific jurisdiction analysis and has therefore failed to
5   satisfy its burden.

6   Accordingly, Aurora's Motion under Rule 12(b)(2) is **DENIED**. Plaintiff's
7   request for jurisdictional discovery pertaining to Aurora is **DENIED AS MOOT**.

8   **B. Fraud Claims**

9   Plaintiff's first, second, and third claims are for fraudulent concealment. (FAC
10   ¶¶ 98–134.) "A claim for fraudulent concealment requires that: (1) the defendant
11   must have concealed or suppressed a material fact, (2) the defendant must have been
12   under a duty to disclose the fact to the plaintiff, (3) the defendant must have
13   intentionally concealed or suppressed the fact with the intent to defraud the plaintiff,
14   (4) the plaintiff must have been unaware of the fact and would not have acted as he
15   did if he had known of the concealed or suppressed fact, and (5) as a result of the
16   concealment or suppression of the fact, the plaintiff must have sustained damage.
17   *Davis v. HSBC Bank Nevada, N.A.*, 691 F.3d 1152, 1163 (9th Cir. 2012) (internal
18   quotations and citations omitted).

19   a. *The ARF Defendants*

20   The ARF Defendants argue that Plaintiff's fraud claims against them should be
21   dismissed because: (1) Plaintiff does not plausibly allege that it would have acted
22   differently had it known the allegedly concealed facts; (2) Plaintiff did not suffer
23   damages due to the ARF Defendants; (3) the ARF Defendants had no duty to disclose
24   the allegedly concealed facts; and (4) the allegedly concealed facts are not material.
25   (ARF Mot. 9–18.)

26   **i. Reliance and Damages**

27   Plaintiff's fraud claim is premised on the ARF Defendants concealing facts
28   concerning the sale of the Pharos notes and AIT's sale. (FAC ¶¶ 34–36, 48–50 113–

119.)  The ARF Defendants argue that disclosure of the allegedly concealed facts could not have led to a different result because Plaintiff objected to the sale when the only alternative was consenting to the sale.  (ARF Mot. 10–12.)  With no supporting authority, the ARF Defendants argue that Plaintiff purportedly having only one alternative concerning the sale warrants dismissal for lack of reliance.  (ARF Mot. 10–12.)

Plaintiff responds by identifying "multiple plausible choices" with respect to the sale if the ARF Defendants had disclosed all material facts, including Plaintiff offering to purchase AIT, forcing liquidation through bankruptcy, or consenting to the sale on different terms.  (Opp'n to ARF Mot. 13–14, ECF No. 64.)  While the ARF Defendants may be skeptical concerning the viability of Plaintiff's pre-sale options given AIT's financial state at the time of the alleged fraud, such skepticism does not warrant dismissal for lack of reliance at the pleading stage.  *Daniel v. Ford Motor Co.*, 806 F.3d 1217, 1225 (9th Cir. 2015) ("That one would have behaved differently can be presumed, or at least inferred, when the omission is material.") (citations omitted).

Plaintiff offers sufficient facts to infer that it could have changed its behavior due to the ARF Defendants' alleged omission of facts, i.e., had Plaintiff received unfavorable information in response to its pre-sale requests, it could have pursued a different course that resulted in a more favorable return.  (*See* Pl.'s Demand Letter, FAC Ex. G.)  The contention that Plaintiff would have objected to the sale regardless of what information the ARF Defendants disclosed is not based in the FAC and thus cannot foreclose reliance.  *Otano v. Ocean*, No. CV 13-01605 RSWL (JJCx), 2013 WL 2370724, at *3 (C.D. Cal May 30, 2013) ("[R]eliance is ordinarily a question of fact to be determined by a trial court or jury.")

The re-cast argument that Plaintiff's fraud claims should be dismissed for lack of "plausible damages" fails for similar reasons.  (ARF Mot. 12.)  Again, without citing supporting authority, the ARF Defendants argue that Plaintiff "would have lost its entire investment and loan" regardless of what information it received before AIT's

1   sale.  (ARF Mot. 12–13.)  Just as the Court cannot determine at this stage how

2   disclosure of the concealed information would have impacted Plaintiff's decisions

3   regarding AIT's sale, the Court also cannot foreclose the possibility that the ARF

4   Defendants' non-disclosure resulted in Plaintiff suffering compensable damages.

5   *Otano*, 2013 WL 2370724, at *3.  Taking Plaintiff's allegations as true, Plaintiff has

6   alleged its reliance on the ARF Defendants' omissions with respect to AIT's sale and

7   resulting damages in the form of, among other things, losses that could have been

8   avoided had Plaintiff timely received all material information concerning AIT's sale.

