O

# United States District Court
# Central District of California

| | |
|---|---|
| Castel S.A. (a Luxeumbourg joint stock company),<br><br>    Plaintiffs,<br><br>    v.<br><br>CHRISTOPHER A. WILSON et al.,<br><br>    Defendants. | Case № 2:19-cv-09336-ODW (PVCx)<br><br>**ORDER GRANTING DEFENDANT JAMES'S MOTION FOR SUMMARY JUDGMENT [104]; GRANTING IN PART AND DENYING IN PART  DEFENDANTS CHENG AND ARF'S MOTION FOR SUMMARY JUDGMENT [107]; and DENYING DEFENDANT WILSON'S MOTION FOR SUMMARY JUDGMENT [109]** |

## I.    INTRODUCTION

On July 26, 2021, Defendants Steven J. James, Olivia Ho Cheng jointly with ARF Partners, LLC, and Christopher A. Wilson (collectively, "Moving Defendants"), all moved for summary judgment.  (ECF Nos. 104, 107, 109, respectively.)  For the following reasons, the Court **GRANTS** James's Motion, **GRANTS** in **PART** and **DENIES** in **PART** Cheng and ARF's joint Motion, and **DENIES** Wilson's Motion.[1]

---

[1] Having carefully considered the papers filed in connection with the Motions, the Court deemed the matters appropriate for decision without oral argument.  Fed. R. Civ. P. 78; C.D. Cal. L.R. 7-15.

## II.   FACTUAL BACKGROUND

The following allegations and facts are uncontested, unless otherwise noted.  In 2006, Plaintiff Castel S.A. invested in Aurora Imaging Technology, Inc. ("AIT"). (Pl.'s Separate Statement Genuine Issues Material Facts ("First GIMF") ¶ 2, ECF No. 122-1.)  Castel owned 16.7% of Series C and 16.7% Series D stock, or almost 4% overall of AIT.  (*Id.* ¶ 3.)

By 2015, AIT was insolvent and remained so through 2016.  (Pl.'s Separate Statement Genuine Issues Material Facts ("Second GIMF") ¶ 21, ECF No. 124-1.) On or about November 25, 2015, AIT investors, Pharos Capital Partners II-A, L.P. and Pharos Capital Partners II, L.P. (together, "Pharos"), sold their interests in AIT to Defendant ARF (the "Pharos Sale").  (First GIMF ¶ 8.)  In 2016, AIT sold or transferred all of its assets.  (*Id.* ¶ 9.)  In its Second Amended Complaint, Castel alleges that on October 31, 2016, Aurora Healthcare, SPC bought AIT (the "Transaction").  (Second Am. Compl. ("SAC") ¶ 119, ECF No. 91.)

### *Defendant James*

In 1999, James, a certified public accountant, joined AIT as its Executive Vice President and Chief Financial Officer ("CFO").  (First GIMF ¶ 1.)  In 2014, James resigned from all positions he held at AIT.  (*Id.* ¶¶ 5, 6.)  In late 2016, James was the CFO of Aurora Healthcare US Corp. and was also providing consulting services to AIT.  (Def.'s Separate Statement Reply ¶ 39; ECF No. 129.)  James provided financial consulting services to AIT at the time of the Transaction.  (*Id.* ¶¶ 21, 23.)  AIT also paid James to assist in its appraisal for the Transaction.  (*Id.* ¶ 44.)

In its SAC, Castel asserts a fraudulent deceit and concealment claim against James, alleging that he "owed a fiduciary duty to the shareholders of AIT" and therefore should have disclosed certain facts regarding the Pharos Sale and the Transaction.  (SAC ¶ 119.)  James now seeks summary judgment on that claim, arguing that he did not owe Castel a duty to disclose during the Pharos Sale and the

Transaction because, by then, he had already resigned from AIT.  (Def. James Mot. Summ. J. ("James Mot."), ECF No. 104.)

### Defendant Cheng

Cheng was the President and Chief Executive Officer ("CEO") of AIT until she resigned in 2013.  (Second GIMF ¶ 1.)  Cheng remained as a minority shareholder of AIT but was not a majority or controlling shareholder.  (*Id.* ¶ 2.)

Sometime in 2013, Defendant Michael Devlin arranged for a loan from Pharos to AIT (the "2013 Loan") with a requirement that a portion of the loan proceeds be used to purchase Devlin's investment. (Defs.' Separate Statement Reply ("Cheng/ARF Statement") ¶ 81; ECF No. 127.)  Castel asserts Cheng was involved in arranging the 2013 Loan but Cheng disputes this fact.  (*Id.*)  The parties agree that in 2016, Cheng was creditor on AIT's (the seller) side of the Transaction.  (*Id.* ¶ 13.)

Castel asserts a claim of fraudulent deceit and concealment against Cheng, alleging Cheng owed Castel a duty to disclose information regarding the Pharos Sale and the Transaction.  (SAC ¶¶ 118–30.)  Castel also alleges Cheng conspired with Devlin to fraudulently deceive Castel by not disclosing the 2013 Loan.  (SAC ¶¶ 158– 66.)  In a joint motion with ARF, Cheng seeks summary judgment as to these claims. (Def. Cheng & ARF Mot. Summ. J. ("Cheng/ARF Mot."), ECF No. 107.)

### Defendant ARF

Castel asserts that in 2015, Cheng and Wilson formed Defendant-company ARF for the purpose of raising funds to acquire shares and debt in AIT.  (Pl.'s Opp'n Cheng/ARF Mot. ("Opp'n Cheng/ARF Mot.") 4, ECF No. 124.)  The parties agree that ARF was not a majority AIT shareholder and, accordingly, the parties assert ARF did not owe any fiduciary duties to other AIT shareholders such as Castel.  (Second GIMF ¶ 11.)  Although ARF was not a direct party to the Transaction, it was involved on Aurora Healthcare's (the buyer) side because ARF received an equity interest in Aurora Healthcare in exchange for contributing the senior secured notes that it owned in Pharos to offset the purchase price of the Transaction.  (*Id.* ¶¶ 11, 17, 52.)

