Alison P. Buchanan (SBN 215710)
alison.buchanan@hogefenton.com
Laura C. Riparbelli (SBN 311226)
laura.riparbelli@hogefenton.com
HOGE, FENTON, JONES & APPEL, INC.
55 South Market Street, Suite 900
San Jose, California 95113-2324
Phone: 408.287.9501
Fax: 408.287.2583

Attorneys for Defendant
STEVEN J. JAMES

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| CASTEL S.A., a Luxembourg joint stock company (*societe anonyme*),<br><br>              Plaintiff,<br><br>       v.<br><br>CHRISTOPHER A. WILSON, an individual; OLIVIA HO CHENG, an individual; ARF PARTNERS, LLC, a Massachusetts limited liability company; STEVEN J. JAMES, an individual,<br>              Defendants. | Case No. 2:19-cv-09336-ODW(PVC)<br><br>DEFENDANT STEVEN J. JAMES' NOTICE OF MOTION, FRCP RULE 11 MOTION, AND SUPPORTING MEMORANDUM OF POINTS AND AUTHORITIES<br><br>Date:          May 23, 2022<br>Time:          1:30 p.m.<br>Courtroom:   5D, 5th Floor<br>Judge:        Hon. Otis D. Wright II<br><br>Action Filed: October 30, 2019<br>Pre-Trial Conference:<br>              December 28, 2022<br>Trial Date: January 17, 2023 |

<u>TABLE OF CONTENTS</u>

NOTICE OF MOTION..................................................................................5

MEMORANDUM OF POINTS AND AUTHORITIES.............................6

INTRODUCTION AND RELIEF REQUESTED ....................................6

FACTUAL SUMMARY ...........................................................................8

  A. Plaintiff Was an Investor and Creditor in AIT....................................8

  B. Defendant James Resigned as AIT's Chief Financial Officer in 2014,
     Long Before the Transactions that are the Subject of this Dispute..................8

  C. When the 2015 and 2016 Subject Transactions Occurred, Defendant
     James Had Long-Ago Resigned From Any Formal Position With AIT...........8

  D. In 2019, Plaintiff Sued Various Persons and Entities For Fraud and Related
     Causes of Action; As Against Defendant James (Who Was Not the CFO
     of AIT During the 2015 and 2016 Transactions), Plaintiff Alleges One
     Cause of Action for Fraudulent Deceit and Concealment................................9

  E. Despite Knowing Since at Least March 2020 that Defendant James
     Resigned as AIT's Chief Financial Officer Before the Allegedly Fraudulent
     Transactions, Plaintiff Continued to Purse this Action Against Defendant
     James and Refused to Dismiss Him.  This Warrants Rule 11 Sanctions
     Against Plaintiff................................................................................10

  F. In September 2021, After Discovery Closed, Defendant James Served A
     Rule 11 Motion and Moved Ex Parte for an Order Extending the Motion
     Cutoff for the Limited Purpose of Allowing the Court to Hear the
     Rule 11 Motion.................................................................................13

  G. In February 2022, This Court Granted Defendant James' Motion for
     Summary Judgment. .........................................................................13

ANALYSIS................................................................................................14

  A. This Court Should Sanction Plaintiff and Its Counsel For Misuse of the
     Legal Process, Where They Furthered Unsound Legal Theories Based
     on Allegations They Knew Were False From the Outset...............................14

  B. Pursuant to Rule 11, this Court Should Sanction Plaintiff and its Counsel For

the Attorney Fees and Costs Incurred Defending This Meritless Lawsuit. ....19

CONCLUSION........................................................................................................21

DEFENDANT STEVEN J. JAMES' NOTICE OF MOTION, FRCP RULE 11 MOTION, AND SUPPORTING
MEMORANDUM OF POINTS AND AUTHORITIES

<u>TABLE OF AUTHORITIES</u>

Cases

*Gaskell v. Weir*, 10 F.3d 626 (9th Cir. 1993) ............................................................. 20

*Kendrick v. Zanides*, 609 F.Supp. 1162 (N.D. Cal. 1985) ................................. 15, 16

*Nguyen v. Simpson Strong-Tie Company, Inc.*, 2020 WL 5232564
  (N.D. Cal. 2020) ............................................................................................... 16, 17

*Orange Production Credit Ass'n v. Frontline Ventures Ltd.*, 792 F.2d 797
  (9th Cir. 1986) ......................................................................................................... 20

*Refac Intern., Ltd. v. Hitachi, Ltd.*, 141 F.R.D. 281 (C.D. Cal. 1991) ...................... 20

*Truesdell v. S. Cal. Permanente Med. Group*, 293 F.3d 1146 (9th Cir. 2002) ... 14, 21

*Van Gerwen v. Guarantee Mutual Life Co.*, 214 F.3d 1041 (9th Cir. 2000) ............ 21

*Zaldivar v. City of Los Angeles*, 780 F.2d 823 (9th Cir. 1986) ................................. 20

Statutes

FRCP Rule 12(b)(6) ................................................................................................ 9, 11

FRCP Rule 11 ..................................................................................................... passim

DEFENDANT STEVEN J. JAMES' NOTICE OF MOTION, FRCP RULE 11 MOTION, AND SUPPORTING
MEMORANDUM OF POINTS AND AUTHORITIES

## NOTICE OF MOTION

Please take notice that on May 23, 2022, at 1:30 p.m., or as soon thereafter as counsel may be heard before this Court, Defendant STEVEN J. JAMES ("Defendant James") will move this Court for sanctions pursuant to Federal Rule of Civil Procedure 11.  Specifically, Defendant James seeks sanctions against Plaintiff CASTEL, S.A. and its counsel Valla & Associates in the amount of the attorney fees and costs incurred in defense of Plaintiff's complaint.

