Alison P. Buchanan (SBN 215710)
alison.buchanan@hogefenton.com
Laura C. Riparbelli (SBN 311226)
laura.riparbelli@hogefenton.com
HOGE, FENTON, JONES & APPEL, INC.
55 South Market Street, Suite 900
San Jose, California 95113-2324
Phone: 408.287.9501
Fax: 408.287.2583

Attorneys for Defendant
STEVEN J. JAMES

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| CASTEL S.A., a Luxembourg joint stock company (*societe anonyme*),<br><br>Plaintiff,<br><br>v.<br><br>CHRISTOPHER A. WILSON, an individual; OLIVIA HO CHENG, an individual; ARF PARTNERS, LLC, a Massachusetts limited liability company; STEVEN J. JAMES, an individual,<br>Defendants. | Case No. 2:19-cv-09336-ODW(PVC)<br><br>DEFENDANT STEVEN J. JAMES' REPLY IN SUPPORT OF FRCP RULE 11 MOTION<br><br>Date: May 23, 2022<br>Time: 1:30 p.m.<br>Courtroom: 5D, 5th Floor<br>Judge: Hon. Otis D. Wright II<br><br>Action Filed: October 30, 2019<br>Pre-Trial Conference:<br>    December 28, 2022<br>Trial Date: January 17, 2023 |

## TABLE OF CONTENTS

INTRODUCTION ...................................................................................................4

ANALYSIS ............................................................................................................6

    A. Defendant Did Not Delay in Bringing this Rule 11 Motion. .............................6

    B. Plaintiff Ignores That the Deposition Testimony Plaintiff *Attached to Plaintiff's First Amended Complaint* Established that Defendant James Was Not AIT's Chief Financial Officer during the 2015 and 2016 Transactions. ....8

    C. Plaintiff Unconvincingly Argues It Had No Opportunity to Withdraw the Violative Pleading, Despite Having Known For at Least Two Years, at Multiple Junctures, that Plaintiff's Claim Against Defendant James Was Implausible. ......................................................................................................10

    D. The Fact that this Court Has Already Granted Defendant James' Motion for Summary Judgment Does Not Moot Defendant James' Rule 11 Motion. ......12

    E. Plaintiff's New Assertion that Defendant James Did Not Comply With His Discovery Obligations Is Untimely, Unfounded, and Irrelevant. ...................13

    F. Plaintiff's New, Alternative Theory of Liability – that Defendant James' Had a "Special Relationship" with Plaintiff Imposing a Duty of Disclosure – Was Facially Devoid of Merit. ...............................................................................14

CONCLUSION.....................................................................................................16

CERTIFICATE OF SERVICE...............................................................................18

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Burch v. CertainTeed Corp.* 34 Cal.App.5th 341 (2019) ............................................ 15

*Cooter & Gell v. Hartmarx Corp.* 496 U.S. 384 (1990) ...................................... 12, 13

*Davis v. HSBC Bank Nevada, N.A.* 691 F.3d 1152 (9th Cir. 2012) .......................... 15

*Outdoor Media Group, Inc. v. City of Beaumont* 506 F.3d 895 (9th Cir. 2007) ....... 11

**Rules**

FRCP RULE 11 ................................................................................................. passim

FRCP 12(b)(6) ............................................................................................................ 10

# INTRODUCTION

From the inception of this action, any reasonable inquiry into Plaintiff's claim against Defendant James would have shown that the allegations against Defendant James in Plaintiff's Complaint – that Defendant James was AIT's Chief Financial Officer at the time of the relevant transactions and therefore owed Plaintiff a duty of disclosure – were incorrect. The Court need not even explore what prefiling investigation Plaintiff performed before filing the Complaint, because it is evident that the allegations were unsubstantiated (albeit carefully pled to avoid a motion to dismiss). Plaintiff cannot (and does not) deny that it attached to the First Amended Complaint parts of Defendant Wilson's deposition transcript, wherein Wilson conclusively and unambiguously testified that Defendant James was **not** AIT's Chief Financial Officer at the time of the transactions.

