Antonio Valla, Esq. (SBN 136256)
Lisa Schachne, Esq. (SBN 300499)
Kevin Sherman, Esq. (SBN 316823)
Valla & Associates, Inc., P.C.
333 Bush Street, Suite 2020
San Francisco, CA 94104
Telephone:  415.856.9001

Attorneys for
Castel S.A. a Luxembourg joint stock company *(société anonyme)*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CASTEL S.A., a Luxembourg joint stock company *(société anonyme)* | Case No.: 2:19-cv-09336-DFM |
| Plaintiff, | **PLAINTIFF CASTEL S.A.'s MEMORANDUM OF CONTENTIONS OF FACT AND LAW** |
| vs. | |
| CHRISTOPHER A. WILSON, an individual; OLIVIA HO CHENG, an individual; ARF PARTNERS, LLC, a Massachusetts limited liability company; STEVEN J. JAMES, an individual; MICHAEL DEVLIN, an individual. | Courtroom: 6B, 6th Floor<br>Judge: Hon. Douglas F. McCormick<br>Action Filed: October 30, 2019<br>Pre-Trial Conference: May 3, 2023<br>Trial Date: May 22, 2023 |
| Defendants. | |

Valla & Associates, Inc., P.C.
333 Bush Street, Suite 2020
San Francisco, CA 94104
www.vallalaw.com

1

# **TABLE OF CONTENTS**

2

I.      INTRODUCTORY STATEMENT ...................................................3

3

II.     L.R. 16-4.1: CLAIMS AND DEFENSES .......................................6

4

  A.     Plaintiff's Claims: Summary Statement, Elements, and Key Supporting Evidence....................................................................................7

5

  B.     Defendant's Affirmative Defenses and Key Evidence in Opposition to the Affirmative Defenses ......................................................................17

6

    1.   First Affirmative Defense ..................................................17

7

    2.   Second Affirmative Defense...............................................19

8

    3.   Third Affirmative Defense..................................................20

  C.     Similar Statement for All Third Parties ..................................21

9

  D.    Anticipated Evidentiary Issues and Plaintiff's Position on Those Issues...21

10

  E.    Germaine Issues of Law and Plaintiff's Position on Those Issues.............22

11

    1.   Wilson does not Have a Legitimate Defense for Contractual Limitation of Liability...................................................................................22

12

    2.   The Standard of Review for Breach of Fiduciary Duty is Entire Fairness, not Business Judgment Rule. ........................................................23

13

14

III.    L.R. 16-4.3: BIFURCATION OF ISSUES.....................................25

15

IV.    L.R. 16-4.4: JURY TRIAL ........................................................25

V.     L.R. 16-4.5: ATTORNEYS' FEES..............................................25

16

VI.    L.R. 16-4.6: ABANDONMENT OF ISSUES ................................25

17

18

19

20

21

Valla & Associates, Inc., P.C.
333 Bush Street, Suite 2020
San Francisco, CA 94104
www.vallalaw.com

Valla & Associates, Inc., P.C.
333 Bush Street, Suite 2020
San Francisco, CA 94104
www.vallalaw.com

1    Pursuant to Local Rule 16-4, Plaintiff Castel S.A. ("Castel") respectfully

2    submits the following Memorandum of Contentions of Law and Fact in advance

3    of the Pretrial Conference, currently scheduled for May 3, 2023.

4    **I.    INTRODUCTORY STATEMENT**

5    The instant case is a fraud, breach of fiduciary duty and breach of contract

6    action revolving around the unlawful sale of an imaging technology business

7    without disclosure of material facts and with affirmative material

8    misrepresentations.

9    In the fall of 2017, Defendants Christopher Wilson ("Wilson") and ARF

10   Partners, LLC ("ARF") defrauded and cheated Plaintiff Castel S.A. ("Castel") out

11   of its investments in Aurora Imaging Technology, Inc. ("AIT") by engaging in

12   self-dealing transactions and funneling AIT's assets through various companies

13   owned and/or managed and directed by Defendants. Olivia Cheng ("Cheng"),

14   AIT's former CEO and owner of ARF, concocted a plan to purchase AIT's assets

15   for a steeply discounted price so that she could have a second bite at the apple,

16   after she was ousted as CEO of AIT. Cheng was able to do so, through ARF,

17   solely because of the cooperation and connivance of Wilson.  Defendant Wilson

18   operated from inside AIT in coordination with Defendant ARF, Cheng, and others

19   from the outside.