9        Accordingly, the ARF Defendants' Motion is **DENIED** in this regard.

10       Wilson's ground for dismissal based on Plaintiff's alleged lack of reliance and

11   damages is substantively identical to the ARF Defendants', and the opposition briefs

12   use virtually identical verbiage.  (*Compare* ARF Mot. 10-13 *with* Wilson Mot. 10-13.)

13   As such, Wilson's Motion is also **DENIED** in the same regard for the same reasons.

### ii.  Materiality

15       The ARF Defendants argue that Plaintiff's fraud claim should be dismissed

16   because none of the facts that they allegedly concealed are material.  (ARF Mot. 16–

17   18.)  Plaintiff alleges that Cheng "failed to communicate material facts including

18   Cheng's involvement as an agent for [ARF] on the seller side" of the AIT sale and

19   Cheng's "involvement as an agent" for Aurora Healthcare SPC "on the buyer's side of

20   the transaction."  (FAC ¶ 113.)  Plaintiff asserts that Cheng failed to disclose ARF's

21   "additional financial and equity benefit received from the sale, that Plaintiff did not

22   also receive and was not offered."   (FAC ¶ 113.)  Finally, Plaintiff alleges that Cheng

23   "failed to disclose the concealed facts so that [ARF] would receive a monetary

24   kickback and so that they would be able to transfer all of AIT's assets for a discounted

25   price into Cheng's other companies."  (FAC ¶ 114.)  The potential materiality of this

26   information and its role in Plaintiff's inability to make an informed decision regarding

27   the sale of AIT is bolstered by Plaintiff's repeated, but unsatisfied, demands for all

28   material information concerning that sale.  (*See* Pl.'s Demand Letter, FAC Ex. G.)

Construing the FAC liberally and in Plaintiff's favor, the Court finds that dismissal for lack of materiality would be inappropriate at this stage, as Plaintiff is entitled to discover additional facts concerning the allegedly fraudulent transactions. *Engalla v. Permanente Med. Grp., Inc.,* 15 Cal.4th 951, 977 (1997) ("[M]ateriality is generally a question of fact" and may be decided as a matter of law only if the misrepresentation is "so obviously unimportant that the jury could not reasonably find that a reasonable man would have been influenced by it."). Although the ARF Defendants argue that failure to disclose the nature of Cheng's involvement—and the attendant "financial and equity benefits"—is not material because their conduct was prudent, they do not adequately explain how the transactions' alleged propriety renders the ARF Defendants' pre-sale nondisclosures immaterial as a matter of law. (*See* ARF Mot. 16–18.) Indeed, the ARF Defendants' arguments concerning the veracity of Plaintiff's "kickback" theory do not speak to the materiality of allegedly undisclosed facts but are a premature attempt to argue the merits of the transactions themselves. (*See* ARF Mot. 16–18.) Absent additional contrary evidence, the FAC sufficiently alleges that the ARF Defendants failed to disclose material information. Accordingly, the ARF Defendants' Motion is **DENIED** to the extent it is based on lack of materiality.

### iii.  Duty to Disclose

The ARF Defendants argue that Plaintiff's fraud claim should be dismissed because they did not owe Plaintiff a fiduciary duty. (ARF Mot. 13–16.) The ARF Defendants' alleged fiduciary duties to Plaintiff are discussed below with respect to Plaintiff's breach of fiduciary duty claim. However, the Court will discuss the source of ARF Defendants' duty to disclose independent of fiduciary duties.

"To maintain a cause of action for fraud through nondisclosure or concealment of facts, there must be allegations demonstrating that the defendant was under a legal duty to disclose those facts." *L.A. Memorial Coliseum Com. v. Insomniac, Inc.,* 233

Cal. App. 4th 803, 831 (2015) (emphasis added). There are four circumstances under which that duty arises:

> (1) when the defendant is in a fiduciary relationship with the plaintiff; (2) when the defendant had exclusive knowledge of material facts not known to the plaintiff; (3) when the defendant actively conceals a material fact from the plaintiff; and (4) when the defendant makes partial representations but also suppresses some material facts. The latter three circumstances presuppose [] the existence of some other relationship between the plaintiff and defendant in which a duty to disclose can arise. This relationship has been described as a 'transaction,' such as that between seller and buyer, employer and prospective employee, doctor and patient, or parties entering into any kind of contractual arrangement.