Castel alleges against ARF claims of fraudulent deceit and concealment and breach of contract. (SAC ¶¶ 131–41, 167–75.) In its joint Motion with Cheng, ARF seeks summary judgment as to those claims. (Cheng/ARF Mot. 18–23.)

**Defendant Wilson**

In 2015, at the request of a resigning board of directors, Defendant Wilson agreed to assist with the dissolution and winding up of AIT, which was already insolvent. (Pl.'s Separate Statement Genuine Issues Material Facts ("Third GIMF") ¶ 78, ECF No. 123-1.) On October 20, 2016, Wilson informed Castel that AIT was going to accept an offer to purchase the company's assets, subject to approval of shareholders, in order to avoid bankruptcy. (*Id.* ¶ 92.) When Castel complained that it did not have sufficient information to make an informed decision about approval of the asset sale, Wilson offered to make all of the books and records of the company available for inspection. (*Id.* ¶ 74.)

Wilson notified Castel that payments to unsecured creditors would be limited to 40% of the original principal amount of each obligation, which for Castel amounted to a payment of $100,000. (*Id.* ¶ 94.) Wilson informed Castel that if Castel did not accept the offered payment, its $100,000 share of the proceeds would be allocated to other creditors. (*Id.* ¶ 96.) Finally, Wilson expressly notified Castel that if it rejected the $100,000 payment, Castel was free to pursue its claims against AIT, but the company would be dissolved. (*Id.* ¶ 100.) Castel rejected the offered payment. (Cheng/ARF Statement ¶ 57.)

In its SAC, Castel alleges against Wilson claims of fraudulent deceit and concealment and breach of fiduciary duty. (SAC ¶¶ 107–117, 142–48.) Wilson now moves for summary judgment as to those claims. (*See generally* Wilson Mot.)

**Procedural History**

On October 30, 2019, Castel initiated this action asserting claims related to Moving Defendants' fraudulent concealment of certain information from Castel. (Compl., ECF No. 1.) In the operative SAC, Castel asserts causes of action for, in

relevant part: (1) fraudulent deceit and concealment, against each of Moving Defendants; (2) civil conspiracy, against Cheng; (3) breach of contract, against ARF; and (4) breach of fiduciary duties, against Wilson.  (*See* SAC.)  In three separate motions, Moving Defendants now seek summary judgment of the claims asserted against them.[2]  The Motions are fully briefed.[3]

### III.    LEGAL STANDARD

A court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The burden of establishing the absence of a genuine issue of material fact lies with the moving party, *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986), and the court must view the facts and draw reasonable inferences in the light most favorable to the nonmoving party, *Scott v. Harris*, 550 U.S. 372, 378 (2007); *Addisu v. Fred Meyer, Inc.*, 198 F.3d 1130, 1134 (9th Cir. 2000).  A disputed fact is "material" where the resolution of that fact might affect the outcome of the suit under the governing law, and the dispute is "genuine" where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  Conclusory or speculative testimony in affidavits is insufficient to raise genuine issues of fact and defeat summary judgment.  *Thornhill Publ'g Co. v. GTE Corp.*, 594 F.2d 730, 738 (9th Cir. 1979).  Moreover, though the Court may not weigh conflicting evidence or make credibility determinations, there must be more than a mere scintilla of contradictory evidence to survive summary judgment.  *Addisu*, 198 F.3d at 1134.

Once the moving party satisfies its burden, the nonmoving party cannot simply rest on the pleadings or argue that any disagreement or "metaphysical doubt" about a material issue of fact precludes summary judgment.  *See Celotex*, 477 U.S. at 322–23;

---

[2] (*See* James Mot.; Cheng/ARF Mot.; Def. Wilson Mot. Summ. J. ("Wilson Mot."), ECF No. 109.)
[3] (Pl.'s Opp'n James Mot. ("Opp'n James Mot."), ECF No. 122; Def. James Reply, ECF No. 128; Pl.'s Opp'n Wilson Mot. ("Opp'n Wilson Mot."), ECF No. 123; Def. Wilson Reply, ECF No. 131; Opp'n Cheng/ARF Mot.; Defs. Cheng/ARF Reply, ECF No. 125.)

*Matsushita Elec. Indus. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *Cal. Architectural Bldg. Prods., Inc. v. Franciscan Ceramics, Inc.*, 818 F.2d 1466, 1468 (9th Cir. 1987). A "non-moving party must show that there are 'genuine factual issues that properly can be resolved only by a finder of fact *because they may reasonably be resolved in favor of either party*.'" *Cal. Architectural Bldg. Prods.*, 818 F.2d at 1468 (quoting *Anderson*, 477 U.S. at 250). "[I]f the factual context makes the non-moving party's claim implausible, that party must come forward with more persuasive evidence than would otherwise be necessary to show that there is a genuine issue for trial." *Id.* (citing *Matsushita Elec. Indus.*, 475 U.S. at 586–87). "[U]ncorroborated and self-serving" testimony will not create a genuine issue of material fact. *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002). The court should grant summary judgment against a party who fails to demonstrate facts sufficient to establish an element essential to his case when that party will ultimately bear the burden of proof at trial. *See Celotex*, 477 U.S. at 322.

Pursuant to the Local Rules, parties moving for summary judgment must file a proposed "Statement of Uncontroverted Facts and Conclusions of Law" that should set out "the material facts as to which the moving party contends there is no genuine dispute." C.D. Cal. L.R. 56-1. A party opposing the motion must file a "Statement of Genuine Disputes" setting forth all material facts as to which it contends there exists a genuine dispute. C.D. Cal. L.R. 56-2. The Court assumes the "material facts as claimed and adequately supported by the moving party are admitted to exist without controversy except to the extent that such material facts are (a) included in the 'Statement of Genuine Disputes' and (b) controverted by declaration or other written evidence filed in opposition to the motion." C.D. Cal. L.R. 56-3.