Defendant James brings this motion following a conference between counsel for Plaintiff and counsel for Defendant James pursuant to Local Rule 7-3, which took place on March 24, 2022.

This motion is based on this Notice of Motion and Motion, the Memorandum of Points and Authorities set forth below, the Declaration of Alison P. Buchanan ("Buchanan Declaration") and exhibits included therewith, documents on file with the Court, and such further evidence and argument as may be submitted to the Court at or before the hearing.

DATED:  April 18, 2022          HOGE, FENTON, JONES & APPEL, INC.


By:   /s/Alison P. Buchanan
_____
Alison P. Buchanan
Laura C. Riparbelli
Attorneys for Defendant
STEVEN J. JAMES

DEFENDANT STEVEN J. JAMES' NOTICE OF MOTION, FRCP RULE 11 MOTION, AND SUPPORTING
MEMORANDUM OF POINTS AND AUTHORITIES

## MEMORANDUM OF POINTS AND AUTHORITIES

## INTRODUCTION AND RELIEF REQUESTED

Federal Rule of Civil Procedure 11 prohibits an attorney from knowingly filing a pleading that includes false allegations and furthering claims that the attorney knows are unwarranted based on existing law.  The rule "emphasizes the duty of candor by subjecting litigants to potential sanctions for insisting upon a position after it is no longer tenable…"  (See Rule 11, advisory committee's notes to 1993 amendments).  Plaintiff and its counsel's insistence on furthering demonstrably false claims against Defendant James is an obvious violation of Rule 11 and warrants monetary sanctions.

On October 31, 2019, Plaintiff filed this action against Defendants James and others for fraud and related claims arising out of transactions that took place pertaining to Aurora Imaging Technology, Inc.'s ("AIT").  The allegedly fraudulent transactions took place in 2015 and 2016, at which time Defendant James was no longer AIT's Chief Financial Officer.  The Complaint correctly alleged that Defendant James was AIT's former CFO, but also incorrectly alleged that Defendant James nevertheless owed Plaintiff a fiduciary duty.

Months later, in a desperate effort to avoid a motion to dismiss, Plaintiff amended the Complaint.  The First Amended Complaint included an entirely new (and contradictory) allegation – that Defendant James was AIT's CFO at the time of the subject transactions.  This allegation was demonstrably false and Plaintiff, through its counsel, knew so at that time.

In advance of Defendant James 12(b)(6) motion, in early 2020, Defendant James' counsel met and conferred with Plaintiff's counsel and informed counsel that Defendant James was not AIT's Chief Financial Officer at the time of the subject transactions.  Indeed, a deposition transcript – which Plaintiff had attached as an exhibit to the First Amended Complaint – included testimony that Defendant James had resigned before the subject transactions.  Nevertheless, Plaintiff refused to

DEFENDANT STEVEN J. JAMES' NOTICE OF MOTION, FRCP RULE 11 MOTION, AND SUPPORTING
MEMORANDUM OF POINTS AND AUTHORITIES

dismiss Defendant James.  Plaintiff's First Amended Complaint survived Defendant James' 12(b)(6) motion, but **only** because the court was constrained by the pleading, which included the false allegation that Defendant James was an officer of AIT in 2015 and 2016.

For the next several years, Defendant James repeatedly informed Plaintiff that Defendant James was not AIT's CFO at the time of the subject transactions. However, at every juncture, Plaintiff refused to concede this fact, refused to correct the false allegation in the operative pleading, and refused to dismiss Defendant James.  Defendant James was forced to defend himself against Plaintiff's demonstrably meritless claims (including, filing a motion to dismiss, propounding and responding to written discovery, appearing for deposition, filing a motion for summary judgment, filing all pre-trial documents in advance of the original November 16, 2021 trial date (which required significant meet and confer efforts between all counsel), preparing for trial, filing an ex parte application to continue trial, and filing this Rule 11 motion).

Finally, in August 2021, in opposition to Defendant James' motion for summary judgment, Plaintiff **conceded** that Defendant James resigned as AIT's CFO in 2014.  Even despite this, Plaintiff continued, in bad faith, to pursue its claim against Defendant James, arguing implausible theories that were totally unsupported by current and relevant authority.  On February 18, 2022, this Court confirmed that Plaintiff's arguments were implausible, granting Defendant James' motion for summary judgment in its entirety.

For over two years, Defendant James has been needlessly forced to participate in this litigation based on Plaintiff's false allegations.  Plaintiff's persistence in furthering knowingly false allegations against Defendant James warrants Rule 11 sanctions.  Therefore, Defendant James requests an order granting Rule 11 sanctions against Plaintiff and its counsel for attorney fees (in an amount to be determined in further briefing).