Thereafter, for the next two and a half years, Plaintiff ignored written discovery responses, document productions, deposition testimony, and statements from counsel that Defendant James was not AIT's Chief Financial Officer during the relevant period. Still, despite multiple opportunities to dismiss Defendant James, Plaintiff refused to do so.

In opposition to Defendant James' Rule 11 motion, Plaintiff argues that Defendant James delayed in bringing this Rule 11 motion, and should have done so before the Court granted the motion for summary judgment. However, absent from Plaintiff's analysis is the fact that this Court previously denied Defendant James' ex parte application to extend the motion cutoff (to allowing the filing of the Rule 11 motion) without prejudice as premature and specifically instructed that Defendant James could refile the request after the Court had decided the then-pending motions for summary judgment. Shortly after the Court granted Defendant James' motion for summary judgment, Defendant James reinitiated meet and confer discussions and filed this Rule 11 motion.

Plaintiff also incorrectly argues that because Defendant James has been

dismissed, his Rule 11 motion is moot. This is contrary to well-established authority supporting Rule 11 sanctions regardless of Defendant James' dismissal.

Plaintiff similarly argues that because the Court has already granted Defendant James' motion for summary judgment, Plaintiff was not provided with any opportunity to dismiss Defendant James voluntarily (as is contemplated by the 21-day safe harbor provision). Plaintiff conveniently ignores that Plaintiff had more than two-and-a-half years to dismiss Defendant James. (Indeed, Defendant James provided specific information confirming that the allegations against him were false and that, as such, he owed no duty of disclosure, on at least ten specific occasions). Repeatedly, Defendant James requested that Plaintiff dismiss him, so as to avoid incurring attorney fees and costs defending against Plaintiff's baseless claims, filing a motion for summary judgment, and preparing for a jury trial. Plaintiff had ample opportunity to right this wrong and repeatedly declined to do so.

Plaintiff's Opposition attempts to attack Defendant James' credibility, arguing that Defendant James allegedly withheld discovery responses and gave conflicting deposition testimony. But, tellingly, Plaintiff never filed a motion as to any of these issues. (In fact, Plaintiff never even initiated meet and confer efforts regarding these purported issues). Plaintiff only now raises these issues, for the first time, in an attempt to discredit Defendant James and distract from the fact that Plaintiff continued to prosecute a baseless claim despite knowing its allegations were false. Of course, issues pertaining to discovery are not the subject of this motion and are entirely irrelevant to whether Plaintiff knowingly pursued Defendant James based on false allegations.

Finally, it is telling that, on the eve of trial, in opposition to Defendant James' motion for summary judgment, Plaintiff finally conceded that Defendant James was not Chief Financial Officer of AIT during the relevant transactions. But instead of dismissing Defendant James, Plaintiff opted to invent an entirely new theory of liability – that Defendant James was in a "special relationship" that gave rise to the

duty of disclosure. No relevant authority supported this spurious new theory, and the Court confirmed this when it granted Defendant James' motion for summary judgment in full and rejected Plaintiff's new theory.

Plaintiff's Opposition presents no convincing argument that would absolve Plaintiff from paying the price for bringing a knowingly meritless claim. Rule 11 exists precisely to deter the type of conduct that Plaintiff engaged in throughout this litigation. Therefore, this Court should grant Defendant James' Rule 11 motion for sanctions.

## ANALYSIS

### A. Defendant Did Not Delay in Bringing this Rule 11 Motion.

Plaintiff's main argument in opposition to Defendant James' Rule 11 motion is that Defendant James improperly delayed in bringing this motion until after Defendant James had already been dismissed, defeating the purpose of Rule 11 and justifying a denial of this motion.