20   Cheng, Wilson, and Steven J. James ("James"), former CFO of AIT, each

21   knew that Castel would not have agreed to their insider plan, which was ultimately

Valla & Associates, Inc., P.C.
333 Bush Street, Suite 2020
San Francisco, CA 94104
www.vallalaw.com

1  harmful to Castel and other AIT investors and lenders, and so they hid it.  They

2  concealed and misrepresented material information to Castel.  They were able to

3  do so thanks to Wilson's participation and cooperation in his position as sole

4  officer and director of AIT.

5      Defendants' plan, as it was ultimately executed, hinged on the following

6  key elements:

7      A.   Defendants first had to get control of a substantial portion of the

8           shares and debt of AIT.  To do so, Cheng formed ARF (Aurora

9           Rescue Fund).  Cheng was and is the managing member and officer

10          of ARF. She directed ARF to purchase $20 million dollars of Notes

11          and Investments from an institutional investor Pharos Capital

12          Partners II, LP and Pharos Capital Partners II-A, LP, for only

13          $425,000, in order to become a major creditor and the majority

14          shareholder of Class C and Class D shares of AIT.  This without

15          notice to, or knowledge, of Castel.  This step gave ARF and Cheng a

16          foot in the door since the sale of AIT ultimately hinged on the

17          approval of the majority shareholder of Class C and D shares, which

18          was now ARF.

19     B.   ARF (now a Class C and D shareholder) failed to inform or consult

20          Castel with respect to the proposed sale of AIT assets, as it was

21          obligated to do under the Class C and Class D shareholder

Valla & Associates, Inc., P.C.
333 Bush Street, Suite 2020
San Francisco, CA 94104
www.vallalaw.com

1  agreements.  It kept quiet, kept the plan secret, and breached the

2  Shareholders Agreements.

3  C.   To carry out the plan, Wilson assisted in a classic bait-and-switch in

4  which he exchanged one asset purchase agreement (the "Sham

5  Agreement"), and the Sham Buyer, for another asset purchase

6  agreement ("the Real Agreement"), and the Real Buyer, which he

7  admitted to backdating.

8  D.   The Real Agreement was never provided to Castel and other AIT

9  shareholders and Wilson never received the requisite number of

10  consents as to the Real Agreement. The Real Agreement had several

11  material terms changed, including a different buyer of AIT's assets

12  and materially different consideration and beneficiaries. Defendants

13  did not disclose any of this material information to Castel.

14  E.   Wilson did not carry out any due diligence on either the Sham Buyer

15  or the Real Buyer.

16  F.   ARF, the Real Buyer, and Cheng, with Wilson's knowledge and

17  participation, directed and contributed to the appraisal of the AIT

18  assets to get to a number that ARF and the Real Buyer felt it was

19  willing to pay. Additionally, ARF used its secured creditor status in

20  AIT to bargain for the reduction of the purchase price of AIT to half,

21  so that in exchange, ARF could receive an equity interest in the Real

Valla & Associates, Inc., P.C.
333 Bush Street, Suite 2020
San Francisco, CA 94104
www.vallalaw.com

1    Buyer. The appraisal was so fake and unreliable that it was not even

2    completed until after the transaction for the AIT assets closed – it

3    was merely a fig leaf.

4    G.    Wilson was promised shares in the Real Buyer for his active

5    participation and cooperation in the sale.

6    H.    Wilson then used the cash AIT received from the sale of its assets to

7    pay different amounts to creditors of the same class, including giving

8    Cheng and her entities preferential payment treatment so, that he

9    could receive an equity interest in the buyer.

10    I.    Wilson and ARF profited from the sale.

11    J.    Castel was left with none of its $3,800,000 in investments and loans

12    in AIT and was deprived of an opportunity to bid for the AIT assets,

13    or any other remedy that would have been available to it.

14  **II.    L.R. 16-4.1: CLAIMS AND DEFENSES**

15    Plaintiff asserts four (4) claims against Defendants: Fraudulent Deceit and

16 Concealment as to Defendant Christopher A. Wilson; Fraudulent Deceit and

17 Concealment as to Defendant ARF Partners, LLC; Breach of Fiduciary Duties as

18 to Defendant Christopher A. Wilson pursuant to Delaware law; and Breach of

19 Contract as to Defendant ARF Partners, LLC pursuant to Delaware law.

20 / / /

21 / / /

Valla & Associates, Inc., P.C.
333 Bush Street, Suite 2020
San Francisco, CA 94104
www.vallalaw.com