*Burch*, 34 Cal. App. 5th 341, 349 (2019) (internal quotation marks and citations omitted).

In addition to alleged fiduciary duties, Plaintiff's fraud claim is premised on two circumstances: (1) that the ARF Defendants had exclusive knowledge of material facts not known to Plaintiff, and (2) that the ARF Defendants were actively concealing material facts from Plaintiff.  (FAC ¶¶ 113–118, 125–130.)  Plaintiff has also pled facts demonstrating the existence of a transactional relationship between it and the ARF Defendants in which the latter had a duty to disclose.  Indeed, as shown below with respect to Plaintiff's breach of contract claim, the ARF Defendants at minimum maintained a contractual relationship with Plaintiff that required the ARF Defendants to consult with Plaintiff before executing the Asset Purchase Agreement.  *Bigler-Engler v. Breg, Inc.*, 7 Cal. App. 5th 276, 312 (2017) ("a duty to disclose arises in this context only where there is already a sufficient relationship or transaction between the parties.").  This relationship alone, coupled with the two circumstances described above, is sufficient to give rise to a duty to disclose the allegedly concealed information.  *Id.*

Accordingly, the ARF Defendants' Motion to Dismiss Plaintiff's fraud claims is **DENIED**.

### b. *James*

James moves to dismiss Plaintiff's fraud claim based on the argument that he was not AIT's CFO between November 25, 2015 and October 31, 2016.  (Aurora Mot. 9–11.)  He cites Wilson's deposition testimony attached to the FAC in support, which states in relevant part that Wilson believes that James resigned as CFO in 2012. (*Id.* (citing FAC Ex. N 36).)  The parties agree that this testimony is contrary to the FAC's allegations, which states that "James was acting CFO" on November 25, 2015 and during the sale of AIT.  (FAC ¶ 110.)

At this stage, the Court must accept as true Plaintiff's allegation that James was AIT's CFO during the relevant period, as no uncontroverted evidence before the Court establishes otherwise.  As such, James's sole grounds for dismissal of Plaintiff's fraud claim is **DENIED.**

### c. *Wilson*

Wilson argues that Plaintiff's fraud claim does not satisfy Rule 9(b) because Plaintiff does not allege with specificity what material information Wilson should have disclosed.  (Wilson Mot. 13–15.)[8]  Namely, after receiving Plaintiff's demand for all material information concerning the AIT sale, Wilson offered access to company records and to provide "any information you want to receive," attaching AIT's financial statements for the previous five years.  (*See* FAC Ex. G.)  Plaintiff responded by requesting additional information, including information concerning the proposed buyer, and stated that the information Wilson provided was "false and misleading" because it was different than previously provided data.  (*See* FAC Ex. G.)

According to Wilson, these communications demonstrate that Wilson provided all "the information material to the Asset Purchase Agreement, and [Plaintiff] does not allege any specific information that it requested from Wilson that Wilson failed to

---

[8] This section of Wilson's Motion also asserts verbatim arguments made in support of the ARF Defendants' Motion.  (*Compare* Wilson Mot. 13-15 *with* ARF Mot.)  The Court does not address these arguments twice, and denies Wilson's Motion to the extent it asserts identical arguments the Court has already rejected.

disclose." (Wilson Mot. 13–14.) But the communications themselves, in addition to allegations in the FAC, demonstrate that Plaintiff has sufficiently identified categories of material facts concerning the proposed sale of AIT that were not disclosed despite Plaintiff's demand. (*See, e.g.,* FAC ¶ 110 (alleging failure to disclose the proposed buyer, the buyer's "kickback," and other financial and non-financial information concerning the sale).) Wilson overstates the specificity with which Plaintiff must allege what information was not disclosed, arguing that Plaintiff must essentially identify the very facts that it intends to uncover. *S.F. Tech., Inc. v. GlaxoSmithKline LLC*, No. 5:10-CV-03248-JF NJV, 2011 WL 941096, at *3 (N.D. Cal. Mar. 16, 2011) ("The particularized pleading requirement of Rule 9(b) may be relaxed when 'the facts constituting the circumstances of the alleged fraud are peculiarly within the defendant's knowledge or are readily obtainable by him.'" (quoting *Neubronner v. Milken,* 6 F.3d 666, 672 (9th Cir. 1993))). But the FAC and its exhibits make clear that the information that Wilson allegedly concealed is sufficiently identified to survive Rule 9(b). *Asghari v. Volkswagen Grp. of Am., Inc.*, 42 F. Supp. 3d 1306, 1325 (C.D. Cal. 2013) ("When a claim rests on allegations of fraudulent omission, however, the Rule 9(b) standard is somewhat relaxed because "a plaintiff cannot plead either the specific time of [an] omission or the place, as he is not alleging an act, but a failure to act.") (citations omitted).