## IV.    OBJECTIONS TO EVIDENCE

The parties raise numerous objections to evidence presented in the various filings. (*See, e.g.*, Def. James's Objs. Pl.'s Separate Statement, ECF No. 130; Defs. Cheng/ARF's Objs. Pl.'s Separate Statement, ECF No. 126; Def. Wilson's Objs. Pl.'s

Separate Statement, ECF No. 132.)  Evidentiary objections in motions for summary judgment are typically unnecessary and not useful.  This is because "[r]egardless of whether a party objects, the Court . . . will always recognize plain error."  *Burch v. Regents of Univ. of Cal.*, 433 F. Supp. 2d 1110, 1119 (E.D. Cal. 2006) (first citing Fed. R. Evid. 103(d); and then citing *McClaran v. Plastic Indus., Inc.*, 97 F.3d 347, 357 (9th Cir. 1996)).  "Nevertheless, attorneys routinely raise every objection imaginable without regard to whether the objections are necessary, or even useful, given the nature of summary judgment motions in general, and the facts of their cases in particular."  *Id.*  Evidentiary objections based "on the ground that it is irrelevant, speculative, and/or argumentative, or that it constitutes an improper legal conclusion are all duplicative of the summary judgment standard itself."  *Id.*  "Instead of objecting, parties should simply argue that the facts are not material."  *Id.*

Thus, the Court **OVERRULES** all boilerplate objections and improper argument in Student's Objections.  (*See* Scheduling & Case Mgmt. Order 7–9, ECF No. 82.)  Further, when the objected evidence is unnecessary to the resolution of the Motion or supports facts not in dispute, the Court need not resolve those objections here.  To the extent the Court relies on objected-to evidence in this Order, the Court **OVERRULES** those objections.  *See Regents*, 433 F. Supp. 2d at 1122 (proceeding with only necessary rulings on evidentiary objections).

## V.  DISCUSSION

In three separate motions for summary judgment, James, Cheng together with ARF, and Wilson seek summary judgment for the claims Castel asserted against them. The Court addresses each of the three motions for summary judgment in turn.

### A.  James's Motion for Summary Judgment

In its SAC, Castel alleges James fraudulently concealed from Castel certain facts regarding the Transaction.  (SAC ¶ 119.)  James moves for summary judgment of the fraudulent deceit and concealment claim asserted against him, arguing that he resigned as AIT's CFO more than two years before the Transaction and therefore

cannot be held responsible the Transaction because James owed no duty to Castel. (James Mot. 6.)  For the following reasons, the Court grants James's Motion.

A claim for fraudulent concealment requires that the defendant concealed or suppressed a material fact while having a duty to disclose the fact to the plaintiff. *Davis v. HSBC Bank Nevada, N.A.*, 691 F.3d 1152, 1163 (9th Cir. 2012) (internal quotations and citations omitted).  That duty arises under four circumstances:

> (1) when the defendant is in a fiduciary relationship with the plaintiff; (2) when the defendant had exclusive knowledge of material facts not known to the plaintiff; (3) when the defendant actively conceals a material fact from the plaintiff; and (4) when the defendant makes partial representations but also suppresses some material facts.

*Burch v. CertainTeed Corp.*, 34 Cal. App. 5th 341, 349 (2019) (internal quotation marks and citations omitted).  The latter three circumstances require "the existence of some other relationship between the plaintiff and defendant in which a duty to disclose can arise."  *Id.*  "This relationship has been described as a transaction, such as that between seller and buyer, employer and prospective employee, doctor and patient, or parties entering into any kind of contractual arrangement."  *Id.*

"[B]efore a person can be charged with a fiduciary obligation, he must either knowingly undertake to act on behalf and for the benefit of another, or must enter into a relationship which imposes that undertaking as a matter of law."  *City of Hope Nat'l Med. Ctr. v. Genentech, Inc.*, 43 Cal. 4th 375, 386 (2008) (quoting *Comm. on Children's Television, Inc. v. Gen. Foods Corp.*, 35 Cal. 3d 197, 221 (1983)).  However, "[a] fiduciary duty generally ends when the fiduciary resigns his office."  *Calsoft Labs, Inc. v. Panchumarthi*, No. 19-CV-04398-NC, 2020 WL 512123, at *2 (N.D. Cal. Jan. 31, 2020) (citing *Gab Bus. Servs. v. Lindsey & Newsom Claim Servs.*, 83 Cal. App. 4th 409, 421 (2000), *disapproved on other grounds by Reeves v. Hanlon*, 33 Cal. 4th 1140, 1154 (2004)).

Here, the parties do not dispute that at the time the Pharos Sale and the Transaction occurred, James had already resigned from all positions at AIT.  (First

GIMF ¶¶ 5, 6.)  And Castel does not argue that James's work as an external consultant for AIT somehow established a fiduciary duty to AIT's shareholders.  Indeed, such an argument would be without merit.  *See, e.g.*, *Miles, Inc. v. Scripps Clinic & Rsch. Found.*, 810 F. Supp. 1091, 1100 (S.D. Cal. 1993) (holding that a corporation's consultant owed no fiduciary duty to the corporation's shareholders and "at most, a fiduciary duty might have existed as to the corporation").  Thus, James did not have a fiduciary relationship with Castel during the Pharos Sale or the Transaction.  *See Calsoft Labs*, 2020 WL 512123, at *2.