DEFENDANT STEVEN J. JAMES' NOTICE OF MOTION, FRCP RULE 11 MOTION, AND SUPPORTING MEMORANDUM OF POINTS AND AUTHORITIES

## FACTUAL SUMMARY

### A.    Plaintiff Was an Investor and Creditor in AIT.

In 1999, Defendant James, a certified public accountant, joined AIT as its Executive Vice President and Chief Financial Officer.  (See Defendant James' Declaration in support of his motion for summary judgement ("James Decl."), attached as **Exhibit 4** to the Declaration of Alison P. Buchanan filed concurrently wherewith ("Buchanan Decl.") at ¶14).  Plaintiff alleges that on or about June 19, 2006, Plaintiff invested in AIT.  (See Plaintiff's Second Amended Complaint, Document No. 91, at ¶22).

### B.    Defendant James Resigned as AIT's Chief Financial Officer in 2014, Long Before the Transactions that are the Subject of this Dispute.

In 2014, Defendant James resigned from AIT.  (See James Decl. (attached as Exhibit 4 to Buchanan Decl.), ¶5).  In a letter dated **June 25, 2014**, Defendant James informed AIT's Acting Chief Executive Officer in writing that Defendant James was resigning from **all positions** in the company, including as the company's CFO.  (*Id*., Exhibit A (Defendant James' resignation letter)).  In his resignation letter, Defendant James stated, "I am writing to provide you with notice of my resignation for good reason / termination not for cause, effective immediately."  (*Id*.).  Defendant James specifically stated that he had been acting as Secretary and Treasurer of AIT and was resigning from those positions as well ("I am also compelled to resign from my position as Secretary and Treasurer of the Company, effective immediately.").  (*Id*.).

During his May 21, 2021 deposition, Defendant James confirmed the uncontroverted fact that, in 2014, he resigned from all positions with AIT.  (See relevant excerpt from Defendant James' deposition transcript, attached as **Exhibit 3** to Buchanan Decl.).

### C.    When the 2015 and 2016 Subject Transactions Occurred, Defendant James Had Long-Ago Resigned From Any Formal Position With AIT.

On or about November 25, 2015, AIT investor Pharos sold its interest in AIT

-8-

2:19-cv-09336-ODW(PVC)

to Defendant ARF Partners, LLC ("Defendant ARF Partners").  (See Second Amended Complaint, Document No. 91, ¶28).  Then, on or about October 31, 2016, AIT sold and transferred all its assets.  (*Id*. at ¶37).

Plaintiff's claim against Defendant James arises solely out of the 2015 and 2016 transactions.

**D.    In 2019, Plaintiff Sued Various Persons and Entities For Fraud and Related Causes of Action; As Against Defendant James (Who Was Not the CFO of AIT During the 2015 and 2016 Transactions), Plaintiff Alleges One Cause of Action for Fraudulent Deceit and Concealment.**

On October 31, 2019, Plaintiff sued Defendant James and others for fraud and related causes of action.  As against Defendant James, Plaintiff conceded that Defendant James was AIT's former CFO, but alleged an entirely untenable theory – that because Defendant James allegedly worked as a part-time consultant "to handle AIT's financials" and was an officer in *other companies* related to the subject transactions, that he therefore owed a duty to Plaintiff to disclose certain facts. (Dkt. No. 1, Complaint, ¶¶83-86).

In an effort to cure this obvious pleading defect, which absolutely warranted a dismissal of Defendant James, on January 29, 2020, Plaintiff filed a First Amended Complaint.  (Dkt. No. 44).  Plaintiff falsely alleged that Defendant James was AIT's CFO at the time of the alleged transactions.  (Dkt. No. 44, ¶110 – 121).  Plaintiff also incorrectly alleged that Defendant James "owed a fiduciary duty to the shareholders of AIT" and, on that basis, was obligated to disclose certain facts regarding the sale of Pharos' notes and investments to ARF Partners at the time of the sale in November 25, 2015.  (*Id*.).

Defendant James' counsel promptly met and conferred in advance of filing an FRCP 12(b)(6) motion and told Plaintiff's counsel that Defendant James was not AIT's CFO at the time of the transactions.  (Buchanan Decl., ¶3.  Defendant James' counsel even informed Plaintiff that a deposition transcript (which Plaintiff had attached as Exhibit N to the First Amended Complaint) included testimony

DEFENDANT STEVEN J. JAMES' NOTICE OF MOTION, FRCP RULE 11 MOTION, AND SUPPORTING MEMORANDUM OF POINTS AND AUTHORITIES

1   confirming that Defendant James was not AIT's CFO in 2015 or 2016.  (*Id.*).  Still,

2   Plaintiff refused to dismiss Defendant James (and refused to amend the pleading to

3   remove the obviously false allegation).  (*Id.*).  The Court ultimately denied

4   Defendant James' 12(b)(6) motion **only** because it was constrained by the fact that

5   the First Amended Complaint included this false allegation.[1]  (Dkt. No. 73).

6         On January 28, 2021, Plaintiff filed a Second Amended Complaint.  (Dkt. No.

7   91).  Instead of correcting the fabricated allegations regarding Defendant James,

8   Plaintiff and its counsel filed another pleading **repeating** the **same false allegations**

9   regarding Defendant James' purported status as AIT's CFO during the 2015 and

10  2016 transactions.  (Dkt. No. 91, Second Amended Complaint, ¶119 – 130).