However, conspicuously absent from Plaintiff's Opposition is **any mention of the fact this Court ordered Defendant James to wait to bring his motion requesting a continuance of the motion cutoff (and thus, to bring this Rule 11 motion) until after the Court had decided the then-pending motion for summary judgment**. Specifically, in response to Defendant James' ex parte application to continue the motion cutoff, this Court ordered as follows:

> Defendant Steven James submitted an Ex Parte Application for an extension of time to file a motion for sanctions against Plaintiff pursuant to Federal Rule of Civil Procedure 11. (Ex Parte Appl., ECF No. 138.) Plaintiff filed an Opposition, arguing in part that the Court's decisions on Defendants' currently pending Motions for Summary Judgement will moot the Ex Parte Application. (Opp'n Ex Parte Appl., ECF No. 139, 10–11; *see generally* Mots. Summ. J., ECF Nos. 104, 107, 109, 110.) Plaintiff is correct that the dispositions of the Motions for Summary Judgment will moot some of the issues raised in the Ex Parte Application.
>
> In view of the Motions for Summary Judgment currently under submission with the Court, Defendant James's Ex

> Parte Application is **DENIED** as premature**.** (ECF No. 138.) If, after Defendants' Motions for Summary Judgment are decided, Defendant James still seeks the relief requested in the Ex Parte Application, he may renew the application at that time.

(Dkt. No. 140). Plaintiff incorrectly asserts that "[t]he Court Denied Defendant James' *ex parte* application, the motion hearing date was not continued, and James' Rule 11 Motion was improper and moot." (See Declaration of Lisa Schachne, ¶30). This assertion is disingenuous, at best, as the Court's order did not make any mention of Defendant James' ex parte request being "improper" and instead advised Defendant James that he may refile his request after the summary judgment motions were decided.

Plaintiff does not discuss or address the Court's order at all. Instead, Plaintiff argues that Defendant James purposefully delayed bringing the motion until after the order granting summary judgment, so as to deprive Plaintiff of the opportunity to withdraw its Second Amended Complaint during the 21-day safe-harbor period. This ignores the Court's directive entirely.

Additionally, Plaintiff argues that Defendant James should have brought his Rule 11 motion at this action's inception, and improperly delayed doing so until filing his motion for summary judgment. However, this is incorrect. First, Plaintiff ignored various meet and confer attempts by Defendant James' counsel, wherein counsel informed Plaintiff's counsel of the facts and requested that Plaintiff dismiss Defendant James. (See, for example, the Declaration of Alison P. Buchanan filed in support of this Rule 11 motion ("Buchanan Decl.") (Dkt. No. 181-1), ¶¶3, 11, 12, and 15). Plaintiff declined to do so, opting to see what discovery revealed. Then, immediately after the discovery cutoff of July 16, 2021, when discovery had not developed to support Plaintiff's claim against Defendant James, Defendant James' counsel immediately initiated meet and confer efforts. (See Buchanan Decl., ¶¶10, 11). At that point, with discovery closed, it was confirmed there was absolutely no evidence supporting Plaintiffs' argument that Defendant James owed any duty to

Plaintiff to disclose facts related to the 2015 and 2016 transactions (not by way of his supposed position as AIT's Chief Financial Officer, or otherwise).

On July 30, 2021, Defendant James' counsel met and conferred with Plaintiff's counsel regarding the contemplated Rule 11 motion, and on September 8, 2021, Defendant James served the motion on Plaintiff (in compliance with Rule 11's 21-day safe-harbor provision). (*Id*. at ¶¶15, 16). Following Defendant James' ex parte application seeking a continuance of the motion cutoff, the Court denied the motion as moot and instructed Defendant James to re-file the motion, if Defendant James chose to do so, after the Court ruled on the then-pending motions for summary judgment. (Dkt. No. 140). The Court granted Defendant James' motion for summary judgment on February 18, 2022. (Dkt. No. 176). Less than three weeks later, on March 10, 2022, Defendant James served this motion. (Buchanan Decl., ¶20). As such, Defendant James did not delay in bringing this issue before the Court.

**B.  Plaintiff Ignores That the Deposition Testimony Plaintiff *Attached to Plaintiff's First Amended Complaint* Established that Defendant James Was Not AIT's Chief Financial Officer during the 2015 and 2016 Transactions.**

Plaintiff argues that Defendant Wilson's deposition testimony (that Plaintiff itself attached to the First Amended Complaint) "did not eliminate the possibility that James effectively was the CFO" during the time of the relevant transactions. (Opposition, p.13:12-17). This is nonsensical. An objective reading of Defendant Wilson's deposition testimony (the very testimony that Plaintiff points to in support of its opposition to Defendant James' Rule 11 motion) leaves no room for any other interpretation:

> Q. And who is Steve James?
> A. He was the former CFO of Aurora Imaging.
> Q. Do you know when he left the company?
> A. You know, I don't recall.