### A. Plaintiff's Claims: Summary Statement, Elements, and Key Supporting Evidence

| *Claim 1*: Fraudulent Deceit and Concealment as to Defendant Christopher A. Wilson pursuant to California Law |
|---|
| Wilson, in his capacity as the Chief Executive Officer and sole officer and director of AIT, owed fiduciary duties to AIT shareholders, including Castel, but breached them by concealing and misrepresenting facts related to all transactions and negotiations ultimately leading up to the unlawful sale of AIT's assets. |

| ELEMENT | SUPPORTING EVIDENCE |
|---|---|
| 1. Defendant and Castel were in a fiduciary relationship, and Defendant intentionally failed to disclose certain facts to Castel;<br>2. Castel did not know of the concealed and misrepresented facts;<br>3. Defendant intended to deceive Castel by concealing the facts;<br>4. Had the omitted information been disclosed, Castel reasonably would have acted differently;<br>5. Castel was harmed; and<br>6. Defendant's concealment was a substantial factor in causing Castel's harm. | (a) Documents and testimony evidencing Wilson's role as the Chief Executive Officer and sole director of AIT and the related duties and obligations (Element 1).<br>(b) Documentation of Castel's status as a shareholder and creditor of AIT (Element 1).<br>(c) Documentation and the testimony regarding the transfer of Pharos Capital Partners II, LP's and Pharos Capital Partners II-A, LP's (collectively "Pharos") instruments to ARF and Wilson's failure to inform Castel of this transaction (Element 2).<br>(d) Information about the Sham Buyer, which Wilson failed to inform Castel of (Element 2).<br>(e) Evidence that Castel had no knowledge of the concealed facts until at least 2018, through discovery obtained in this litigation and a prior litigation in 2018 against AIT (Element 2).<br>(f) AIT's unaudited financial statements that Wilson provided to Castel (Elements 2 and 3).<br>(g) Documents and information of the actual sale of AIT to Aurora Healthcare (the Real Buyer) and the |

changes to its material terms of the sale (Elements 2 and 3). This will include the following:

    i.    Information about the Real Buyer, Aurora Healthcare.

    ii.    Evidence of the 4 million dollar discount the buyer received upon purchasing AIT.

(h) Information about the personal benefits Wilson bargained for in assisting with the fraudulent sale (Elements 2 and 3).

(i) Documents and testimony that Wilson failed to disclose that Cheng was on all sides of the transaction (Elements 2 and 3).

(j) Documents and testimony that Wilson took blind orders from Cheng, who had a self-interest and operated on both sides of the transaction, without performing any due diligence into the Sham Buyer or the Real Buyer (Elements 2 and 3).

(k) Evidence of the negotiations and agreements with other creditors of the same status as Castel, in which those creditors were offered more money in return for their loans to AIT, than Castel (Elements 2 and 3).

(l) Testimony in which Wilson admits he backdated the Real Agreement (Elements 2 and 3).

(m)    Documents and testimony that Wilson provided Castel with the Sham Agreement and requested Castel's consent to the sale on the basis of the terms of the Sham Agreement, which had a different

Valla & Associates, Inc., P.C.
333 Bush Street, Suite 2020
San Francisco, CA 94104
www.vallalaw.com

Valla & Associates, Inc., P.C.
333 Bush Street, Suite 2020
San Francisco, CA 94104
www.vallalaw.com

buyer, different payments, and less cash at closing than the Real Agreement (Element 3).

(n) Testimony and information that Wilson admits that he never disclosed to Castel the identity of the Real Buyer of AIT, Aurora Healthcare (Element 3).

(o) Testimony in which Wilson admits that he signed agreements related to the sale of AIT's assets which he knew contained false information (Element 3).

(p) Testimony from Castel as to what it would have done to increase the value of AIT's shares, which would then increase the value of Castel's shares in AIT if it had known of all of the concealed and misrepresented facts (Elements 4, 5, and 6), including the following:

    i.    Purchase AIT;

    ii.    Accept or deny the settlement offer from Wilson before the sale of AIT's assets;

    iii.    Work with other investors to recapitalize and revitalize AIT;

    iv.    Consider AIT declaring bankruptcy;

    v.    Purchase AIT as Castel has done with other companies and turned them profitable, successful, and valuable.

(q) Evidence of Castel's damages including the total loss of the value of its shares and well as other residual damages (Element 5).