Accordingly, Wilson's Motion to Dismiss Plaintiff's fraud claim is **DENIED.**

## C. Breach of Contract

Plaintiff argues that ARF breached the 2006 Series C Stockholder Agreement (the "2006 Agreement")[9] by failing to consult with Plaintiff concerning the Asset Purchase Agreement. (FAC ¶¶ 165–166; *see also* Opp'n to ARF Mot. 19 (arguing ARF's breach occurred upon execution of the Asset Purchase Agreement).)

Section 8.9 of the 2006 Agreement states that the "provisions hereof shall inure to the benefit of, and be binding upon, the successors and assigns of the parties

---

[9] The 2006 Series C Stockholder Agreement is Ex. M to the FAC. (ECF No. 44-13.)

hereto."  (*See* 2006 Agreement § 8.9.)   Section 4 provides that "in respect to any matter that requires the approval of the holders of Series C Stock as a separate class, and does not require the separate consent of the Investor pursuant to Section 3 hereof, [Pharos and its successors] shall make reasonable efforts to consult with [Plaintiff and other investors in AIT] before approving such matter."  (*See* 2006 Agreement § 8.9.)

ARF assumed Pharos's obligations under the 2006 Agreement when ARF purchased Pharos's Notes and Investment in AIT.  (FAC ¶¶ 28, 79, 82–83.)   The parties do not dispute that ARF did not consult with Plaintiff regarding the Asset Purchase Agreement, but ARF argues that the transaction "plausibly required the approval of a majority of all shareholders, not just the approval of the Series C and D shareholders as a 'separate class'" under Section 4 of the 2006 Agreement.  (ARF Mot. 24.)   However, uncontroverted evidence concerning the requirements for shareholder consent to the Asset Purchase Agreement in the context of Section 4 of the 2006 Agreement is not before the Court.  While ARF's reading of Section 4 may indeed be "plausible," the Court cannot foreclose the alternative plausible reading advanced by Plaintiff that ARF's duty to consult with Plaintiff was triggered by the impending sale of all AIT's assets.  (*See* Opp'n to ARF Mot. 19.)

ARF also argues that Plaintiff's breach of contract claim fails for lack of damages because Plaintiff "could not have stopped the sale even if a Section 4 consultation had occurred" and thus no actions stemming from a consultation could have led to a different result.  (ARF Mot. 24–25.)   This argument fails for the same reason as ARF's damages argument concerning Plaintiff's fraud claim—the contention that Plaintiff's damages would not have changed had it received material pre-sale information is a factual inquiry improper for Rule 12 adjudication.  Plaintiff has therefore stated a claim for breach of the 2006 Agreement based on ARF's failure to consult with Plaintiff before execution of the Asset Purchase Agreement.

Accordingly, ARF's Motion to Dismiss Plaintiff's breach of contract claim is **DENIED.**

### D. **Breach of Fiduciary Duty**

Wilson and the ARF Defendants move to dismiss Plaintiff's breach of fiduciary claims. Plaintiff argues that these claims are governed by Delaware law because defendants' duties to Plaintiff arise out of their fiduciary relationship with AIT, a company incorporated under the laws of Delaware. (Opp'n to ARF Mot. 14–15 (citing *VantagePoint Venture Partners 1996 v. Examen, Inc.*, 871 A.2d 1108, 1112 (Del. 2005) ("The internal affairs doctrine is a long-standing choice of law principle which recognizes that only one state should have the authority to regulate a corporation's internal affairs—the state of incorporation.").) The Court agrees that Plaintiff's breach of fiduciary duty claims involve issues related to AIT's internal affairs, and that the internal affairs doctrine therefore mandates application of Delaware law. *Davis & Cox v. Summa Corp.*, 751 F.2d 1507, 1527 (9th Cir. 1985) ("Claims involving 'internal affairs' of corporations, such as the breach of fiduciary duties, are subject to the laws of the state of incorporation.") (citations omitted).