However, Castel asserts that James nevertheless owed Castel a duty to disclose because they had a special relationship "based on [James's] involvement with both the buyer and seller in the [Transaction] and James's exclusive knowledge regarding the [T]ransaction, which created a duty to disclose material facts, and not to conceal material facts."  (Opp'n James Mot. 11.)  But such a special relationship would only arise in the context of "a transaction, such as that between seller and buyer . . . or parties entering into any kind of contractual arrangement."  *CertainTeed*, 34 Cal. App. 5th at 349.  "[W]here material facts are known to one party and not to the other, failure to disclose them is not actionable fraud unless there is some relationship between the parties."  *LiMandri v. Judkins*, 52 Cal. App. 4th 326, 337 (1997).  "As a matter of common sense, such a relationship can only come into being as a result of some sort of transaction *between* the parties."  *Id.* (emphasis added; internal quotation marks and citations omitted).

Here, Castel offers no evidence of a "transaction" between Castel and James; neither bought or sold anything from the other, and they did not enter into a contractual agreement with each other.  The Court is therefore unpersuaded by Castel's argument that James's involvement in both sides of the Transaction establishes a relationship between James and Castel.  Neither James's role as the CFO for Aurora Healthcare (the buyer), nor his role as an external consultant for AIT (the seller), nor the combination of the two, creates a duty for James to AIT's

shareholders.[4]  Transactions may give rise to the duty to disclose when the discloser is on one side of said transaction, and the recipient is on the other—not when the discloser is somewhat involved in both sides of the transaction and the recipient is not directly involved in the transaction at all.  *See, e.g.*, *Immobiliare, LLC v. Westcor Land Title Ins. Co.*, 424 F. Supp. 3d 882, 889 (E.D. Cal. 2019) (finding that although the plaintiff had exclusive knowledge of material facts not known to the defendant, and actively concealed those facts, there could be no claim of fraud because the plaintiff failed to "demonstrate the existence of some transactional relationship" between it and the defendant).  That James merely had access to, and influence on, facts that could impact Castel does not in and of itself give rise to a duty to disclose.

Finally, Castel argues broadly that, even without any confidential relationship, a duty to disclose nevertheless arises "where the defendant alone has knowledge of material facts that are not accessible to the plaintiff."  (Opp'n James Mot. 10.)  However, Castel's cited authorities—all of which are decades old—do in fact involve transactions or relationships between the parties and are otherwise distinguishable from this case.  *See, e.g.*, *Sime v. Malouf*, 95 Cal. App. 2d 82, 99 (1949) (finding a duty to disclose where there was "intentional and systematic concealment by the defendants of highly material facts, which were peculiarly within their knowledge" and noting that "[i]t is significant" that the defendants "concealed their identity by proceeding entirely through agents acting ostensibly in their own behalf," which "was a major, and clearly fraudulent, feature of the conspiracy"); *De Spirito v. Andrews*, 151 Cal. App. 2d 126, 130 (1957) (explaining that although a seller with a non-confidential relationship with a buyer generally has no duty to disclose, there is a "universally recognized exception" that "if he undertakes to do so he is bound to tell the truth and not suppress or conceal material facts"—whereas, here, in contrast,

---

[4] James's role as CFO of Aurora Healthcare during the Transaction actually suggests a result opposite of that which Castel argues: as CFO of the buyer company, James likely owed fiduciary duties to the *buyer's* shareholders, which James could have violated by making disclosures to the seller's shareholders as Castel suggests James should have done.

Castel alleges only that James "suppress[ed], with[eld] or fail[ed] to communicate" the facts at issue,  (SAC ¶¶ 121–22)); *see also Boeken v. Philip Morris, Inc.*, 127 Cal. App. 4th 1640, 1659 (2005) ("[If] a sufficient relationship or transaction does not exist, no duty to disclose arises *even when* the defendant speaks.") (emphasis added).

Castel's final references apply to the duty to disclose that arises in the context of a real estate buyer-seller relationship, a real estate contractor-homeowner relationship, and an employer insurance agency's relationship with its employee agent—contexts completely inapplicable to this case.  *See Lingsch v. Savage*, 213 Cal. App. 2d 729, 735 (1963) (buyer-seller); *Massei v. Lettunich*, 248 Cal. App. 2d 68, 73 (1967) (contractor-homeowner); *Magpali v. Farmers Grp., Inc.*, 48 Cal. App. 4th 471, 482 (1996) (insurance agency).   Again, Castel and James did not enter into any transaction or contract with one another, and therefore have no relationship that would give rise to the duty to disclose.[5]  Accordingly, the Court **GRANTS** James's Motion.[6]

**B.    Cheng and ARF's Joint Motion for Summary Judgment**

In a single filing, Cheng and ARF move for summary judgment on Castel's claims for fraudulent deceit and concealment asserted against them, its claim for civil conspiracy asserted against Cheng, and its claim for breach of contract asserted against ARF.  (*See* Cheng/ARF Mot.)  The Court addresses each claim in turn.

*1.    Claim for Fraudulent Deceit and Concealment Against Cheng*

Cheng first seeks summary judgment on Castel's claim for fraudulent deceit and

---

[5] Castel argues that even if the Court finds that James owed no duty of disclosure, the Court must nevertheless deny James's Motion because James actively participated in the alleged fraud and "an agent who knowingly participates in a fraudulent transaction is equally responsible with his principal."  (Opp'n James Mot. 16 (citing *Jacobs v. Freeman*, 104 Cal. App. 3d 177, 193 (1980).)  However, none of Castel's cited authorities stand for the proposition that the relationship or transaction necessary for a fraud claim may be substituted by "knowing[] participat[ion]."  *Id.* Castel's assertions thus have no bearing on the Court's ruling.

[6] In its Opposition to James's Motion, Castel requests leave to amend its operative complaint in the event the Court finds  "it is deficient of the necessary facts to support [Castel's] claim."  This action is well beyond the pleading stage.   And in any case, an opposition to a motion for summary judgment is not the appropriate vehicle to request leave to amend the complaint.  Most significantly, the Court is not making any factual determinations based on allegations in the complaint.  Thus, Castel's request is not appropriate or relevant and is therefore **DENIED**.

concealment, arguing that: (i) she did not owe Castel a duty to disclose, (ii) she did not conceal facts from Castel, (iii) the allegedly concealed facts were immaterial, and (iv) Castel did not suffer harm as a result of the alleged concealment.  (Cheng/ARF Mot. 9–15.)  The Court finds that Cheng is entitled to summary judgment as to her first argument (duty to disclose) and thus, the Court need not and does not analyze Cheng's remaining three arguments.