11        **E.    Despite Knowing Since at Least March 2020 that Defendant James Resigned as AIT's Chief Financial Officer Before the Allegedly Fraudulent Transactions, Plaintiff Continued to Purse this Action Against Defendant James and Refused to Dismiss Him.  This Warrants Rule 11 Sanctions Against Plaintiff.**

14        At every opportunity, Defendant James informed Plaintiff that Defendant

15  James was not AIT's Chief Financial Officer after 2014 (despite Plaintiff's

16  allegations) and that therefore Defendant James did not owe a fiduciary duty to

17  Plaintiff to make disclosures during the 2015 or 2016 transactions.  Plaintiff knew

18  almost immediately after commencing this action that Defendant James was not an

19  officer of AIT at the time of the 2015 or 2016 transactions:

20        •    On February 13, 2020, Defendant James' counsel sent a meet and

21             confer letter to Plaintiff's counsel informing counsel that Defendant

22             James resigned as AIT's Chief Financial Officer prior to the 2015

23             transaction.  (See Buchanan Decl., ¶3, **Exhibit 1**).  Plaintiff refused to

24

25

---

26  [1] This Court held: "At this stage, the Court must accept as trust Plaintiff's allegation that James was AIT's CFO during the relevant period, as no uncontroverted

27  evidence before the Court establishes otherwise.  As such, James's sole grounds for dismissal of Plaintiff's fraud claim is DENIED."  (Dkt. No. 73, p.19:9-12).

28

DEFENDANT STEVEN J. JAMES' NOTICE OF MOTION, FRCP RULE 11 MOTION, AND SUPPORTING MEMORANDUM OF POINTS AND AUTHORITIES

dismiss Defendant James and continued to pursue this action against him. (*Id*.).

- On February 19, 2020, Defendant James filed a FRCP 12(b)(6) motion to dismiss, confirming that he resigned as AIT's Chief Financial Officer in 2014. (*Id*. at ¶4). Plaintiff opposed the motion and again refused to dismiss Defendant James. (*Id*.). The Court denied Defendant James' FRCP 12(b)(6) motion to dismiss based on Plaintiff's (false) allegation that Defendant James was the CFO of AIT at the time of the 2015 and 2016 transactions. (See Order, Dkt. No. 73, p.19:1-12).

- On August 7, 2020, Defendant James answered the First Amended Complaint and therein specifically stated therein that he had resigned as AIT's Chief Financial Officer in 2014. (See Defendant James' Answer to First Amended Complaint, Document No. 77, at ¶94).

- On March 1, 2021, Defendant James answered the Second Amended Complaint and again specifically stated therein that he had resigned as AIT's Chief Financial Officer in 2014. (See Defendant James' Answer to Second Amended Complaint, Document No. 96, at ¶86).

- Plaintiff waited until April 14, 2021 to propound written discovery (despite the Court having set trial for November 16, 2021). (See Buchanan Decl., ¶8). On May 14, 2021, Defendant James served discovery responses, again stating that he had resigned as an officer of AIT in 2014. (*Id*., **Exhibit 2**). Defendant James produced his June 2014 resignation letter. (*Id*.). Still, Plaintiff refused to dismiss Defendant James and continued to pursue this action against him. (*Id*.).

- On May 21, 2021, Plaintiff deposed Defendant James. (*Id*. at ¶9). Defendant James testified that he resigned as an officer of AIT in 2014. (*Id*.). Still, Plaintiff refused to dismiss Defendant James. (*Id*.).

- On July 16, 2021, Plaintiff's counsel and Defendant James' counsel

DEFENDANT STEVEN J. JAMES' NOTICE OF MOTION, FRCP RULE 11 MOTION, AND SUPPORTING MEMORANDUM OF POINTS AND AUTHORITIES

telephonically met and conferred in advance of Defendant James' motion for summary judgment. (*Id*. at ¶11). Defendant James' counsel again advised Plaintiff's counsel that Defendant James resigned in 2014. (*Id*.). Plaintiff refused to dismiss Defendant James. (*Id*.).

- In late July 2021, and early August 2021, Defendant James' counsel communicated with Plaintiff's counsel (both via email and telephonically) requesting that Plaintiff dismiss Defendant James based on his 2014 resignation. (*Id*. at ¶12). Still, Plaintiff refused to dismiss Defendant James, despite any viable theory of liability. (*Id*.).

- In August 2021, Plaintiff filed an Opposition to Defendant James' motion for summary judgment. (*Id*. at ¶13). Therein, Plaintiff **admitted** that Defendant James resigned as AIT's Chief Financial Officer in 2014 (more than one year before the 2015 transaction, and two years before the 2016 transaction). (*Id*.). In its opposition, Plaintiff invented new, creative (but legally untenable) theories as to Defendant James. (*Id*.).

- On February 18, 2022, this Court granted Defendant James' motion for summary judgment, holding that James was not AIT's CFO at the time of the transactions and did not owe Plaintiff, one of AIT's investors, a fiduciary duty under any legal theory. (Dkt. No. 176, pp.7:24 – 11:13).