> Q. Was it while you were --
> A. It was right about the time we sold the assets or maybe a little before. **In fact, it was before that, actually. He was no longer an employee at the time I came on as CEO**.[1] We engaged him as a consultant part-time to help with the financials.
>
> …
> Q. Do you know why he resigned from the company?
>
> A. **Well, so around 2012**, the board lost confidence in Olivia Cheng. She resigned.

(Defendant Wilson's Deposition Transcript, p.36:5-14 and 37:3-5, attached as Exhibit B to the Declaration of Lisa Schachne (Dkt. No. 182-1), filed in support of Plaintiff's Opposition to this motion). No reading of this testimony could possibly suggest that Defendant James was AIT's Chief Financial Officer at the time of the 2015 or 2016 transactions.

Plaintiff also argues that a website ("auroramri.com") identified Defendant James as having been Chief Financial Officer of "Aurora" since 1999. (See Opposition, p.10:1-10). However, Plaintiff's reliance on a website (over which Defendant James had no control) was misplaced and further investigation by Plaintiff would have conclusively established that this vague reference was outdated.

Plaintiff argues that Plaintiff received information *later* – through written discovery responses, documents, and deposition testimony from other parties to the lawsuit – showing that Defendant James had resigned in **2014**, and "[t]hus, Plaintiff and Plaintiff's counsel remained skeptical about the actual timing of Defendant James' resignation from AIT and his relinquishment of duties." (Opposition, 2:18-20). But, Plaintiff ignores that, at the time of the filing of the First Amended Complaint, Plaintiff was undoubtedly aware that Defendant James was no AIT's Chief Financial Officer in **2015 and 2016** (the relevant years).

---

[1] Plaintiff has always admitted that Defendant Wilson began as AIT's Chief Executive Officer in 2015. (See Dkt. No. 44, First Amended Complaint, ¶2).

Whether Defendant James resigned in 2012 (as Defendant Wilson believed at the time of his deposition) or 2014 is of no moment. The fact remains that from the inception of this lawsuit, Plaintiff had conclusive information that Defendant James was not AIT's Chief Financial Officer in 2015 or 2016. Yet, Plaintiff continued to prosecute its meritless claim against Defendant James, forcing him to endure more than two years of litigation, including preparing for trial. This is precisely the type of conduct that Rule 11 is meant to sanction.

### C. Plaintiff Unconvincingly Argues It Had No Opportunity to Withdraw the Violative Pleading, Despite Having Known For at Least Two Years, at Multiple Junctures, that Plaintiff's Claim Against Defendant James Was Implausible.

Further, Plaintiff's argument that Plaintiff was deprived of the opportunity to withdraw or otherwise remedy its offending pleading is disingenuous. (See Opposition p.7:16-18). Plaintiff's Opposition correctly chronicles the **multiple** occasions in which Plaintiff was presented with information showing that Defendant James was not AIT's Chief Financial Officers at the time of the 2015 or 2016 transactions. From early 2020 through 2021, **on at least ten occasions, Plaintiff was presented with that information**. On all of the following dates, Plaintiff knew that Defendant James was not AIT's CFO and had the opportunity to dismiss him:

- February 13, 2020, when Defendant James' counsel sent a meet and confer letter to Plaintiff's counsel informing counsel that Defendant James resigned as AIT's Chief Financial Officer prior to the 2015 transactions. (See Buchanan Decl., ¶3, Exhibit 1).
- February 19, 2020, when Defendant James filed a FRCP 12(b)(6) motion to dismiss, confirming that he resigned as AIT's Chief Financial

//
//
//
//

Officer in 2014.[2] (*Id.* at ¶4).

- August 7, 2020, when Defendant James filed an answer to the First Amended Complaint stating that he had resigned as AIT's Chief Financial Officer in 2014. (*Id.* at ¶6).