Valla & Associates, Inc., P.C.
333 Bush Street, Suite 2020
San Francisco, CA 94104
www.vallalaw.com

| *Claim 2*: **Fraudulent Deceit and Concealment as to Defendant ARF Partners, LLC pursuant to California Law** | |
|---|---|
| ARF owed a duty to Castel through its status as a majority and/or controlling shareholder of AIT's series C and series D stock as well as a contractual duty pursuant to the Stockholders Agreements, the Stock and Note Purchase Agreement, and the Novation Agreement. ARF concealed facts related to all transactions and negotiations ultimately leading up to the unlawful sale of AIT's assets. | |
| ELEMENT | SUPPORTING EVIDENCE |
| 1. Defendant and Castel were in a fiduciary relationship, and Defendant intentionally failed to disclose certain facts to Castel; <br> 2. Castel did not know of the concealed and misrepresented facts; <br> 3. Defendant intended to deceive Castel by concealing the facts; <br> 4. Had the omitted information been disclosed, Castel reasonably would have acted differently; <br> 5. Castel was harmed; and <br> 6. Defendant's concealment was a substantial factor in causing Castel's harm. | (a) Documentation and testimony that ARF owed a duty of disclosure to Castel based on ARF's status as a majority and/or controlling shareholder of AIT of each of series C and series D stock (Element 1). <br> (b) Documents showing that ARF also owed a contractual duty of disclosure to Castel based on its obligations under the Series C and Series D Stockholder Agreements (Element 1). <br> (c) Documentation showing that ARF took over Pharos' majority shareholder responsibilities and obligations as a result of its purchase of Pharos' notes and investments (Element 1). <br> (d) Documentation and testimony about the purported sale of AIT to the Sham Buyer through the Sham Agreement (Elements 2 and 3). <br> (e) Documentation and testimony of the actual sale of AIT to the Real Buyer and the changes to the material terms of the sale (Elements 2 and 3). <br> (f) Evidence of the identity of the Real Buyer of AIT's assets (Elements 2 and 3). |

Valla & Associates, Inc., P.C.
333 Bush Street, Suite 2020
San Francisco, CA 94104
www.vallalaw.com

(g) Documentation of the discount the Real Buyer received on the purchase price of AIT (Elements 2 and 3).

(h) Documents and testimony of the details of AIT's financial information and asset valuation regarding the sale to the Sham Buyer (Elements 2 and 3).

(i) Proof that Cheng was the dominant figure on both sides of the sale of AIT because she was acting in her capacity of managing member of ARF and CEO of the Real Buyer and the Chairman of the Sham Buyer (Elements 2 and 3).

(j) Documentation and testimony that ARF's necessary participation was an essential element of the plan to sell AIT's assets (Elements 3 and 6)

(k) Evidence of the additional financial and equity benefits ARF received from the sale of AIT (Elements 3 and 6).

(l) Testimony from Castel as to what it would have done to increase the value of AIT's shares which would then increase the value of Castel's shares in AIT if it had known of all of the concealed and misrepresented facts (Elements 4, 5, and 6), including the following:
  i. Purchase AIT;
  ii. Accept or deny the settlement offer from Wilson before the sale of AIT's assets;
  iii. Work with other investors to recapitalize and revitalize AIT
  iv. Consider bankruptcy;

Valla & Associates, Inc., P.C.
333 Bush Street, Suite 2020
San Francisco, CA 94104
www.vallalaw.com

|  |  |
|---|---|
|  | v. Purchase AIT as Castel has done to other companies and turned them profitable, successful, and valuable. |
|  | (m) Documents and testimony that Castel had the contractual right to and would have pursued an injunction to prevent ARF from approving the sale, pursuant to Section 5 of the Series C and Series D Stockholder's Agreements (Elements 4 and 5). |
|  | (n) Evidence of Castel's damages including the loss of the value of its shares and well as other residual damages (Element 5). |

| ***Claim 3*: Breach of Fiduciary Duties as to Defendant Christopher Wilson under Delaware Law** | |
|---|---|
| Wilson was AIT's CEO, sole officer and director, and, as such, owed a duty of good faith and to use reasonable care and loyalty, but breached these duties through his active participation and support in the sale of AIT's assets and related transactions. | |
| ELEMENT | SUPPORTING EVIDENCE |
| 1. Existence of a fiduciary relationship between Wilson and Castel;<br>2. Wilson, as Castel's fiduciary, breached that duty; and<br>3. Wilson's breach harmed Castel. | (a) Documents and testimony that Wilson was the acting CEO and sole Director of AIT at the time of the transaction (Element 1).<br>(b) Evidence that Wilson approved the sale of AIT's assets to both the Sham Buyer and the Real Buyer as AIT's CEO and sole Officer (Element 2).<br>(c) Testimony in which Wilson admits he failed to conduct due diligence into the Sham Buyer of AIT's assets and the Real Buyer of AIT's assets (Element 2).<br>(d) Testimony showing that Wilson admits he failed to investigate the relationship between ARF, the |

PLAINTIFF CASTEL S.A.'s MEMORANDUM OF CONTENTIONS OF FACT AND LAW (2:19-cv-09336-DFM)

Valla & Associates, Inc., P.C.
333 Bush Street, Suite 2020
San Francisco, CA 94104
www.vallalaw.com

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

Sham Buyer, and the Real Buyer as well as other related entities controlled by Cheng (Element 2).