Under Delaware law, the "elements of a breach of fiduciary duty claim are (1) that the fiduciary duty exists and (2) that the fiduciary breached that duty." *York Lingings v. Roach,* No. 16622–NC, 1999 WL 608850, *2 (Del. Ch. July 28, 1999). Because Plaintiff's breach of fiduciary claims are grounded in fraud, they are subject to Rule 9(b)'s heightened pleading requirements. *Maganallez v. Hilltop Lending Corp.*, 505 F. Supp. 2d 594, 608–09 (N.D. Cal. 2007) (citing *Vess v. Ciba–Geigy Corp. USA,* 317 F.3d 1097, 1105 (9th Cir. 2003)).

      a. *Wilson*

Plaintiff alleges that Wilson breached his fiduciary duties as an officer and director by: (1) engaging in self-dealing to benefit his own interests when he ratified AIT's sale; (2) failing to perform due diligence concerning AIT's sale; and (3) failing to disclose material facts related to AIT's sale and the Pharos note transaction. (FAC ¶ 138.) Though the FAC also alleges that Wilson improperly acted as CEO while his law firm was general counsel (FAC ¶ 137), Plaintiff does not and cannot dispute that

Wilson obtained the Board of Directors' consent and that Wilson was not precluded from acting as interim CEO during AIT's winding-down phase. (Wilson Mot. 16.)

Plaintiff's allegations of self-dealing utterly fail because they are wholly conclusory and provide no supporting factual content. However, the reasonableness of Wilson's alleged failure to disclose material information and his performance as it relates to AIT's sale are fact-intensive questions for which Plaintiff provides sufficient allegations to survive the pleading stage. *Concha v. London*, 62 F.3d 1493, 1503 (9th Cir. 1995) ("Where a fiduciary exercises discretionary control over a plan, and assumes the responsibilities that this control entails, the victim of his misconduct often will not, at the time he files his complaint, be in a position to describe with particularity the events constituting the alleged misconduct.") Wilson stresses that each of the transactions at issue were both proper and fair, and that Wilson could not have caused Plaintiff damages because Wilson salvaged the maximum possible value for investors despite AIT's insolvency. (Wilson Mot. 17.) But again, the Court cannot determine the wisdom of Wilson's actions and the impact of alternative choices on Plaintiff, particularly given contrary allegations in the FAC and factual issues concerning the sale of AIT and the Pharos notes. Wilson again argues that Plaintiff has failed to identify a material fact that Wilson failed to disclose, and requests that the Court therefore find no breach as matter of law. (Wilson Mot. 18–19.) The Court already rejected this argument with respect to Plaintiff's fraud claim, and rejects it here for the same reason—the FAC and its exhibits sufficiently identify facts material to Plaintiff allegedly concealed by Wilson.

Finally, Wilson argues that Plaintiff's breach of fiduciary duty claim should be dismissed because it is derivative, and Plaintiff does not allege the required pre-suit demand. (Wilson Mot. 20.) Plaintiff responds that his claim is not derivative, and that he "adequately pled that Wilson's actions proximately caused Plaintiff's direct damages." (Opp'n to Wilson Mot. 16 n.1.)

"To determine whether shareholder claims are direct or derivative, we must examine both who suffered the harm alleged—the shareholders or the corporation—and who would receive the benefit of any remedy." *Indiana Elec. Workers Pension Tr. Fund, IBEW v. Dunn*, 352 F. App'x 157, 162 (9th Cir. 2009). "If the corporation alone, rather than the individual stockholder, suffered the alleged harm, the corporation alone is entitled to recover, and the claim in question is derivative. Conversely, if the stockholder suffered harm independent of any injury to the corporation that would entitle him to an individualized recovery, the cause of action is direct." *Feldman v. Cutaia,* 951 A.2d 727, 732 (Del. 2008) (citations omitted).

The harms alleged by Plaintiff—inability to recover value fraudulently transferred to other entities or to fully assess options concerning AIT's sale due to nondisclosures, among other things—are sufficiently personal to support entitlement to individualized recovery at the pleading stage. As such, Plaintiff's failure to allege a pre-suit demand is not valid grounds for dismissal of its claims for breach of fiduciary duty.