Cheng argues that she owed no duty to disclose to Castel because she had resigned from AIT prior to the transactions at issue and remained only as a minority shareholder.  (*Id.* at 10–11.)  As discussed above, the requisite duty to disclose for a fraudulent concealment claim may arise when the defendant is in a fiduciary relationship with the plaintiff or in other circumstances if the parties enter a "transaction, such as that between seller and buyer, employer and prospective employee, doctor and patient, or parties entering into any kind of contractual arrangement."  *CertainTeed*, 34 Cal. App. 5th at 349.  Cheng argues, and the parties do not dispute, that as a co-minority shareholder, Cheng did not owe any fiduciary duties to shareholder Castel.  (Cheng/ARF Mot. 10–11; Second GIMF ¶¶ 2, 3.)

However, in its opposition, Castel argues that Cheng nevertheless had a duty to disclose based on her "concerted effort to mislead" and "actively conceal[] information from Castel."  (Opp'n Cheng/ARF Mot. 14.)  Castel again misstates the law.  A duty to disclose may arise outside of a fiduciary relationship if the defendant had exclusive knowledge of material facts, actively conceals a material fact, or suppresses some material facts, *CertainTeed*, 34 Cal. App. 5th at 349, **and** the parties have a relationship "as a result of some sort of transaction between the parties," *LiMandri*, 52 Cal. App. 4th at 337.  Castel continues to overlook this critical qualifier.

Instead, Castel argues that Cheng's role as the "central figure who orchestrated the entire sale of AIT's assets" and her "central involvement acting on both sides of the transaction as both the buyer and seller in the sale" somehow give rise to a duty to disclose to the seller's shareholders.  (Opp'n Cheng/ARF Mot. 14.)  As explained

above, this contention is not supported by the law.  For the same reasons James's involvement on both sides of the Transaction did not create a duty to Castel, Cheng's involvement with the Transaction also did not create a relationship with and therefore, a duty to, Castel.  Without such a duty, Castel's fraudulent deceit and concealment claim against Cheng cannot survive.  Thus, the Court **GRANTS** Cheng and ARF's Motion for Summary Judgment as to that claim as asserted against Cheng.

### 2. *Claim for Civil Conspiracy Against Cheng*

Cheng next seeks summary judgment as to Castel's civil conspiracy claim, arguing that Castel has no evidence to meet the elements of the claim and, in any case, the claim is time-barred.  (Cheng/ARF Mot. 15–18.)  As explained below, the Court finds that Cheng is entitled to summary judgment because Castel lacks evidence to support its civil conspiracy claim.  Accordingly, the Court need not and does not address Cheng's statute of limitations argument.

In its SAC, Castel alleges that Cheng and Devlin conspired to "act in their own self-interest and breach their fiduciary duties to AIT and its shareholders . . . by engaging in an agreement in which [they] could utilize their roles as CEO and director of AIT."  (SAC ¶ 159.)  Although Cheng and Castel dispute Cheng's involvement, they agree that in 2013, Devlin arranged the 2013 Loan from Pharos to AIT, on the condition that a portion of that loan be used to purchase one of Devlin's investments. (Cheng/ARF Statement ¶ 81.)  Castel alleges Cheng conspired with Devlin in creating this loan and arranging for AIT to agree to the 2013.  (SAC ¶ 161.)  Thus, Castel asserts, Cheng conspired with Devlin to commit fraudulent deceit and concealment.[7]

Cheng first asserts that Castel has no evidence to support its conspiracy claim and Cheng is therefore entitled to summary judgement.  (Cheng/ARF Mot. 16–17.)

---

[7] Cheng originally argues that the tort underlying the conspiracy claim is Devlin's breach of his fiduciary duties to Castel—a tort Cheng is incapable of committing.  (Cheng/ARF Mot. 15–18.) However, Castel's SAC and Opposition to the Motion both make clear that the underlying tort is fraud.  (SAC ¶ 161; Opp'n Cheng/ARF Mot. 20; Second GIMF 24 (Castel clarifying that "the underlying tort [is not] Devlin's breach of fiduciary duties, but rather, is fraudulent deceit").)

"As explained by [the California] Supreme Court, the elements of an action for civil conspiracy are the formation and operation of the conspiracy and damage resulting to plaintiff from an act or acts done in furtherance of the common design." *Cortese v. Sherwood*, 26 Cal. App. 5th 445, 453 (2018), *as modified* (Aug. 21, 2018) (internal quotation marks and citations omitted).

In support of Cheng's argument that Castel has no evidence to support its conspiracy claim, Cheng cites to her own testimony[8] that she never agreed with Devlin to conceal the at-issue facts, that Devlin had been attempting to have Cheng terminated from AIT for years, and that she was "not on good terms" with Devlin in 2013—therefore making a conspiracy between Cheng and Devlin impossible.  (Defs.' Separate Statement Mot. Summ. J. ("Cheng/ARF Facts") ¶¶ 36 38, ECF No. 108 (referencing Cheng Decl. ¶ 49).)  Cheng also cites to testimony and Castel's discovery responses to support her assertion that Castel's discovery responses were "factually devoid" and therefore "cannot contradict Cheng's testimony."  (Cheng/ARF Facts ¶ 39.)  Cheng therefore has met her initial burden of production that there is an absence of evidence to support Castel's claim.  *See Celotex*, 477 U.S. at 325 (finding that the defendant moving for summary judgment could meet its initial burden of production by "pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case"); *Nissan Fire & Marine Ins. Co. v. Fritz Cos., Inc.*, 210 F.3d 1099, 1105 (9th Cir. 2000) (quoting *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991)) (explaining that to carry its initial burden by pointing to an absence of evidence for the nonmoving party's claim, the moving party must "point to materials on file" demonstrating that a party cannot meet that burden").