Despite having been repeatedly provided this information for several years, Plaintiff and its counsel has persisted in pursing unsubstantiated and legally unsound arguments in a desperate attempt to maintain this action against Defendant James. Not once has Plaintiff corrected the false pleadings – indeed, the first and second amended versions of Plaintiff's Complaint includes the false allegation that Defendant James was the CFO of AIT during the 2015 and 2016 subject transaction. Rule 11 does not permit Plaintiff's counsel to further theories that it **knows** are not based in fact or supporting legal authority.

DEFENDANT STEVEN J. JAMES' NOTICE OF MOTION, FRCP RULE 11 MOTION, AND SUPPORTING MEMORANDUM OF POINTS AND AUTHORITIES

**F.      In September 2021, After Discovery Closed, Defendant James Served A Rule 11 Motion and Moved Ex Parte for an Order Extending the Motion Cutoff for the Limited Purpose of Allowing the Court to Hear the Rule 11 Motion.**

Discovery closed July 16, 2021, after which it was undeniably confirmed that no evidence supported Plaintiff's claims against Defendant James.  (See Buchanan Decl., ¶11).  On July 30, 2021, Defendant James' counsel met and conferred with Plaintiff's counsel regarding Defendant James' contemplated Rule 11 motion.  (*Id*. at ¶15).  Again, Plaintiff's counsel refused to dismiss Defendant James.  (*Id*.).  On September 8, 2021, in compliance with Rule 11's safe-harbor provision, Defendant James served the Rule 11 motion on Plaintiff.  (*Id*. at ¶16).  On September 15, 2021, Defendant James filed an ex parte application seeking to extend the motion cutoff to allow this Court to hear Defendant James' Rule 11 motion.  (Dkt. No. 138).  The court denied the ex parte application as "premature" given the pending motions for summary judgment.  (Dkt. No. 140).  The minute order provided that "[i]f, after Defendants' Motions for Summary Judgment are decided, Defendant James still seeks the relief requested in the Ex Parte Application, he may renew the application at that time."  (*Id*.).  Therefore, Defendant James did not file the Rule 11 motion upon expiration of the safe harbor period, and waited to re-file this motion until the Court decided the pending summary judgment motions.

**G.      In February 2022, This Court Granted Defendant James' Motion for Summary Judgment.**

Plaintiff never had a viable basis for asserting that Defendant James was the CFO of AIT in 2015 and 2016.  Defendant James' counsel repeatedly informed Plaintiff's counsel otherwise.  Documentary evidence, and deposition testimony, both confirmed that Plaintiff's allegations were false.

The baseless nature of Plaintiff's claims against Defendant James were again confirmed on February 18, 2022, when this Court granted Defendant James' motion for summary judgment.  (See Dkt. No. 176).  The basis for Defendant James' motion

2:19-cv-09336-ODW(PVC)

DEFENDANT STEVEN J. JAMES' NOTICE OF MOTION, FRCP RULE 11 MOTION, AND SUPPORTING MEMORANDUM OF POINTS AND AUTHORITIES

for summary judgment was that the **undisputed** evidence established that Defendant James had resigned as AIT's Chief Financial Officer in 2014 and owed **no duty** to Plaintiff in 2015 and 2016 when the allegedly fraudulent transactions occurred. The Court agreed. (See *id*., pp.7:24 – 11:13).

Defendant James has incurred substantial attorney fees and costs in defending Plaintiff's meritless claims. For the last two years, despite uncontroverted evidence that Plaintiff was pursuing unsubstantiated arguments and relying on false facts, Defendant James was forced to incur attorney fees to defend Plaintiff's claims. This includes but is not limited to: filing a motion to dismiss, propounding and responding to written discovery, appearing for deposition, filing a motion for summary judgment, filing all pre-trial documents in advance of the original November 16, 2021 trial date (which required significant meet and confer efforts between all counsel), filing an ex parte application to continue trial, and filing this Rule 11 motion. (Buchanan Decl., ¶19).

Before filing this Rule 11 motion, Defendant James complied with all meet and confer and safe harbor requirements. (See Buchanan Decl., ¶¶20, 21). Based on the foregoing, this Court should issue Rule 11 sanctions against Plaintiff and its counsel.

## ANALYSIS

### A.   This Court Should Sanction Plaintiff and Its Counsel For Misuse of the Legal Process, Where They Furthered Unsound Legal Theories Based on Allegations They Knew Were False From the Outset.

Federal Rule of Civil Procedure 11 prohibits attorneys from filing papers with the court that the attorney knows to include false statements or knows have legal argument that the true facts do not support. (See FRCP Rule 11; see also *Truesdell v. S. Cal. Permanente Med. Group*, 293 F.3d 1146, 1153 (9th Cir. 2002) ["The district court concluded that Plaintiff's complaint was sanctionable because it was both legally frivolous and factually misleading. Rule 11(c) allows sanctions if a filing suffers from *either* of those defects."]). The court can impose sanctions

against any attorney, law firm, or party in violation of Rule 11.  Specifically, Rule 11 prohibits the following conduct:

> (b) Representations to the Court. By presenting to the court a pleading, written motion, or other paper— whether by signing, filing, submitting, or later advocating it—**an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances**:
>
> (1) it is not being presented for any **improper purpose**, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;
>
> (2) **the claims, defenses, and other legal contentions are warranted by existing law** or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;
>
> (3) **the factual contentions have evidentiary support** or, if specifically so identified, will likely have evidentiary support after a **reasonable opportunity for further investigation or discovery**; and
>
> (4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information.