- March 1, 2021, when Defendant James answered the Second Amended Complaint, again stating that he had resigned as AIT's Chief Financial Officer in 2014. (*Id.* at ¶7).

- May 14, 2021, when Defendant James served discovery responses, again stating that he had resigned as an officer of AIT in 2014, and produced a copy of his June 2014 resignation letter. (*Id.* at ¶8).

- May 21, 2021, when Plaintiff deposed Defendant James and Defendant James testified under oath that he had resigned as an officer of AIT in 2014. (*Id.* at ¶9).

- July 16, 2021, when Plaintiff's counsel and Defendant's counsel met and conferred in advance of Defendant James' motion for summary judgment, and again informed Plaintiff's counsel that Defendant James resigned in 2014. (*Id.* at ¶11).

- Late July and early August 2021, when Defendant James' counsel

---

[2] Plaintiff admits that this was the premise of Defendant James' motion to dismiss, but argues that Defendant James should have taken the procedurally improper (and frivolous) step of producing evidence in support of this motion. (See Opposition, p.3:13-15, ["Even though Defendant James filed a motion to dismiss Plaintiff's FAC on February 19, 2020 on the premise he was not CFO of AIT at the time in question (an insufficient basis to sustain the motion), Defendant James failed to provide any actual uncontroverted evidence to negate the timeline of events describes in Plaintiff's FAC."]). It is undisputed that it would have been improper (and ineffective) for Defendant James to present evidence in support of his motion to dismiss. Of course, the Court is limited to the allegations in the complaint, matters that are the subject of judicial notice, and documents attached to the complaint when determining whether a plaintiff has stated a cause of action. (*Outdoor Media Group, Inc. v. City of Beaumont*, 506 F.3d 895, 899-900 (9th Cir. 2007).

repeatedly requested (by email and over the phone) that Plaintiff dismiss Defendant James based on his 2014 resignation. (*Id*. at ¶12).

- July 30, 2021, when Defendant's counsel telephonically met and conferred with Plaintiff's counsel regarding Defendant James' contemplated Rule 11 motion. (*Id*. at ¶15).
- September 8, 2021, when (in compliance with Rule 11's 21-day safe-harbor provision, and months before Defendant James would be dismissed) Defendant James served his Rule 11 motion on Plaintiff. (*Id*. at ¶16).

This Court granted Defendant James' motion for summary judgment on February 18, 2022. (Dkt. No. 176). Plaintiff's argument that it did not have sufficient **opportunity** to dismiss Defendant James to avoid Rule 11 sanctions is devoid of merit.

**D.     The Fact that this Court Has Already Granted Defendant James' Motion for Summary Judgment Does Not Moot Defendant James' Rule 11 Motion.**

Plaintiff incorrectly argues that because Defendant James undertook the burden and expense of filing a successful motion for summary judgment, and he will be dismissed as a result, Defendant James' Rule 11 motion is moot. This is contrary to well-established authority.

For example, in *Cooter & Gell v. Hartmarx Corp.*, a defendant filed a Rule 11 motion for sanctions on the grounds that the plaintiff "had not made sufficient prefiling inquiries to support the complaint's allegations." (*Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384 (1990), considering a prior version of Rule 11 that did not include a safe-harbor provision, but nevertheless instructive). Thereafter, in April 1984, the plaintiff filed a notice of voluntary dismissal pursuant to Rule 41(a)(1)(i) (which became effective in July 1984). (*Id*. at 389). In June 1984, the court heard oral argument on the Rule 11 motion, taking the motion under advisement. (*Id*.). More than three years later, the court granted defendant's Rule

11 motion, finding that the plaintiff's prefiling inquiry was not adequate. (*Id.*). The plaintiff argued that because the case had been dismissed, Rule 11 sanctions were inappropriate and the court could not impose them. The United States Supreme Court disagreed:

> The district court's jurisdiction, invoked by the filing of the underlying complaint, supports consideration of both the action's merits and the Rule 11 motion arising from that filing. As the Rule 11 violation is complete when the paper is filed, a voluntary dismissal does not expunge the violation. In order to comply with the Rule's requirement that it "shall" impose sanctions, the court must have the authority to consider whether there has been a violation of the signing requirement regardless of the dismissal.