(e) Documents and testimony illustrating that Wilson failed to disclose material changes in price and use of proceeds in the Real Agreement (Element 2).

(f) Documentation and testimony showing that Wilson failed to disclose the identity of the Real Buyer of AIT's assets (Element 2).

(g) Documentation showing that Wilson did not act in good faith (Element 2).

(h) Documents and testimony that Wilson expected to gain a personal benefit from actively participating in the sale (Element 2).

(i) Documents showing that Wilson provided preferential treatment to creditors of the same class (Element 2).

(j) Evidence that Wilson was influenced by ARF through its managing member, Cheng, throughout the transaction, including allowing Cheng to draft agreements, obtain a "neutral" valuation, and direct AIT's proceeds from the sale to funnel back to ARF and Cheng (Element 2).

(k) Testimony from Castel as to what it would have done to increase the value of AIT's shares which would then increase the value of Castel's shares in AIT if it had known of all of the concealed and misrepresented facts, including the following (Element 3):

Valla & Associates, Inc., P.C.
333 Bush Street, Suite 2020
San Francisco, CA 94104
www.vallalaw.com

|  |  |
|---|---|
|  | i. Purchase AIT; |
|  | ii. Accept or deny the settlement offer from Wilson before the sale of AIT's assets; |
|  | iii. Work with other investors to recapitalize and revitalize AIT; |
|  | iv. Consider bankruptcy; |
|  | v. Purchase AIT as Castel has done to many other companies and turned them profitable, successful, and valuable. |
|  | (l) Evidence of Castel's damages including the loss of the value of its shares and well as other residual damages (Element 3). |

**_Claim 4_: Breach of Contract as to Defendant ARF Partners, LLC pursuant to Delaware Law**

ARF breached the Series C and Series D Stockholders Agreements that it was a party to, which was to the detriment of Castel.

| ELEMENT | SUPPORTING EVIDENCE |
|---|---|
| 1. Castel and Defendant ARF Partners had an agreement; <br> 2. There was a breach of an obligation imposed by the agreement; and <br> 3. Castel was harmed. | (a) Documentation showing that AIT, Pharos, and Castel entered into a Series C Stockholder Agreement on or about June 19, 2006 (Element 1). <br> (b) Documentation showing that AIT, Pharos, and Castel entered into a Series D Stockholder Agreement on or about July 15, 2008 (Element 1). <br> (c) Documents showing that the Stockholders Agreements were assigned to ARF upon ARF's acquisition of Series C and Series D shares from Pharos through the Novation Agreement (Element 1). <br> (d) Evidence that through the Stock and Note Purchase Agreement and the Novation Agreement, ARF accepted the benefits, obligations, |

Valla & Associates, Inc., P.C.
333 Bush Street, Suite 2020
San Francisco, CA 94104
www.vallalaw.com

and liabilities of owning the Series C and D stock (Element 1).

(e) Per Section 6 of the Series C and D Stockholder's Agreements and Section 2 of the Novation Agreement, ARF assumed Pharos' obligations and status as majority shareholder of Series C and Series D Preferred stock after becoming party to the Stockholders Agreements. As a result, ARF had to make reasonable efforts to consult with Castel with respect to any matter requiring the approval of the holders of Series C or D Preferred stock (Element 1).

(f) Documents and testimony about the sale of the Series C and Series D Stock to ARF and, more generally, the sale of AIT, were among such matters requiring ARF to provide notice and consultation to Castel (Element 1).

(g) Documents and testimony showing that ARF breached the Series C and Series D Stockholder Agreements by failing to notify or consult with Castel regarding the sale of AIT's C and D shares to ARF, the sale of AIT's assets to the Sham Buyer, and thereafter the Real Buyer despite ARF's necessary and pivotal role in the sale (Element 2).

(h) Evidence that ARF breached the Series C and Series D Stockholder Agreements by failing to recuse itself from the sale to the Real Buyer as it was an interested party to the transaction (Element 2).

(i) Evidence that ARF breached the Series C and Series D Stockholder

Valla & Associates, Inc., P.C.
333 Bush Street, Suite 2020
San Francisco, CA 94104
www.vallalaw.com

Agreements by consenting to the sale of AIT's assets while it was acting as an interested party on both sides of the sale between AIT and the Real Buyer, without first notifying or consulting with Castel regarding the sale as required by the Stockholders Agreements (Element 2).