Accordingly, Wilson's Motion to Dismiss Plaintiff's breach of fiduciary duty claim is **DENIED**.

### b. *ARF Defendants*

"Under Delaware law a shareholder owes a fiduciary duty only if it owns a majority interest in or exercises control over the business affairs of the corporation." *Ivanhoe Partners v. Newmont Min. Corp.*, 535 A.2d 1334, 1344 (Del. 1987). "With regard to the exercise of control, [the Delaware Supreme] Court has stated:

> [A] shareholder who owns less than 50% of a corporation's outstanding stocks does not, without more, become a controlling shareholder of that corporation, with a concomitant fiduciary status. For a dominating relationship to exist in the absence of controlling stock ownership, a plaintiff must allege domination by a minority shareholder through actual control of corporation conduct.

*Kahn v. Lynch Commc'n Sys., Inc.*, 638 A.2d 1110, 1114 (Del. 1994) (quoting *Citron v. Fairchild Camera & Instrument Corp., Del. Supr.*, 569 A.2d 53, 70 (1989) (quotations and citation omitted)).

Plaintiff claims that ARF owed Plaintiff fiduciary duties as the *de facto* controlling shareholder after it purchased Pharos's minority equity stake.  (FAC ¶ 144.)  In support, Plaintiff notes that Cheng was the CEO of AIT until 2012 (FAC ¶ 76); ARF owned 83.3% of AIT Series C Preferred Stock and 83.3% of Series D Preferred Stock and received a promissory note from AIT for $3,300,000 (FAC ¶¶ 88, 90); and "ARF was a *de facto* controlling shareholder of AIT, through its ownership of a significant block of shares in AIT, its position as senior secured creditor, and through its agent Cheng."  (FAC ¶ 91).  (*See* Opp'n to ARF Mot. 8.)

These allegations do not support that ARF or Cheng were *de facto* shareholders beholden to fiduciary duties.  *In re Morton's Rest. Grp., Inc. Shareholders Litig.*, 74 A.3d 656, 664–65 (Del. Ch. 2013) ("[A] minority blockholder is not considered to be a controlling stockholder unless it exercises such formidable voting and managerial power that [it], as a practical matter, [is] no differently situated than if [it] had majority voting control.") (internal citations and quotations omitted).  Cheng's role as CEO until 2012 does not mean that Cheng and ARF undertook fiduciary duties to Plaintiff with respect to disputed transactions four years later.  Nor does Cheng's role as CEO and board member of other companies somehow create fiduciary duties in favor of Plaintiff.  Plaintiff similarly offers no facts to support that ARF's receipt of the promissory note and its ownership of minority preferred stock allowed the ARF Defendants to control the corporation or exert oversize influence over the board of directors to the extent that they could effectively be deemed majority shareholders. *In re Morton's Rest. Grp., Inc. Shareholders Litig.*, 74 A.3d at 664–65 ("[T]he minority blockholder's power must be so potent that independent directors . . . cannot freely exercise their judgment, fearing retribution from the controlling minority blockholder.") (internal citations and quotations omitted).

1    Accordingly, the ARF Defendants' Motion to Dismiss Plaintiff's breach of
2    fiduciary duty claim is **GRANTED** for lack of a cognizable duty.  Plaintiff's claim for
3    breach of fiduciary duty is **DISMISSED without leave to amend.**

4    ### E.  Unjust Enrichment

5    ARF moves to dismiss Plaintiff's claim for unjust enrichment on the grounds
6    that California law does not recognize such a claim for relief.  (ARF Mot. 25.)  The
7    Court agrees.  *See, e.g.*, *Iezza v. Saxon Mortg. Services, Inc.*, 2010 WL 3834041, at *2
8    (C.D. Cal. Sept. 28, 2010) ("Under California law, a claim for unjust enrichment
9    cannot stand alone as an independent claim for relief."); *Jogani v. Superior Court*, 165
10   Cal. App. 4th 901, 911 (2008) (internal citations omitted) ("[U]njust enrichment is not
11   a cause of action. Rather, it is a general principle underlying various doctrines and
12   remedies, including quasi-contract."); *Melchior v. New Line Productions, Inc.*, 106
13   Cal. App. 4th 779, 793 (2003) ("[T]here is no cause of action in California for unjust
14   enrichment.").  The Court declines Plaintiff's request to construe Plaintiff's claim for
15   unjust enrichment as a claim for restitution.  (Opp'n to ARF Mot. 20 (citing *Astiana v.*
16   *Hain Celestial Group, Inc.*, 783 F.3d 753, 762 (9th Cir. 2015).)