---

[8]  Cheng and ARF's Separate Statement of Uncontroverted and Material Facts includes the fact that "Cheng never conspired with Devlin," to which Castel objects as it "it calls for a legal conclusion." (Second GIMF ¶ 38.)  In support of this fact, Cheng and ARF cite to ¶ 49 of Cheng's Declaration, which includes Cheng's testimony relating to the alleged conspiracy.  (*Id.* (citing Decl. Olivia Ho Cheng ("Cheng Decl.") ¶ 49, ECF No. 107-1).)  The Court **SUSTAINS** Castel's objection with regard to Cheng's testimony that she "did not conspire . . . with Michael Devlin," but **OVERRULES** the objection as to all other language and assertions in ¶ 49 of the Declaration.

In its Opposition to the Motion, Castel does not address this argument.  (*See generally* Opp'n Cheng/ARF Mot.)  Castel also does not affirmatively dispute any of the above facts.  (Second GIMF ¶¶ 36, 38.)  Castel offers only one piece of evidence[9] to refute Cheng's argument: an order from the Securities Exchange Commission ("SEC") finding that Devlin engaged in self-dealing.  (*Id.* (referencing Decl. Lisa Schachne ¶ 4, Ex. 3 ("SEC Order"), ECF No. 5).)  However, the SEC Order makes no reference, explicitly or implicitly, to Cheng.  (*See generally id.*)  It is therefore unclear how the SEC Order is in any way material to Castel's conspiracy claim against Cheng.  With no argument to support Castel's claim and no evidence to raise a genuine issue of material fact, Cheng is entitled to judgment as a matter of law.  *See Celotex*, 477 U.S. at 322; *see also Nissan*, 210 F.3d at 1102 (stating that a moving party is entitled to summary judgment if it shows that "the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial," and the nonmoving party does not enough evidence to create a genuine issue of material fact).  Thus, the Court **GRANTS** Cheng and ARF's Motion for Summary Judgment as to Castel's conspiracy claim against Cheng.

### 3.    *Claim for Fraudulent Deceit and Concealment Against ARF*

ARF seeks summary judgment on Castel's claim for fraudulent deceit and concealment, arguing that: (i) it did not owe Castel a duty to disclose, (ii) the allegedly concealed facts were immaterial, and (iii) Castel did not suffer harm as a result of the concealment.  (Cheng/ARF Mot. 18–21.)  As explained below, the Court denies Cheng and ARF's Motion as to the fraudulent deceit and concealment claim against ARF.

### i.    Duty to Disclose

The parties agree that, as a minority shareholder in AIT, ARF did not owe any fiduciary duties to its fellow shareholder Castel.  (Second GIMF ¶ 11.)  However, Castel asserts that it, Pharos, and AIT were all parties to a 2006 stockholder agreement

---

[9] Castel also summarily asserts that it "also relies on Wilson, Cheng and James' depositions and documents produced as recently as July 2021 through the course of discovery," but fails to point to any specific testimony or document and fails to assert any facts related to this evidence.  (*Id.* ¶ 40.)

(the "Stockholders Agreement")—and that when ARF purchased the senior secured notes from Pharos, it assumed Pharos's responsibilities under the Stockholders Agreement. (Opp'n Cheng/ARF Mot. 2–3.) Accordingly, Castel asserts, ARF's duty to disclose to Castel arose from a contractual obligation in that Stockholders Agreement. (*Id.* at 14.) Although the parties do not dispute the terms of the Stockholders Agreement, (Cheng/ARF Statement ¶ 112), the parties dispute whether ARF was bound by it, (*id.* ¶ 14 (ARF asserting that it did not agree to accept the obligations contained in the Stockholders Agreement and Castel responding in opposition that ARF was automatically bound as a "successor[] in interest" to Pharos).) Both ARF and Castel support their assertions by citing to different provisions and interpretations of the agreement related to ARF's purchase from Pharos. (*Id.* ¶¶ 60–62.) Additionally, Castel cites to testimonial evidence to assert that ARF must have been aware of the obligations in the Stockholder Agreement. (*See* Opp'n Cheng/ARF Mot. 22.) Whether ARF was knowingly bound by the Stockholders Agreement, thereby establishing a duty to disclose from ARF to Castel, is a factual issue. Castel has therefore presented a genuine issue of material fact that must be determined by a jury. Accordingly, the Court cannot grant summary judgment for ARF on this issue.

    ii. <u>Materiality of Facts</u>

  ARF next argues that even if it owed Castel a duty to disclose, the allegedly concealed facts were not material because Castel would not have acted differently had those facts been disclosed. (Cheng/ARF Mot. 19–20); *see CertainTeed*, 34 Cal. App. 5th at 349 (explaining that a claim for fraudulent deceit and concealment requires that the concealed information is material). Specifically, ARF asserts that Castel could not have acted differently had it known about the Pharos Sale and the Transaction because AIT was insolvent in October 2016 and received only one offer to purchase its assets. (*Id.* at 20.) Thus, ARF asserts, "Castel's only avenue to salvage any portion of its investment was to accept its portion of the asset sale proceeds." (*Id.*)