(Emphasis added).  This rule "require[s] litigants to 'stop-and-think' before initially making legal or factual contentions.  It also, however, emphasizes the duty of candor by subjecting litigants to potential sanctions for insisting upon a position after it is no longer tenable…"  (See Rule 11, advisory committee's notes to 1993 amendments).

A court may issue Rule 11 sanctions when a plaintiff does not make a "reasonable inquiry" into whether the plaintiff's allegations are supported by fact. (See *Kendrick v. Zanides*, 609 F.Supp. 1162 (N.D. Cal. 1985).  In *Kendrick*, the plaintiff (whom the government had previously prosecuted in connection with a Securities and Exchange Commission investigation) sued federal prosecutors, the Postal Service, and other parties for violations of the plaintiff's constitutional and common-law rights.  The defendants moved to dismiss plaintiff's complaint. Attached to the defendants' motions to dismiss were documents which directly

disputed the conclusory allegations in the original complaint.  For example, plaintiff alleged that he had never been asked or consented to the review of certain documents; but, plaintiff had previously signed a settlement agreement acknowledging that he had been advised that the government had requested those documents and the Commission had granted access to same.  (*Id*. at 1170 – 1172). The plaintiff also had alleged that certain defendants engaged in a conspiracy to destroy the plaintiff's records; but a letter confirmed that Kendrick was advised as to which records would be destroyed and that if he wanted to retain any of the records, he could do so.  (*Id*.).  Nevertheless, plaintiff filed an amended complaint, again pleading the same false statements.  (*Id*. at 1170).

The court in *Kendrick* imposed Rule 11 sanctions for the plaintiff's egregious conduct, holding as follows:

> In the light of this record, it is clear that the motions for sanctions must be granted. Not a semblance of a "reasonable inquiry" was made to determine whether the allegations were well-grounded in fact. Neither Kendrick nor his counsel conducted a pre-filing investigation to discover a factual basis for the allegations or did they obtain supporting facts from Kendrick's prior counsel. While it is not necessary for Kendrick's present lawyers to have conducted their own inquiry, if someone else has done so, Rule 11 requires that they have in hand sufficient credible information (as opposed to opinions or conclusions) from whatever source to enable *them* to form a reasonable belief that the allegations to which they put their signature are well-grounded in fact.

(*Id*. at 1172).

The attorney's sanctionable conduct in *Nguyen v. Simpson Strong-Tie Company, Inc.* is also analogous to the conduct Plaintiff and its counsel have engaged in as against Defendant James.  (*Nguyen v. Simpson Strong-Tie Company, Inc.*, 2020 WL 5232564 (N.D. Cal. 2020)).  In *Nguyen*, plaintiff home owners sued a product manufacturer that produces construction connectors and fasteners to provide homes with structural support.  (*Id*. at 1).  The plaintiffs alleged that the products were defective, that the defendant knew the products were defective, but concealed that information from customers.  (*Id*.).  Shortly after the plaintiffs served the

DEFENDANT STEVEN J. JAMES' NOTICE OF MOTION, FRCP RULE 11 MOTION, AND SUPPORTING MEMORANDUM OF POINTS AND AUTHORITIES

complaint, the defendant's counsel sent a letter to the plaintiff's counsel warning that the plaintiffs had violated Rule 11 because the plaintiffs has either "'failed to investigate the factual basis for the claims it made in the [original complaint], 'or purposefully determined to mislead the court…'" (*Id*. at 2).  The defendant's counsel notified plaintiffs' counsel that the defendant had indeed provided extensive warnings regarding the product to consumers.  (*Id*.).  The plaintiffs then filed an amended complaint, but only slightly changed the allegations (this time, acknowledging that the defendant had provided warnings to consumers, but alleging that the warnings were not "adequate" because a reasonable consumer would have nevertheless believed, based on the disclosure, that the product would last for the life of the home, resist corrosion, and protect against strong winds and seismic activity.  (*Id*.).  This contradicted the text of the applicable warnings.  (*Id*. at 2-3).

The *Nguyen* court granted the defendant's request for Rule 11 sanctions.  The court held that plaintiff's counsel was "obligated to inquire into these facts and put some meat on the bones of the complaint, instead of asserting broad claims based on sparse factual allegations." (*Id*. at 5).  The court also held that counsel's failure to make such an inquiry "meant that the FAC was factually and legally baseless… The paucity of fact allegations rendered implausible a core allegations of the FAC, and, as a result, all nine of Plaintiffs' claims." (*Id*.).  The court found that the plaintiff's refusal to abandon its claim, once it knew that the allegations were false, was improper:

> Counsel had to have reached the conclusion that the corrosion warnings seriously negated a core allegation of the FAC. i.e.. that Simpson described the Product in such a way that a reasonable consumer would expect that it "was capable of resisting corrosion...for the entire life of the home." FAC ¶ 106. But instead of withdrawing this assertion after Simpson raised the possibility of a Rule 11 violation, or alleging other facts to beef up the allegations about the expected life of the Product, they doubled down and instead resorted to selectively citing the Application Guide while ignoring the content of the corrosion warnings.