(*Cooter & Gell, supra,* 496 U.S. at 385).

The Supreme Court further concluded:

> Like the imposition of costs, attorney's fees, and contempt sanctions, the imposition of a Rule 11 sanction is not a judgment on the merits of an action. Rather, it requires the determination of a collateral issue: whether the attorney has abused the judicial process, and, if so, what sanction would be appropriate. Such a determination may be made after the principal suit has been terminated.

(*Id.* at 396).

Here, it would frustrate the purpose of Rule 11 to allow a dismissal to divest the Court of jurisdiction to impose sanctions for filing the violative pleading in the first place. Indeed, the "violation is complete when the paper is filed," and Plaintiff cannot avoid sanctions for its misconduct merely because this Court ultimately dismissed the violative pleading on a motion for summary judgment. Therefore, Rule 11 sanctions remain appropriate.

E. **Plaintiff's New Assertion that Defendant James Did Not Comply With His Discovery Obligations Is Untimely, Unfounded, and Irrelevant.**

To avoid Rule 11 sanctions, Plaintiff attempts to cast blame on Defendant James for purportedly not serving proper discovery responses and "withholding" documents that supported his dismissal. It is not credible that Defendant James

would have withheld documents that supported his exoneration. In fact, Plaintiff asked for documents from Defendant James **for the very first time** on April 14, 2021 (nearly one and a half years after filing its Complaint). (See Buchanan Decl., ¶8). On May 14, 2021 (the deadline to serve responses), Defendant James served discovery responses and documents responsive to Plaintiff's requests, which included Defendant James' June 25, 2014 resignation letter. (*Id*.).

Plaintiff suggests that Defendant James had an obligation to voluntarily produce documents to Plaintiff absent any request – and that his failure to do so somehow excuses Plaintiff's refusal to dismiss Defendant James despite any evidence supporting any claim against him. This is not the standard. Plaintiff willfully pursued an action despite uncontroverted evidence (including testimony from Defendant Wilson and statements from counsel).

Plaintiff's Opposition suggests that Defendant James should have voluntarily produced his resignation letter at the lawsuit's inception, and suggests that doing so would have resulted in his dismissal. But, that is certainly a false statement because Defendant James did ultimately produce the resignation letter, and **still** Plaintiff refused to dismiss him. Instead, Plaintiff doubled down and invented new, spurious theories of liability that were unsupported by any relevant authority (see below). Therefore, Plaintiff's delay in propounding discovery, and the fact that Defendant James did not produce his resignation letter until May 14, 2021 (in direct response to discovery requests) is of no moment and does not justify an order denying Defendant James' Rule 11 motion.

**F.   Plaintiff's New, Alternative Theory of Liability – that Defendant James' Had a "Special Relationship" with Plaintiff Imposing a Duty of Disclosure – Was Facially Devoid of Merit.**

By August 2021, when Plaintiff opposed Defendant James' summary judgment motion, even Plaintiff apparently conceded that its contention that Defendant James owed a duty to Plaintiff as AIT's former Chief Financial Officer was implausible. At that late juncture, Plaintiff suddenly changed the theory

entirely, arguing that Defendant James owed Plaintiff a duty, not as AIT's Chief Financial Officer, but due to a "special relationship" between buyer and seller. This argument, as later confirmed by the Court in its order granting Defendant James' motion for summary judgment, was unfounded and not supported by any applicable authority.

Plaintiff argues that counsel should be free to pursue "creative" theories without fear of the imposition of sanctions. (See Opposition, p.17:9-11 ["To hold otherwise would have a chilling effect on advancing a creative, albeit reasonable, legal theory."]). However, Plaintiff's position (which changed drastically once Plaintiff apparently decided that it could no longer reasonably pursue the theory that Defendant James was AIT's Chief Financial Officer in 2015 and 2016) was devoid of merit. No applicable case law supported Plaintiff's outlandish legal arguments.