(j) Evidence that ARF's breaches of the Series C and Series D Stockholder's Agreements were material because they prevented Castel from seeking an injunction, pursuant to Section 5 of the Stockholder's Agreements, to prevent ARF from approving the sale (Element 2 and 3).

(k) Testimony from Castel as to what it would have done to increase the value of AIT's shares which would then increase the value of Castel's shares in AIT if it had known of all of the concealed and misrepresented facts, including the following (Element 3):

    i. Seek specific performance of the Stockholders Agreements;

    ii. Seek an injunction against ARF from participating in and/or approving the sale;

    iii. Purchase AIT

    iv. Accept or deny the settlement offer from Wilson before the sale of AIT's assets

    v. Work with other investors to recapitalize and revitalize AIT

    vi. Consider bankruptcy;

    vii. Purchase AIT as Castel has done to many other companies and

| | turned them profitable, successful, and valuable.<br>(l) Evidence of Castel's damages including the loss of the value of its shares and well as other residual damages (Element 3). |
|---|---|

**B. Defendant's Affirmative Defenses and Key Evidence in Opposition to the Affirmative Defenses**

    1.  <u>First Affirmative Defense</u>

Christopher Wilson plans to pursue the affirmative defense of the Business Judgment Rule as to all claims alleged against him.

    *a. Elements of First Affirmative Defense*

If the Business Judgment Rule applies, Castel bears the burden of proving that Wilson:

(1) Had a personal interest in the subject matter of the transactions;

(2) Failed to inform himself regarding the transactions; or

(3) Did not act in good faith in approving the transactions.

    *b. Brief Summary of Key Evidence in Opposition to First Affirmative Defense*

    i.  <u>Business Judgment Rule Standard</u>

Castel will first argue that the Business Judgment Rule is inapplicable here because Wilson was not only a director, but also an officer of AIT. Castel will also argue that the appropriate standard of review here is the Entire Fairness test.

Valla & Associates, Inc., P.C.<br>333 Bush Street, Suite 2020<br>San Francisco, CA 94104<br>www.vallalaw.com

Valla & Associates, Inc., P.C.
333 Bush Street, Suite 2020
San Francisco, CA 94104
www.vallalaw.com

1    Even if the Business Judgment Rule applies, Castel will prove that Wilson meets

2    each of the three prongs, even if only one prong is necessary.

3         First, Castel will prove that Wilson had intended to personally benefit from

4    the sale as well as his active participation in the sale, which he memorialized in an

5    e-mail to Cheng. Castel will also prove that Wilson had a further personal interest

6    in selling AIT, so that he could rid himself of the burden of operating AIT and so

7    that he could be provided compensation and equity in the Real Buyer for his

8    assistance by Cheng with the sale.

9         Second, Castel will prove that Wilson willfully neglected to inform himself

10   of the sale of AIT to either the Sham or Real Buyer because Wilson testified

11   during his deposition that he made no inquiry or due diligence into the Sham

12   Buyer or Real Buyer of AIT. Wilson also executed documents on behalf of AIT

13   regarding the sale with falsified material information.

14        Third, Castel will put forth evidence showing Wilson did not act in good

15   faith because Wilson admitted that he backdated agreements related to the sale

16   and did not provide Castel with pertinent or reliable financial information. Wilson

17   further acted in bad faith by not providing Castel with material facts regarding the

18   sale. Additionally, Wilson signed agreements on behalf of AIT that he knew

19   contained false information. Finally, Castel will prove that Wilson provided

20   preferential treatment to certain creditors of the same class as Castel.

21   / / /

Valla & Associates, Inc., P.C.
333 Bush Street, Suite 2020
San Francisco, CA 94104
www.vallalaw.com

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

ii.    <u>Entire Fairness Standard</u>

Castel believes that the Entire Fairness standard applies and not the Business Judgment Rule standard as argued by Wilson. Under this standard, Wilson must establish that the transaction was the product of both (1) fair dealing and (2) fair price. In determining whether Wilson's conduct was entirely fair, all aspects of the transaction must be considered as a whole. *Nixon v. Blackwell*, 626 A.2d 1366, 1376 (Del. 1993); *eBay Domestic Holdings, Inc. v. Newmark*, 16 A.3d 1, 36, 41-42 (Del. Ch. 2010).