17   Accordingly, ARF's Motion to Dismiss Plaintiff's claim for unjust enrichment
18   is **GRANTED**, and Plaintiff's claim for unjust enrichment is **DISMISSED without**
19   **leave to amend**.

20   ### F.  Civil Conspiracy

21   The Aurora Defendants argue that Plaintiff's civil conspiracy claim must be
22   dismissed for the same reasons as its underlying claims and reiterate arguments
23   already made in support of those claims.  (Aurora Mot. 11–12.)  The ARF
24   Defendants' Motion and Wilson's Motion are virtually identical with respect to
25   Plaintiff's civil conspiracy claim.  (*See* ARF Mot. 21–23; Wilson Mot. 21–23.)  They
26   too argue that Plaintiff's conspiracy claim must fail for the same reason as their
27   underlying claims, and further contend that Plaintiff's conspiracy allegations fail Rule
28   9(b)'s heightened pleading standard.  (*See* ARF Mot. 21–23; Wilson Mot. 21–23.)

The elements of a civil conspiracy are (1) the formation and operation of a conspiracy, (2) wrongful conduct in furtherance of the conspiracy, and (3) damages arising from the wrongful conduct. *Applied Equip. Corp v. Litton Saudi Arabia Ltd.*, 7 Cal. 4th 503, 510–11 (1994). The parties agree that Rule 9(b) applies to Plaintiff's civil conspiracy claim, as it is grounded in the underlying offense of fraud. *Swartz v. KPMG LLP*, 476 F.3d 756, 765 (9th Cir. 2007) (applying Rule 9(b) to a conspiracy claim where the underlying offense was common law and securities fraud). The parties further agree that "civil conspiracy is not a separate and distinct cause of action under California law." *AccuImage Diagnostics Corp v. Terarecon, Inc.*, 260 F. Supp. 2d 941, 947 (N.D. Cal. 2003) (citing *Entm't Research Grp., Inc. v. Genesis Creative Grp., Inc.*, 122 F.3d 1211, 1228 (9th Cir. 1997)).

The Court first rejects that Plaintiff's civil conspiracy claim fails because the underlying fraud claims fail, as Plaintiff has stated a claim for fraud. However, Plaintiff's allegations of conspiracy provide insufficient details under Rule 9(b) as to each of the moving defendants. Namely, the FAC contains insufficient factual content to support that defendants expressly or tacitly conspired with one another to achieve a wrongful act. *AREI II Cases*, 216 Cal. App. 4th 1004, 1022 (2013) ("It is not enough that the [conspirators] knew of an intended wrongful act, they must agree—expressly or tacitly—to achieve it.") Instead, Plaintiff's conspiracy allegations are conclusory and largely made upon "information and belief" without providing a specific factual basis for those beliefs. (*See, e.g.,* FAC ¶¶ 155–158.) Absent from the FAC are required facts showing that "each member of the conspiracy acted in concert and came to a mutual understanding to accomplish a common and unlawful plan, and that one or more of them committed an overt act to further it." *AREI II Cases*, 216 Cal. App. 4th at 1022.

Accordingly, the Court **DISMISSES** Plaintiff's civil conspiracy claims **with leave to amend**.

# V.      CONCLUSION

For the foregoing reasons, the Court determines as follows:

1.      Pharos's Motion under Rule 12(b)(2) (ECF No. 47) is **GRANTED** and Plaintiff's request for jurisdictional discovery is **DENIED**. All claims against Pharos are **DISMISSED without leave to amend**.

2.      Plaintiff's claim for breach of fiduciary duty against the ARF Defendants (claim five) is **DISMISSED without leave to amend.**

3.      Plaintiff's claims for civil conspiracy (claim six) are **DISMISSED with leave to amend**.

4.      Plaintiff's claim for unjust enrichment (claim eight) is **DISMISSED without leave to amend.**

5.      The motions are **DENIED** in all other respects.

**IT IS SO ORDERED.**


July 15, 2020                                              _____

                                                          **OTIS D. WRIGHT, II**
                                                          **UNITED STATES DISTRICT JUDGE**