Materiality of the facts at issue depends "on whether 'a reasonable man would attach importance to its existence or nonexistence in determining his choice of action in the transaction in question.'" *W. Pac. Elec. Co. Corp. v. Dragados/Flatiron*, 534 F. Supp. 3d 1209, 1249 (E.D. Cal. 2021) (quoting *Engalla v. Permanente Med. Grp., Inc.*, 15 Cal. 4th 951, 977 (1997)). "Resolution of this issue 'is generally a question of fact unless the fact misrepresented is so obviously unimportant that the jury could not reasonably find that a reasonable man would have been influenced by it.'" *Id.* Thus, "to negate the element of duty," ARF "must show indisputably that no reasonable juror could attach any importance" to the facts surrounding the Pharos Sale and leading up to the Transaction. *Id.* Here, Castel argues that, had it known about the facts surrounding the Pharos Sale and leading up to the Transaction, it could have taken several courses of action to try to prevent the sale, such as ensuring the ARF Partners recused themselves from voting for the sale. (Opp'n Cheng/ARF Mot. 24.) Castel also asserts that if it had known about the concealed information, it may have accepted a settlement offer from Wilson instead of declining it. (*Id.* at 25.) Therefore, the facts surrounding the Pharos Sale and Transaction are not "so obviously unimportant" that no reasonable jury could find materiality. *See Dragados/Flatiron*, 534 F. Supp. 3d at 1249. Thus, ARF has not met its burden regarding the materiality of the facts at issue, and the Court cannot grant summary judgment on this basis.

### iii.   Resulting Damages

ARF also asserts that it is entitled to summary judgment for Castel's fraudulent deceit and concealment claim because Castel suffered no damages caused by the alleged concealment. (Cheng/ARF Mot. 21.) ARF argues that Castel did not recover on its investment merely because it declined the only viable offer stemming from the Transaction. (*Id.*) Like the materiality of the facts, resulting damages is a question of fact. *See In re Pei Ti Tung*, 253 F. App'x 650, 651 (9th Cir. 2007). Here, Castel cites to testimony to support its argument that, had it known about certain facts relating and leading up to the Transaction, it would have accepted the $100,000 offer that it

1   declined or made efforts to prevent the Transaction, thereby creating opportunity for

2   AIT to be sold at a higher, fairer price and, in turn, a larger offer to Castel.  (Opp'n

3   Cheng/ARF Mot. 18.)  Whether Castel would have accepted the offer it declined or

4   prevented the Transaction from being approved, are triable questions of fact.

5   Therefore, ARF has not met its burden for summary judgment on this issue.

6   Accordingly, the Court **DENIES** Cheng and ARF's Motion for Summary Judgment as

7   to Castel's fraudulent deceit and concealment claim against ARF.

8         *4.*     *Claim for Breach of Contract Against ARF*

9       Finally, ARF seeks summary judgment on Castel's breach of contract claim,

10   asserting that ARF was not bound by the Stockholders Agreement, could not have

11   possibly breached it and, in any case, Castel's damages were not caused by any such

12   breach.  (Cheng/ARF Mot. 21–23.)  For the following reasons, the Court denies

13   Cheng and ARF's Motion as to Castel's breach of contract claim.

14       ARF first asserts it is entitled to summary judgment because it was not bound

15   by the Stockholders Agreement.  (*Id.* at 21.)  However, as explained above, the Court

16   finds that whether ARF was bound by the Agreement presents a genuine issue of

17   material fact.  Accordingly, the Court cannot grant summary judgment on this basis.

18       Next, ARF argues that even if it were bound by the Stockholders Agreement, it

19   could not have possibly breached it because the alleged breach occurred before ARF

20   became bound by the Stockholders Agreement.  (*Id.* at 22.)  Specifically, ARF argues

21   that its alleged breach was failing to consult with Castel "prior to" the Pharos Sale—

22   an obligation arising from the Stockholders Agreement, which ARF became bound to

23   only after it assented to the Pharos Sale—rendering such a breach temporally

24   impossible.  (*Id.*)  However, Castel alleges that ARF's breach includes failing to

25   provide information regarding the Pharos Sale and leading up to the Transaction.  (*See*

26   Opp'n Cheng/ARF Mot. 23–25; SAC ¶¶ 167–75.)  These alleged events would have

27   occurred after the Pharos Sale and therefore after ARF allegedly became bound by the

28   Stockholders Agreement.  Thus, Castel's alleged breach is not temporally impossible.

Finally, ARF again argues that even if it were bound by the Stockholders Agreement and technically breached it, Castel did not suffer any damages as a result. (Cheng/ARF Mot. 22–23.)   As stated above, resulting damages is a question of disputed fact—and one for which Castel has provided supporting evidence. Accordingly, ARF is not entitled to summary judgment on this basis.   The Court therefore **DENIES** Cheng and ARF's Motion for Summary Judgment as to the breach of contract claim against ARF.

## C. Wilson's Motion for Summary Judgment

Wilson seeks summary judgment as to Castel's claims asserted against him. (*See generally* Wilson Mot.)  As explained below, the Court denies Wilson's Motion.

### 1. Claim for Fraudulent Deceit and Concealment

Wilson first seeks summary judgment as to the fraudulent deceit and concealment claim, arguing that: (i) he did not conceal facts from Castel, (ii) the allegedly concealed facts were immaterial, (iii) Wilson did not have the intent to defraud; and (iv) Castel did not suffer harm as a result of the concealment.  (Wilson Mot. 9–14.)  For the following reasons, the Court denies Wilson's Motion as to the fraudulent deceit and concealment claim asserted against him.