DEFENDANT STEVEN J. JAMES' NOTICE OF MOTION, FRCP RULE 11 MOTION, AND SUPPORTING MEMORANDUM OF POINTS AND AUTHORITIES

1    (*Id*. at 5).

2         Here, just as in *Kendrick* and *Nguyen*, Plaintiff has long known that

3    Defendant James owed no fiduciary duty to Plaintiff in 2015 and 2016 because

4    Defendant James was no longer an officer or director of AIT.  Indeed, Plaintiff

5    intentionally **added** false allegations to the First Amended Complaint in order to

6    survive Defendant James' Rule 12(b)(6) motion.  When counsel met and conferred

7    in advance of Defendant James' motion to dismiss, Defendant James' counsel

8    explicitly informed Plaintiff's counsel that the First Amended Complaint was

9    factually incorrect with respect to the timeline relating to Defendant James' service

10   as AIT's CFO.  When Plaintiff refused to withdraw the First Amended Complaint as

11   to Defendant James, Defendant James was forced to file a Rule 12(b)(6) motion to

12   dismiss.  The Court denied Defendant James' motion to dismiss because, at that

13   stage in the litigation, the Court was **required** to accept as true the allegations in

14   Plaintiff's Complaint, even though they were known by Plaintiff to be false.

15        Later, in discovery, Defendant James provided uncontroverted evidence

16   confirming that he resigned as the Chief Financial Officer of AIT in 2014, over

17   seventeen months before the earliest transaction about which Plaintiff complains.

18   Nevertheless, Plaintiff pursued its baseless claim against Defendant James.

19        On January 28, 2021, Plaintiff filed a Second Amended Complaint, including

20   the **same false** allegation that Defendant James was AIT's CFO in 2015 and 2016

21   (despite uncontroverted evidence that this was not true).

22        Then, in his May 2021 deposition, Defendant James testified under penalty of

23   perjury that he resigned as the Chief Financial Officer of AIT in 2014, over

24   seventeen months before the earliest transaction Plaintiff complains about.  (See

25   relevant excerpts from Defendant James' deposition testimony, attached to

26   Buchanan Decl. as **Exhibit 3**).  Nevertheless, Plaintiff continued to pursue this

27   action against Defendant James.

28        Finally, as required by Local Rule 7-3, in anticipation of its motion for

DEFENDANT STEVEN J. JAMES' NOTICE OF MOTION, FRCP RULE 11 MOTION, AND SUPPORTING
MEMORANDUM OF POINTS AND AUTHORITIES

summary judgment, Defendant James – through counsel – again implored Plaintiff to reconsider pursuing its meritless claim against Defendant James.  In spite of the uncontroverted evidence, Plaintiff refused to dismiss Defendant James.  In Opposition to Defendant James' motion for summary judgment, Plaintiff **did not meaningfully dispute any of the material facts presented by Defendant James**. Most tellingly, Plaintiff **conceded** that Defendant James resigned as AIT's Chief Financial Officer in 2014.  This after **never amending** any version of the Complaint to correct the false allegations.

Since this action's inception, Plaintiff has done **nothing** to verify its false factual allegation (that Defendant James was the Chief Financial Officer of AIT at the time of the 2015 and 2016 transactions).  Even worse, in the face of uncontroverted evidence that Plaintiff's allegations were false, Plaintiff refused to correct the offending pleadings, re-filed those pleading repeating the same false allegations, and refused to dismiss Defendant James.

Finally, on February 18, 2022, Defendant James was dismissed after successfully moving for summary judgment.  Given the timeline of events, Plaintiff and its counsel acted in bad faith by forcing Defendant James to defend Plaintiff's obviously false claims and thereby incur six figures in attorney fees.  It is evident that Plaintiff added (and maintained) the false allegation to avoid Defendant James' Rule 12(b)(6) motion.  There no more clear example of a Rule 11 violation.

### B.     Pursuant to Rule 11, this Court Should Sanction Plaintiff _____ and its Counsel For the Attorney Fees and Costs Incurred Defending This Meritless Lawsuit.

A court may issue sanctions pursuant to Rule 11 "if the paper filed in district court and signed by an attorney or an unrepresented party is frivolous, legally unreasonable, or without factual foundation, even though the paper was not filed in subjective bad faith."  (*Zaldivar v. City of Los Angeles*, 780 F.2d 823, 831 (9th Cir. 1986) (addressing a prior version of Rule 11 that *mandated* sanctions in specific circumstances but nevertheless instructive), abrogated by *Cooter & Gell v.*

DEFENDANT STEVEN J. JAMES' NOTICE OF MOTION, FRCP RULE 11 MOTION, AND SUPPORTING MEMORANDUM OF POINTS AND AUTHORITIES

1    *Hartmarx Corp.*, 496 U.S. 384 (1990) on other grounds).

2       Rule 11 provides that the court will impose "an appropriate sanction" against

3 an attorney, law firm, or party that violates the rule (or is responsible for the

4 violation).  The nature of sanctions permitted pursuant to Rule 11 is broad – "A

5 sanction imposed under this rule must be limited to what suffices to deter repetition"

6 and can include "nonmonetary directives; an order to pay a penalty into court; or, if

7 imposed on motion and warranted for effective deterrence, an order directing

8 payment to the movant of part or all of the reasonable attorney's fees and other

9 expenses directly resulting from the violation."  (See Rule 11(c)(4)).