The Second Amended Complaint alleged one cause of action for fraudulent concealment and deceit against Defendant James. To prove fraudulent concealment, a plaintiff must prove that the defendant concealed or suppressed a material fact from the plaintiff, and that the defendant had a duty to disclose that fact to the plaintiff. (See *Davis v. HSBC Bank Nevada, N.A.*, 691 F.3d 1152, 1163 (9th Cir. 2012). Plaintiff argued that Defendant James had a "special relationship" with Plaintiff because of Defendant James' alleged "involvement with both the buyer and seller in the sale and his exclusive knowledge regarding the transaction, which created a duty to disclose material facts, and not to conceal material facts..." (Dkt. No. 122, p.16:3-7, Plaintiff's Opposition to Defendant James' Motion for Summary Judgment). But, as this Court noted in its decision granting Defendant James' motion for summary judgment, a "special relationship" of this nature "would only arise in the context of 'a transaction, such as between seller and buyer… or parties entering into any kind of contractual arrangement.' *CertainTeed,* 34 Cal.App.5th at 349." (Dkt. No. 176, p.9:13-16).

Plaintiff also argued that, even if no such relationship existed, Defendant

James had a duty to disclose facts to Plaintiff because Defendant James purportedly had sole knowledge of material facts that were not accessible to Plaintiff. But, as the Court noted in its order granting Defendant James' motion for summary judgment, "[Plaintiff's] cited authorities – all of which are decades old – do in fact involve transactions or relationships between the parties and are otherwise distinguishable from this case." (Dkt. No. 176, p.10:14-16).

Plaintiff's arguments were not merely "creative"; there were completely uncredible and lacked any merit on their face. Not a single case supported Plaintiff's (new) theory of liability. Plaintiff's opposition to Defendant James' motion for summary judgment only confirmed that Plaintiff was pursuing a facially meritless claim against Defendant James that should be subject to Rule 11 sanctions.

## CONCLUSION

Defendant James was forced to endure more than two and a half years of extensive, protracted litigation to defend himself against Plaintiff's baseless claims. Defendant James incurred significant attorney fees and costs (which will be proven on further briefing) that included (but of course is not limited to) sitting for deposition, filing a motion for summary judgment, and preparing for a jury trial. Plaintiff knew from the lawsuit's inception that Defendant James was not AIT's Chief Financial Officer at the time of the transactions (indeed, the First Amended Complaint attached deposition testimony from Defendant Wilson confirmed this to be true). Yet, Plaintiff continued pursue Defendant James for fraudulent deceit and concealment and refused to dismiss him.

Plaintiff had ample opportunity to dismiss Defendant James. To now argue that Plaintiff was not given an *opportunity* to dismiss Defendant James (as the Court has already granted Defendant James' motion for summary judgment) is nonsensical. Rule 11 does not absolve a plaintiff of wrongdoing merely because a dismissal has been entered.

Further, Plaintiff argues that Defendant James delayed in bringing its Rule 11

motion until after the Court had granted the motions for summary judgment.  What Plaintiff omits is that this Court specifically advised Defendant James that his ex parte application to continue the motion cutoff to allow the filing of a Rule 11 motion was premature and that Defendant James could refile the request only after the motions for summary judgment had been decided.

The Federal Rules of Civil Procedure prohibit a party and its counsel from pursuing a claim against a defendant where that claim obviously lacks any semblance of merit.  Rule 11 specifically exists to deter that type of conduct.  Plaintiff's calculated decision to continue pursuing its baseless claim against Defendant James is a textbook example of a Rule 11 violation.  Therefore, this Court should grant Defendant James' Rule 11 motion and award Defendant James his attorney fees and costs to date (in an amount to be determined in further briefing).

DATED:  May 9, 2022                             HOGE, FENTON, JONES & APPEL, INC.

By: /s/Alison P. Buchanan
Alison P. Buchanan
Laura C. Riparbelli
Attorneys for Defendant
STEVEN J. JAMES

## CERTIFICATE OF SERVICE

I hereby certify that this/these document(s) filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as nonregistered participants on May 9, 2022.

DATED: May 9, 2022　　　　　HOGE, FENTON, JONES & APPEL, INC.

By: /s/Alison P. Buchanan
　　Alison P. Buchanan
　　Laura C. Riparbelli
　　Attorneys for Defendant
　　STEVEN J. JAMES