Defendants will also be unable demonstrate that the transaction was entirely fair pursuant to the entire fairness test because no neutral valuation was performed, but rather the price was dictated by individuals on both sides of the transactions. Further, the Real Buyer received a $4 million discount on the purchase price as contemplated in the "neutral" evaluation. Wilson made no effort to find other buyers to purchase the assets of AIT.

2.    <u>Second Affirmative Defense</u>

Christopher Wilson plans to pursue the affirmative defense of the Contractual Limitation on Liability as to all claims alleged against him.

*a. Elements of Second Affirmative Defense*

Wilson bears the burden of proving that the Certificate of Incorporation for Aurora Imaging Technology shields directors from liability for breach of the duty of care.

Valla & Associates, Inc., P.C.
333 Bush Street, Suite 2020
San Francisco, CA 94104
www.vallalaw.com

*b.  Brief Summary of Key Evidence in Opposition to Second*

*Affirmative Defense*

Plaintiff will demonstrate that the limitation of liability does not protect Officers and therefore does not shield Defendant Wilson as an officer from liability. Even if the provision did apply to Defendant Wilson, Castel will put forth evidence that Wilson's conduct falls outside the limitations in the clause and was also grossly negligent.

3.  <u>Third Affirmative Defense</u>

Defendant ARF Partners plans to pursue the affirmative defense of Failure to Mitigate Damages as to the Breach of Contract claim asserted against it.

*a.  Elements of Third Affirmative Defense*

ARF Partners has the burden of establishing that Castel could have avoided all of part of its alleged damages with reasonable efforts or expenditures.

*b.  Brief Summary of Key Evidence in Opposition to Third*

*Affirmative Defense*

By the very nature of Defendant ARF Partner's failure to consult with Castel, Castel had no information to "mitigate" its damages, since it did not have knowledge of anything it needed to mitigate. The rug was pulled from under Castel, and after AIT's assets and business were sold, it was impossible for Castel to mitigate any damages, since the damage already occurred and was irreversible.

/ / /

Valla & Associates, Inc., P.C.
333 Bush Street, Suite 2020
San Francisco, CA 94104
www.vallalaw.com

1

### C. Similar Statement for All Third Parties

2

There are no third parties in this action.

3

### D. Anticipated Evidentiary Issues and Plaintiff's Position on Those

4

### Issues

5

Defendants have not raised any objections to the current list of trial

6

exhibits, but Plaintiff anticipates the following evidentiary issues:

7

Plaintiff raises hearsay objections to the following trial exhibits: 58, 70-78,

8

92, 96-97, 102, 113, and 123-124. Defendants are introducing these documents for

9

the truth of the matter contained despite the fact that many, if not all, of these

10

exhibits involve individuals not party to this action. Further, none of these

11

documents fall under any exception, including business records because there is

12

no proof that they were kept in the ordinary course of business.

13

Plaintiff raises relevance objections to the following trial exhibits: 70, 72-

14

78, 97, 113, 117-118, and 123-124. Most of these documents were used and/or

15

created in the years 2011 and 2012. Any actions taken in those years are

16

completely unrelated to the matters currently at issue. Further, Defendants intend

17

on relying on a <u>draft</u> bankruptcy petition that was never filed, as well as versions

18

of complaints from Castel's previous litigation against Aurora Imaging

19

Technology, Inc., which are not controlling. None of these documents are

20

probative to the issues at hand.

21

Valla & Associates, Inc., P.C.
333 Bush Street, Suite 2020
San Francisco, CA 94104
www.vallalaw.com

1      Further, Plaintiff raises authentication objections to the following exhibits:

2    70, 72-78, 97, 102, and 113. These documents are unsigned, were created a

3    decade ago, and/or did not involve any party or witness that will be called to

4    testify at trial that can authenticate these documents.

5    **E. Germaine Issues of Law and Plaintiff's Position on Those Issues**

6            1.   <u>Wilson does not Have a Legitimate Defense for Contractual</u>

7                 <u>Limitation of Liability.</u>

8      Wilson has attempted to argue that Castel's claims for breach of fiduciary

9    duty are barred because Wilson's liability is limited by contract under AIT's

10   articles of incorporation ("AOI"). This defense is not applicable because the AOI

11   only attempt to limit liability for a director's breach of fiduciary duties, and

12   expressly does not apply to (1) a director's duty of loyalty to the corporation or

13   stockholders, (2) acts or omissions not in good faith or those that involve

14   intentional misconduct, and (3) any transaction where the director derived an

15   improper personal benefit. These exclusions for a companies' ability to limit

16   liability of a director are also consistent with the requirements under Delaware

17   law. Del. Code Ann. tit. 8, § 102(b)(7).