#### i. Concealment of Facts

First, Wilson argues that he is entitled to summary judgment because he never concealed from Castel the facts at issue.  (*Id.* at 10.)  Specifically, Wilson asserts that he did not conceal Cheng's involvement on both sides of the Transaction because Castel learned of Cheng's involvement on the buyer's side when Wilson sent Castel the draft agreement for the Transaction, which "clearly indicated" Cheng was representing the buyer.  (*Id.*)  Wilson argues Cheng's only involvement on the seller's side of the Transaction was as a creditor, of which Castel also had notice.  (*Id.*)  In support of his arguments, Wilson cites to a copy of the draft Transaction agreement and a spreadsheet that was emailed to Castel on October 26, 2016.  (*Id.*; Def.'s Separate Statement Reply ("Wilson Statement") ¶¶ 10, 11, 26, ECF No. 133

(referencing Decl. Christopher Wilson ¶¶ 23–25, 33, Ex. 6 ("Draft Transaction Agreement"), Ex. 8 , ECF No. 109-1).)  Wilson also asserts that he did not conceal the "kickback" that the buyer was allegedly going to receive, because no such kickback existed.  (Wilson Mot. 10–11.)  In support of this argument, Wilson relies on various documents and testimony to explain how the Transaction proceeds were distributed and that no additional payment was rendered to the buyer.  (*Id.*)

In his Opposition, Castel does not directly dispute Wilson's argument regarding Cheng's involvement with both sides of the Transaction and the buyer not receiving a kickback.  (*See generally* Opp'n Wilson Mot.)  Instead, Castel cites to different facts as being the basis for its claim, arguing that Wilson concealed the facts that: (1) Aurora Healthcare was the true buyer in the Transaction; (2) the Draft Transaction Agreement that was sent to Castel was not the same agreement that was ultimately executed; (3) Wilson had a financial interest from the Transaction; (4) AIT provided preferential treatment to some shareholders; (5) the final payment terms of the Transaction were materially different from those originally disclosed to Castel; and (6) Wilson did not provide certain financial information to Castel.  (*Id.* at 8–14.)  In support of these assertions, Castel relies on various documents such as the Draft Transaction Agreement Wilson sent Castel and the testimony of corporate representative Malacalza indicating that those terms differed from the terms of the final, executed agreement.  (*Id.* (first citing Draft Transaction Agreement; and then citing Malacalza Decl. ¶¶ 13, 14, 18, 21, 22).)  In reply, Wilson does not directly address or negate these contentions but does cite to testimony to dispute some of the facts underlying those contentions.  (*See* Wilson Statement.)  The evidence thus creates "sufficient disagreement to require submission to a jury." *Nikmanesh v. Wal-Mart Stores, Inc.*, No. SACV-15-00202-AG (JCGx), 2017 WL 11526367, at *1 (C.D. Cal. Mar. 13, 2017) (quoting *Anderson*, 477 U.S. at 251–52).  Thus, Castel established triable issues of fact and Wilson is not entitled to summary judgment on this basis.

ii.   Materiality of Facts, Intent to Defraud, Resulting Damages

Next, Wilson argues that even if he concealed the at-issue facts from Castel, such facts were not material, such concealment was not intentional and, in any case, Castel did not suffer damages resulting from the concealment.  (Wilson Mot. 11–14.) Wilson's damages argument is based on the notion that Castel would have lost its investment irrespective of which facts were disclosed to Castel because AIT was insolvent and only received one offer for the sale of its assets.  (*Id.* at 14.)  However, issues of intent to defraud, materiality of the alleged fraud, and causation of damages, are all questions of fact.  *See In re Candland*, 90 F.3d 1466, 1469 (9th Cir. 1996). Here, Castel cites to testimonial evidence to support his arguments that Wilson indeed had the intent to defraud Castel and the facts at issue were material because they impacted Castel's decisions regarding the Transaction.  (Opp'n Wilson Mot. 14–17; *see generally* Third GIMF.)  And for the same reasons Castel has created triable issues of fact regarding damages resulting from ARF's alleged fraud, Castel has also established triable issues of fact as to whether Wilson's alleged fraud caused damages to Castel.  Accordingly, the Court cannot grant summary judgment on any of these bases.  The Court therefore **DENIES** Wilson's Motion for Summary Judgment as to Castel's fraudulent deceit and concealment claim against Wilson.

2.   *Claim for Breach of Fiduciary Duty*

Wilson also seeks summary judgment as to Castel's claim that Wilson breached his fiduciary duties.  (Wilson Mot. 14–24.)  In Wilson's Motion, he argues that he is entitled to summary judgment as to Castel's breach of fiduciary duty claim under California law and, specifically, California's "trust fund doctrine" and "business judgment rule."  (*Id.*)  However, in the Court's previous Order ruling on Defendants' motions to dismiss, the Court found that pursuant to the internal affairs doctrine, Castel's breach of fiduciary duty claim is governed by Delaware law because the claim "involve[s] issues related to AIT's internal affairs" and AIT is incorporated in Delaware.  (Order 22, ECF No. 73.)  Accordingly, the various standards, rules, and

doctrines serving as the bases for Wilson's arguments are inapplicable to the breach of fiduciary duty claim.[10]   Thus, Wilson has not shown that he is entitled to judgment and the Court therefore **DENIES** Wilson's Motion as to the breach of fiduciary duty claim.

## VI.    CONCLUSION

For the reasons discussed above, the Court rules as follows on Moving Defendants' Motions for Summary Judgment:

- **GRANTS** James's Motion for Summary Judgment, (ECF No. 104);
- **GRANTS** in **PART** and **DENIES** in **PART** Cheng and ARF's Motion for Summary Judgment, (ECF No. 107), as follows:
  - o **GRANTS** the Motion as to Castel's claims of fraudulent deceit and concealment and civil conspiracy against Cheng;
  - o **DENIES** the Motion as to Castel's claims of fraudulent deceit and concealment and breach of contract against ARF;
- **STRIKES** Cheng and ARF's Proposed Order as improperly filed as a motion, (ECF No. 110); and
- **DENIES** Wilson's Motion for Summary Judgment, (ECF No. 109).

**IT IS SO ORDERED.**

February 18, 2022

_____

**OTIS D. WRIGHT, II**
**UNITED STATES DISTRICT JUDGE**

---

[10] In Wilson's Reply in support of his Motion, he argues for the first time that he is entitled to summary judgment under *Delaware* law.  (*See* Def. Wilson Reply 7–12.)  However, "[t]he Court will not consider a new argument raised for the first time in a Reply."  *United States v. MyLife.com, Inc.*, 499 F. Supp. 3d 757, 766 (C.D. Cal. 2020).