10       When a violation of Rule 11 occurs, courts routinely impose monetary

11 sanctions for **attorney fees and costs** incurred against the violating party.  (See

12 *Orange Production Credit Ass'n v. Frontline Ventures Ltd.*, 792 F.2d 797 (9th Cir.

13 1986) [affirming order awarding attorney fees and costs for violation of Rule 11];

14 see *Gaskell v. Weir*, 10 F.3d 626, 629 (9th Cir. 1993)).

15       An aggrieved party is entitled not only to the attorney fees and costs incurred

16 in connection with the Rule 11 motion (which is provided for by statute), but is also

17 entitled to all attorney fees incurred in defense of the claims.  (*Gaskell, supra*, 10

18 F.3d at 629 ["The district court did not abuse its discretion in basing

19 the sanctions on the attorney fees reasonably incurred by the defendants in

20 defending the lawsuit.  In a case like this, where the original complaint is the

21 improper pleading, all attorney fees reasonably incurred in defending against the

22 claims asserted in the complaint form the proper basis for sanctions."]; see also

23 *Refac Intern., Ltd. v. Hitachi, Ltd.*, 141 F.R.D. 281 (C.D. Cal. 1991)).

24       Courts use the lodestar method to determine appropriateness of fees:

25           The Court concludes that an appropriate sanction is reimbursement of those attorneys' fees and costs

26           reasonably expended by Defendant as a result of this unwarranted filing (and defense thereof). This award is

27           governed by normal considerations delimiting what constitutes a "reasonable" level of attorneys' fees and

28           costs. *See, e.g., Super Power Supply, Inc. v. Macase*

*Industrial Corp.*, 154 F.R.D. 249, 258 (C.D.Cal.1994); *In re Yagman*, 796 F.2d at 1183–85. Thus, the Court has an independent duty to determine the appropriate "lodestar" amount based on a reasonable hourly rate multiplied by a reasonable number of hours expended. *See, e.g., Van Gerwen v. Guarantee Mutual Life Co.*, 214 F.3d 1041, 1045 (9th Cir.2000). In this determination, the Court also keeps in mind the level of fees necessary to act as a deterrent.

(See *Truesdell v. S. California Permanente Med. Grp.*, 209 F.R.D. 169, 178 (C.D. Cal. 2002)).

Here, Plaintiff filed a First Amended Complaint and a Second Amended Complaint that both included false allegations. Plaintiff insisted on continuing to prosecute this fraud action against Defendant James despite knowing that Plaintiff could not possibly prove its claim against him. For years, Defendant repeatedly informed Plaintiff (through filed pleadings, verified declarations, discovery responses, meet and confer conferences, and informal discussions between counsel) that Defendant James resigned as AIT's Chief Financial Officer in 2014. Plaintiff knew this to be true (and even conceded this fact in its opposition to Defendant's motion for summary judgment), yet still refused to correct its false allegations or dismiss Defendant James. This is precisely the type of conduct Rule 11 is designed to prohibit. This conduct requires a sanctions award against Plaintiff and its counsel for Defendant James' attorney fees and costs (to be determined in further briefing).

## **CONCLUSION**

Rule 11 is meant to safeguard against parties and attorneys pursing claims that they know are unsupported by fact or law. Despite knowing **for more than two years** that Defendant James was not AIT's Chief Financial Officer in 2015 or 2016 (and therefore owed no fiduciary duty to Plaintiff to disclose any facts regarding the transactions), Plaintiff refused to dismiss Defendant James.

Although Plaintiff and its counsel knew from the outset that Defendant James was not AIT's CFO in 2015 or 2016, Plaintiff added that false allegation to the First Amended Complaint in a disingenuous effort to avoid dismissal on a Rule 12(b)(6)

motion.  The undisputed facts show that Plaintiff and its counsel knew that no evidence supported Plaintiff's claims against Defendant James, but refused to dismiss him and continued pursing its meritless claim for fraudulent deceit and concealment, without basis.

In the interests of justice, and consistent with Rule 11, this Court should enter an order granting this motion and awarding Defendant James the attorney fees and costs incurred defending this action (in an amount to be determined in further briefing).

DATED:  April 18, 2022          HOGE, FENTON, JONES & APPEL, INC.


By:  /s/Alison P. Buchanan
_____
Alison P. Buchanan
Laura C. Riparbelli
Attorneys for Defendant
STEVEN J. JAMES

DEFENDANT STEVEN J. JAMES' NOTICE OF MOTION, FRCP RULE 11 MOTION, AND SUPPORTING MEMORANDUM OF POINTS AND AUTHORITIES

## **CERTIFICATE OF SERVICE**

I hereby certify that this/these document(s) filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as nonregistered participants on April 18, 2022.

DATED:  April 18, 2022                    HOGE, FENTON, JONES & APPEL, INC.


By:  /s/Alison P. Buchanan
                                        Alison P. Buchanan
                                        Laura C. Riparbelli
                                        Attorneys for Defendant
                                        STEVEN J. JAMES

DEFENDANT STEVEN J. JAMES' NOTICE OF MOTION, FRCP RULE 11 MOTION, AND SUPPORTING MEMORANDUM OF POINTS AND AUTHORITIES