18     Here, Castel's breach of fiduciary duty claims apply to Wilson's capacity

19   and conduct as both the Chief Executive Officer as well as director. Because the

20   articles of incorporation only attempt to limit liability of a director, they would not

21

Valla & Associates, Inc., P.C.
333 Bush Street, Suite 2020
San Francisco, CA 94104
www.vallalaw.com

preclude Castel's claims against Wilson for his breach of fiduciary duties as an Officer.

Furthermore, even if Castel's claims were strictly against Wilson in his capacity as a director of AIT, the AOI would not preclude liability because Wilson breached his duty of loyalty to Castel as a shareholder, his acts and omissions were intentional and not made in good faith, and he stood to receive an improper personal benefit from the decisions he made. All of these facts bring Castel's claims outside of the AOI's limitation of liability clause. Furthermore, AIT could not limit Wilson' liability in these respects under Delaware law, even if it tried to. Del. Code Ann. tit. 8, § 102. Therefore, Wilson's affirmative defense for contractual limitation of liability should be denied.

2.   The Standard of Review for Breach of Fiduciary Duty is Entire Fairness, not Business Judgment Rule.

Wilson incorrectly asserts that his conduct, as a director and officer of AIT, relevant to the claims in this case should be reviewed under the business judgment rule. The director of a corporation does not receive the protection of the business judgment rule in several different contexts.

Under Delaware law, the business judgment rule is not the appropriate standard of review where there is a change of control over the company, as is the case in many mergers or acquisitions, or when the director or officer has a personal conflict of interest. In the context of change of control, the applicable

Valla & Associates, Inc., P.C.
333 Bush Street, Suite 2020
San Francisco, CA 94104
www.vallalaw.com

1  standard is "enhanced scrutiny" and under this standard, Wilson must prove both

2  that his motivations were proper or that he sought the best deal for the

3  stockholders, and he must also demonstrate his actions were reasonable to achieve

4  that objective. *In re Del Monte Foods Co. S'holders Litig.*, 25 A.3d 813, 830 (Del.

5  Ch. 2011). However, where decisions or transactions involving a breach of the

6  duty of loyalty, such as where there is a conflict of interest or bad faith, which

7  Castel alleges and will show in this case, then the applicable standard is "entire

8  fairness" and the burden is on Wilson to demonstrate that the transaction was fair

9  in terms of both price and process. *Kahn v. Lynch Commc'n Sys., Inc.*, 638 A.2d

10  1110, 1115 (Del. 1994); *Cede & Co. v. Technicolor, Inc.*, 634 A.2d 345 (Del.

11  1993).

12      Here, the appropriate standard of review is "entire fairness", not the

13  business judgment rule, because Wilson had a material conflict of interest in the

14  transaction. Wilson engaged in his own self-dealing because Wilson was sent an

15  email stating that Cheng will "grant some of ARF's interest to management,

16  including [Wilson]," which shows that Wilson was set to earn an equity interest in

17  the Buyer or in ARF Partners for his active participation in pushing the sale

18  through. However, if the Court will not apply the entire fairness standard, then it

19  should apply the enhanced scrutiny standard because the context involves a

20  change of control. In either event, the business judgment rule is not appropriate

21

Valla & Associates, Inc., P.C.
333 Bush Street, Suite 2020
San Francisco, CA 94104
www.vallalaw.com

for this case and should not be the standard through which Wilson's conduct is reviewed.

## III.   L.R. 16-4.3: BIFURCATION OF ISSUES

Plaintiff does not request bifurcation of any issues.

## IV.   L.R. 16-4.4: JURY TRIAL

The Parties have waived a jury trial and will proceed with a bench trial. (Dkt. 191).

## V.   L.R. 16-4.5: ATTORNEYS' FEES

Plaintiff's Prayer for Relief includes "attorneys' fees incurred in prosecuting this proceeding." (Dkt. No. 91 at pg. 43, line 9). Plaintiff is unaware of any statute at this time that provides for attorney's fees in this matter but reserves the right to request fees if it discovers that fees are applicable as to any of its causes of action.

## VI.   L.R. 16-4.6: ABANDONMENT OF ISSUES

Plaintiff has not abandoned any pleaded claims.

DATED:  April 19, 2023                    Valla & Associates, Inc., P.C.

                                          By:   */s/ Lisa Schachne*
                                                Lisa Schachne, Esq.
                                                Attorneys for Plaintiff Castel S.A.

PLAINTIFF CASTEL S.A.'s MEMORANDUM OF CONTENTIONS OF FACT AND LAW (2:19-cv-09336-DFM)